In The
# United States Bankrupty Court
# For the Middle District of Florida

RECEIVED
JUN 2 6 REC'D
CLERK U.S. BANKRUPTCY COURT
TAMPA, FL

| | |
|---|---|
| IN RE, | ) |
| SCOTT ALAN HUMINSKI, | ) CASE NO.17-03658-9D7 |
| DEBTOR | ) |
| | ) ADV. PROC. NO. |
| | ) |

## MOTION TO VACATE PROTECTIVE ORDRS AS VOID AB INITIO OR VOID AND FOR DECLARATORY RELIEF

NOW COMES, Debtor, Scott Huminski ("Huminski"), moves to vacate the protective order concerning Sheriff Mike Scott and the protective order prohibiting filing the Notice of Removal as unconstitutional and for a declaration that the protective orders issued in the Court below are unconstitutionally vague/over-broad, undermine federal bankruptcy law, are not narrowly tailored and contain unconstitutional time, place and manner restrictions on core protected speech as follows:

1. Debtor is required to file his notice of removal in the State Court under F.R.B.P. 9027 (c) which states in pertinent part,

*"Filing in Non-Bankruptcy Court. Promptly after filing the notice of removal, the party filing the notice shall file a copy of it with the clerk of the court from which the claim or cause of action is removed. Removal of the claim or cause of action is effected on such filing of a copy of the notice of removal. The parties shall proceed no further in that court unless and until the claim or cause of action is remanded"*

2. The protective order issued in the State Court obstructs Huminski's duty under 9027 and was issued after Debtor informed the State Court his bankruptcy was looming at hearing in April 2017. The State Court knows removal to bankruptcy court involves filing the notice in the State Court, thus, the State Court chose to foil bankruptcy law and obstruct justice with a prior restraint targeting removal to U.S. Bankruptcy Court and bankruptcy proceedings.

3. The protective order in the State Court states in pertinent part,

*"... Huminski was specifically ordered not to file any additional documents or materials of any nature with the Court unless the filing was signed by an attorney ...".*

4. No attorney is involved in IN RE Scott Alan Huminski, Huminski's bankruptcy.

1

RCV'D USDC FLMD TL
APR 22 '22 PM 1:54
SJB

eFiled Lee County Clerk of Courts Page 4

5. The State Court knew that Huminski was indigent and could banish him from the courthouse and obstruct any bankruptcy matter by requiring he hire an attorney on his meager Social Security income. Mission accomplished – obstruction of justice. Which caused the delay of this filing until 4/26/2017 when Huminski had to weigh the contempt of state court versus the procedures of the bankruptcy court. Huminski opted to obey the constitution and federal law instead of the illegal protective orders. This conflict between State and Federal Courts is a product of a patently unconstitutional state court orders. No person should face contempt forth obeying the rules of the bankrupcty court.

6. At hearing, the State Court opined that the bankruptcy court did not have to be obeyed by State courts. the Court Below was subject to *ex parte* contacts which were revealed when the State Court opined at hearing that the sworn description in the Complaint Para. 2 was false despite it is unopposed on the record. The *ex parte* contact created an improper animus and bias in the State Court.

7. The State Court also forbade service of bankruptcy court papers upon Sheriff Mike Scott as follows:

> "[i]n the Order on Defendant Mike Scott's Motion to Dismiss and Motion for Protective Order, SCOTT HUMINSKI was specifically prohibited from directly contacting, communicating with or otherwise serving materials directly on Sheriff Scott, his agents and employees Scott ..."

8. No attorney has appeared for Sheriff Scott in this adversary proceeding, as such, the State Court order concerning Sheriff Scott is wildly over-broad in violation of the First Amendment/Due Process and obstructs justice concerning service of papers related to this adversary proceeding upon Sheriff Scott. *Per se* obstruction of justice of matters pending before the United States Courts.

9. The prohibition of contact by Debtor with the only local law enforcement agency having jurisdiction in his town prohibiting reporting crime to the LCSO is for a lifetime, patently unconstitutional, over-broad and draconian concerning duration. Should deputies ask Huminski about a potential crime, Huminski is forbidden to talk to them. Another indication of the patently over-broad nature of the protective orders.

10. The order has not only theoretically obstructed justice, it has obstructed Huminski's ability to comply with F.R.B.P. 9027 (c) violating the First Amendment, Due Process. Huminski contacts with the sheriff reported a campaign of terrorist death threats issued to Huminski via the U.S. Mails and were sometimes critical of the Sheriff for ignoring and thus

2

supporting the crimes targeting Huminski – core protected political speech critical of a elected government actor. The order is against public policy as it denies Huminski access to public safety personnel and forbids Huminski's contact with an elected official and prohibits criticism of a politician.

11. Huminski emailed the judicial assistant for the State Court judge on 6/14/2017 noting the problem with the order obstructing bankruptcy matters. No response was received.

12. A similar banishment from a courthouse is documented at Huminski v. Corsones, 396 F.3d 53 (2nd Cir. 2005) although that case did not go to the extremes of constitutional deprivation depicted in the instant matter in violation of the First Amendment, Due Process and the Supremacy Clause. No party should have to risk contempt and imprisonment for merely obeying federal court rules as Huminski was forced to here.

13. All Huminski's communications with the defendant Sheriff were in furtherance of Huminski's report of a two year assassination plot which were met with the extremes of obstructing justice by usurping and rendering federal bankruptcy court rules void with vague and over-broad unconstitutional judicial threats.

## MEMORANDUM OF LAW

The Supreme Court strongly protects "core political speech" as a "value hat occupies the highest, most protected position" in the hierarchy of constitutionally-protected speech. R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 422 (1992) (Stevens, J., concurring). See also Burson v. Freeman, 504 U.S. 191, 217 (1992). In defining the core political speech worthy of this elevated level of protection, the Court has broadly included "interactive communication concerning political change.", the essence of Huminski's communications with the sheriff. Meyer v. Grant, 486 U.S. 414, 422 (1988).

Political speech gets higher protection because it is an essential part of the democratic process. Indeed, evaluating a statute that would have restricted all anonymous leafleting in opposition to a proposed tax, the Supreme Court reflected on the importance of specifically protecting such political speech which applies equally here to Huminski's speech regading corruption and oppression by police and government actors who support the death threats received by Huminski. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." McIntyre v. Ohio Elections

3

Comm'n, 514 U.S. 334, 346-47 (1995), quoting Roth v. United States, 354 U.S. 476, 484 (1957)

Recently, the Supreme Court made it abundantly clear that laws or in this case a court order that burden political speech are subject to strict scrutiny review. Citizens United v. Federal Election Comm'n, 558 U.S. 310 (2010), invalidated a federal statute that barred certain independent corporate expenditures for electioneering communications. Highlighting the primacy of political speech, the Court noted that "political speech must prevail against laws that would suppress it, whether by design or inadvertence. Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" Citizens United, 558 U.S. at 340 (quoting Federal Election Comm'n v. Wisconsin Right To Life, Inc., 551 U.S. 449, 464 (2007)). There exists no compelling reason to silence Huminski's reporting of crime or criticism of the sheriff.

The order and the threats from the Court under State/Common Law cut off the "unfettered interchange of ideas" in an important place for individual political expression—the Courts. McIntyre, 514 U.S. at 346-47.

Treading upon core First Amendment expression must be accomplished in as minimally a restrictive manner as possible, and should never be done so in the form of an absolute bar on all political expression as is the case at Bar whereby civil/bankruptcy litigation has been viewed as a *per se* criminal activity by the State Court. See Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 574 (1987) (invalidating a statute because it "reache[d] the universe of expressive activity, and, by prohibiting all protected expression, purport[ed] to create a virtual 'First Amendment Free Zone.' ") (emphasis in original). Validating a sweeping ban on core political speech would seriously undermine the Supreme Court's stated goal of safeguarding the democratic process.

The contact with the Sheriff made by the Debtor were related to reporting crime and criticism of a political figure. A constitutional solution should have been to direct the sheriff to delete any emails he considered junk mail. Shutting down Huminski's reporting crime to law enforcement is an extreme remedy that does not survive constitutional scrutiny under vagueness and over-breadth precepts.

*Grayned v. The City of Rockford, 408 U.S. 104* (1972) summarized the time, place, manner concept: "The crucial question is whether the manner of expression

4

is basically incompatible with the normal activity of a particular place at a particular time." Time, place, and manner restrictions must withstand intermediate scrutiny. Note that any regulations that would force speakers to change how or what they say do not fall into this category (so the government cannot restrict one medium even if it leaves open another) *Ward v. Rock Against Racism*(1989) held that time, place, or manner restrictions must:

- Be content neutral
- Be narrowly tailored
- Serve a significant governmental interest
- Leave open ample alternative channels for communication

If the government tries to restrain speech before it is spoken, as opposed to punishing it afterward, it must be able to show that punishment after the fact is not a sufficient remedy, and show that allowing the speech would "surely result in direct, immediate, and irreparable damage to our Nation and its people" (*New York Times Co. v. United States*). U.S. courts have not permitted most prior restraints since the case of *Near v. Minnesota* in 1931.

Reporting crime to a local agency is not a crime or contempt, however, obstruction of service of bankruptcy court papers and compliance with Bankruptcy rules is *per se* criminal. Orders of the State Court have obstructed service of bankruptcy related papers upon the sheriff and were an attempt to obstruct Bankruptcy Rules.

Dated at Bonita Springs, Florida this 25th day of June, 2017.

-/s/- Scott Huminski

Scott Huminski, pro se
24544 Kingfish Street
Bonita Springs, FL  34134
(239) 300-6656
S_huminski@live.com

