# United States District Court
# Northern District of Florida

EQUALITY FLORIDA, ET AL,                    )          Number: 4:22-cv-00134-AW-MJF

    PLAINTIFFS,                    )

          v.                    )

RONALD DESANTIS, ET AL,                    )

    DEFENDANTS.                    )

## NOTICE OF NON-SERVICE OF ORDER REGARDING INTERVENTION – Violations of the ADA – Judicial appearance of impropriety

NOW COMES, Scott Huminski ("Huminski"), and notices that the Order denying intervention has not been received by Huminski as follows:

1.    The Court has established a custom, policy, pattern and procedure that discriminates against the disabled indigent (that can not afford to hire an attorney) that prohibits them from filing electronically and prohibits them from getting served expeditiously and electronically with papers from the Court.

2.    The Court serves all Court generated papers/orders upon all the dozens of parties and their more numerous attorneys in this matter expeditiously and electronically and singles out the disabled indigent that rely upon Social Security Disability to survive without proper service of court orders and force the disabled indigent to engage in extensive travel, copy costs, shipping costs and prejudice related to the filing of documents that all the parties except Huminski can accomplish with the click of their mouse from their desks without burdening travel and excessive costs/fees.

3.    This Court's order characterization of a criminal case against Huminski by the State of Florida accepts and encourages the State's illegal conduct of exhibiting disdain and disrespect for the dignity, integrity, powers, authority and jurisdiction of the federal courts that had jurisdiction to hear the contempt that allegedly existed in State civil case <u>Huminski v. Town of Gilbert, et al</u>, 17-CA-421, Fl 20th Cir., that was removed from the State courts and existed as an adversary proceeding in the U.S. Bankruptcy Court (Middle District of Florida) as <u>Huminski v. Town of Gilbert, et al.,</u> 9-17-ap-00509-FMD.

1


FILED USDC FLND TL
JUN 8 '22 PM3:49

4.     There exists an appearance of impropriety regarding this Court's opinion that Chief Judge Caryl Delano is somehow sub-par or not worthy of jurisdiction over a matter that had been properly removed to her court and this appearance of impropriety requires disqualification or recusal.  Gender does not impact the legitimacy of a jurist and this Court should not disrespect the legitimate authority of a federal judge by implying that a proper removal can be ignored by State actors and now this Court.

5.     There was no State criminal case(s) as eluded to by this Court in the misplaced belief that a State matter existed in the State Courts after removal.  The sham *void ab initio* State criminal case(s) spoken of in the Order on Intervention is/was and will always be void ab initio for lack of jurisdiction because the federal courts had jurisdiction over the contempt allegations. Additionally, there was no service of a commencement document and a Court of inferior jurisdiction (County Court) can not hear contempt allegations originating in a Court of general jurisdiction (Circuit Court).   See Generally <u>South Dade Farms v. Peters</u>, 88 So. 2D 891 (Florida Supreme Court 1956).  Even without the disrespect by State actors for the jurisdiction of the federal courts, the case termed a "criminal case" by this Court in its order on intervention was commenced in the absence of personal and subject matter jurisdiction and while the federal courts had jurisdiction.

6.     It is likely that the copy of the order that was to be served upon Huminski resides at the Court at the same location that Huminski's papers received by the Court on 5/24/2022 exist.

7.     This Court's attempt to legitimize a *void ab initio* "criminal case" asserts a bold disrespect for Hon. Caryl Delano, the Middle District and reveals a *per se* improper motivation and animus against a federal jurist, Huminski, other federal courts and the disabled indigent.

8.     The State prosecutor, Anthony Kunasek, Esq (who committed suicide 30 days after the Motion to Intervene filed in the instant matter detailing his forgery and other State and Federal crimes) stated as follows in transcripts that this Court has had possession of since 5/24/2022, but, refuses to file:

14       THE DEFENDANT:  And, one more thing, Judge.

15   May I point out that the State's Attorney had

16   zero opinion as to the jurisdiction of this court

17   when the case was removed to federal court.

18   Totally silent.  So, they did not oppose --

19       THE COURT:  Do you have zero opinion?

20       MR. KUNASEK:  Judge, I did remain si -- I

21   didn't argue that the court lost jurisdiction.

22       THE COURT:  Okay.

23       MR. KUNASEK:  In fact, I think I said that

24   the Court didn't lose jurisdiction on this

25   misdemeanor --

1       THE COURT:  Okay.

2       MR. KUNASEK:  -- or the case that we're here

3   for, 17 -- or, excuse me.  Yes.  17-MM-815.

4       THE COURT:  Okay.

5       THE DEFENDANT:  Which --

6       MR. KUNASEK:  The Court still has

7   jurisdiction in this courthouse.

8       THE COURT:  Okay.

9       MR. KUNASEK:  In the state courthouse.

10      THE DEFENDANT:  Your Honor, that case that

11   he's referencing began on June 30th.  The hearing

12    where the arraignment was was on June 29ᵗʰ. There

13    was no criminal case when we had that hearing.

14           THE COURT:  Okay.

15           All right.  Your lawyers will help you out.


6           THE DEFENDANT:  I'd also like to point out

7    that at the 6/29 hearing, in the minutes from

8    that hearing --

9           THE COURT:  Is that in front of Judge Krier.

10          THE DEFENDANT:  Judge Krier, yeah.

11         It seems he is set to review how the State is

12    proceeding with the case and at that point we can

13    schedule future hearings.  Also to be discussed,

14    transfer of the case from civil to criminal.

15          THE COURT:  Okay.

16          THE DEFENDANT:  So, at that point in time the

17   case was still civil.

18        THE COURT:  All right.

19        THE DEFENDANT:  So -- and I don't think the

20   State's attorney did any -- took any steps to

21   transfer the case from civil to criminal as

22   stated -- as required by Judge Krier's order.

23        THE COURT:  Okay.  All right.  Anything else

24   on that.

25        MR. KUNASEK:  I will say, Judge, that I was

1    to, at the next court hearing, announce whether

2    or not we were going forward in a non-jury

3    capacity, knowing that our maximum penalty would

4    be limited, whereas, if we were going with a jury

5    trial, we would be able to go -- where the

6    maximum penalty would be higher.

7         So, at this point, Judge, we would announce

8    that we're going to go forward in a non-jury

9    capacity, which would limit the Court, in the

10   event the Court finds Mr. Huminski guilty and in

11   contempt of Court up to six months in the county

12   jail.

13    THE COURT:  Okay.  As opposed to a year?

14    MR. KUNASEK:  Correct.

15    THE COURT:  Okay.  All right.

16    THE DEFENDANT:  That -- that still doesn't

17    address the transfer from, as Judge Krier said,

18    from civil to criminal court.

19    THE COURT:  Okay.  All right.  That may be

20    somewhat of a misnomer of sorts in there.

21    THE DEFENDANT:  I've seen other cases that --

22    when the prosecuted is a felony and the felony

23    gets -- goes away for some reason and there's

24    only misdemeanors left --

25    THE COURT:  Yes, sir.

1    THE DEFENDANT:  -- it seems like the State's
2    attorney has to file an information in the county
3    court instead of just doing some kind of
4    transfer.
5    THE COURT:  That's -- those are felony
6    reductions.  I've seen that on occasion --
7    THE DEFENDANT:  Yeah.
8    THE COURT:  -- at the same time and they are
9    handled differently, depending upon the nature of
10   the charge and, you know, if Mr. Kunasek believes
11   there to be a procedural irregularity, as it --
12   as it holds to then and now, I'm sure he'll

13   resolve that prior to any anticipated disposition
14   or scheduling of the case (unintelligible).
15   THE DEFENDANT:  Right.  Right.  Okay.  I
16   noticed that was sort of a question mark in this
17   case.

23   THE DEFENDANT:  And one more thing.  Going

24  back to my argument of last time, since I pulled

25  up this order saying that the case would be

---

---

14

1  transferred from civil to criminal --

2   THE COURT:  Yes, sir.

3   THE DEFENDANT:  -- there -- that was 6/29.

4  6/26 the case was removed to federal court.


5   THE COURT:  Okay.

6   THE DEFENDANT:  So, since the judge

7  considered it civil on 6/29 that was all moved to

8  federal court.  And it was removed for about a

9  month and then it was remanded back around 8/1.

10   THE COURT:  All right.

11   THE DEFENDANT:  So, any and all acts in that

12  timeframe were without -- totally without

13  jurisdiction because they were in the federal

14  court.

15   THE COURT:  Right.

16      THE DEFENDANT:  So, that's another

17  irregularity with regard to this case.

18      THE COURT:  We will readdress them as the

19  case progresses.

20      THE DEFENDANT:  All righty.  Thank you.


7       THE DEFENDANT:  Your Honor, I have something

8   to add to the recusal --

9       THE COURT:  Yes, sir.

10      THE DEFENDANT:  -- my attorney.  The other day

11  I pressed him to answer a question saying what

12  should we do here?  Should I obey the circuit

13  order of Judge Krier --

14      THE COURT:  Okay.

15      THE DEFENDANT:  -- and not attend, because it

16  prohibits my attendance at this proceeding.

17      THE COURT:  Not really.  Not really.  That's


18  been taken care of by subsequent order.

19      THE DEFENDANT:  Not in the circuit court.

20      THE COURT:  Okay.

21      THE DEFENDANT:  The circuit court order --

22      THE COURT:  Well, they've divested themselves

23  of jurisdiction at this point, so the orders that

24  I signed relative to your case are the warrants

25  that you should be attending to.

1   THE DEFENDANT:  I don't think they overrule

2   the circuit court orders of Judge Krier.

3   THE COURT:  Sir, the circuit orders -- the

4   circuit court orders of Judge Krier have sort of

5   been dissolved into this case.  So, any

6   subsequent orders addressing similar issues that

7   I've issued are the ones that you should be

8   concerned about.

9   THE DEFENDANT:  That's not evident on the

10  record in the circuit court case --

11  THE COURT:  Okay.  Well --


1   THE DEFENDANT:  it's not a civil appeal, it's

2   a criminal appeal because this case lingered in

3   the circuit court for about four months.

4   THE COURT:  Okay.

5   THE DEFENDANT:  So, it's not a civil case at

6   all.  It's a hybrid civil/criminal case.

7   THE COURT:  Okay.  All right.  We'll see you

8   in January.  Happy New Year.

9          MR. KUNASEK:  Judge, it's my understanding

10   that the law does not require the Court to

11   continue to appoint attorneys for Mr. Huminski if

12   Mr. Huminski is the basis of the -- or is causing

13   the conflicts.  And it seems to me, based on the

14   information that is before us, that Mr. Huminski

15   is causing these conflicts.

16          THE DEFENDANT:  I would say that there is --

17          THE COURT:  Just hold on.

18          THE DEFENDANT:  Okay.

19          MR. KUNASEK:  So, I'm throwing that out there

20   that I don't think it's -- I don't believe the

21   Court is required to continue to appoint counsel.

22          THE COURT:  Okay.

12          Coming to the next issue, Mr. Huminski, sir,

13   are you in a position to represent yourself?  Are

14   you ready to proceed with trial?

15          THE DEFENDANT:  Oh, no.  I would like an

16   attorney appointed.

17          THE COURT:  Okay.  And --

17          THE COURT:  Okay.  And --

18          THE DEFENDANT:  I would like to add one other

19     thing.  I -- as far as the State's attorney goes,

20     I filed papers indicating that -- well, not even

21     papers.  I'm a party to Russel versus Waterman

22     Broadcasting and the State's attorney is suing

23     NBC2.  Now I'm part of that case, so that draws

24     into question the propriety of the State's

25     attorney.


25          THE COURT:  Okay.  Okay.  Here's a couple

Pag

                                                          10

1      things, Mr. Huminski.  First, I'm not going to

2      appoint you another attorney to represent you,

3      all right.

4          And, second, I guess, my question then -- and

5      second, I'm not going to entertain an issue

6      involving recusal of the State Attorney's Office

17          That brings me to the next issue of are you

18    going to represent yourself in this case or are

19    you going to hire a lawyer to represent you in

20    this case?

21          THE DEFENDANT:   I would like an appointment.

22          THE COURT:   I'm not going to appoint a lawyer

23    to represent you.   All right.

24          THE DEFENDANT:   I thought that you already

25    found that I was --

---

1           THE COURT:   I did.

2           THE DEFENDANT:   -- financially --

3           THE COURT:   I did, but you can't continue to

4     put yourself in a situation of causing conflicts

5     that makes it not legally permissible for the

6     lawyer that's appointed for you at public eff --

7     expense.   I was gonna say offense.   Expense.   To

8     constantly cause them to withdraw from further

9     representation of you in the case.

4      THE COURT:  Okay.  Now, I know you have an

5      issue with procedural issue of what Judge Krier

6      may have done that you perceive as being

7      procedurally incorrect, but we're sort of beyond

8      that.

9      THE DEFENDANT:  No, no.  Well, I'm saying

10     that there was that one, but then there was

11     another order on 6/30 in this case.

12     Now, what happened was --

13     THE COURT:  Are you ready for trial, Mr.

14     Huminski?


15     THE DEFENDANT:  I just want to explain this

16     to you just to -- for two minutes.  The order of

17     6/5 of Judge Krier was printed out on 6/30 by

18     somebody, I don't know who.

19     THE COURT:  Okay.

20     THE DEFENDANT:  And on that order it was

21     modified and written in with the docket number

22     for this court and then filed in this as an

23     original and you cannot modify court orders and

24     then refile them with no knowledge of the judge.

25     And, so, there is no charging information in this

1     case. The only charging information would be

2     that motion to show cause, which the one filed in

3     this case is pure fraud.

4           THE COURT: Okay.

5           THE DEFENDANT: Because they took the 6/5

6     ruling with Judge Krier's signature, printed it

7     out, somebody hand wrote a docket number on it,

8     making it seem like, oh, this is a ruling in this

9     case, which it never was, and this is what I'm

10    getting prosecuted on. It's pure fraud.

11          THE COURT: Okay. Are you -- are you ready

12    for trial?

11          THE COURT: Okay. Are you -- are you ready

12    for trial?

13          THE DEFENDANT: Well, no. I would like an

14    attorney appointed.

15          THE COURT: Okay. I'm not gonna appoint an

16    attorney to represent you.

17          THE DEFENDANT: Okay. Well, I'm not ready

18    for trial.

15

2          THE DEFENDANT:  Yes, there is an extreme

3     amount of docket manipulation in this case.

4          THE COURT:  Not on my docket.

5          THE DEFENDANT:  What?

6          THE COURT:  Not here.

7          THE DEFENDANT:  Well, on September 22rd there

8     was a recusal of Judge Krier filed, after I

9     notified you of the problem with the -- that

10    there was no recusal filed.  Then --


4          THE COURT:  Mr. Huminski, are you ready for

5     trial, sir?

6          THE DEFENDANT:  No.

7          THE COURT:  Okay.  How much time do you think

8     you're gonna need before you're ready?

9          THE DEFENDANT:  Well, since I was stripped of

10    counsel on 1/8 I've contacted ten attorneys and

11    they all said that 30 days wasn't enough time for

12    them.

13    THE COURT:  Okay.

14    THE DEFENDANT:  So, if it wasn't enough time

15 for them it certainly isn't enough to me.  I

16 would like to hire counsel, but no counsel will

17 take this case with these deadlines.  They need

18 more than 30 days to prepare.

19    THE COURT:  Okay.  Well, I'll tell you what,

20 Mr. Huminski.  I will continue your case until

21 March 6ᵗʰ, but I want you to work on getting a

22 lawyer and if a lawyer comes in and files a

23 notice of appearance we'll talk with them about


3    THE DEFENDANT:  And I have one other issue.

4 I was asked by a deputy sheriff outside my name

5 and if I was represented.

6    THE COURT:  Yes, sir.

7    THE DEFENDANT:  And I had to tell them under

8 Judge Krier's orders --

9    THE COURT:  Okay.

10    THE DEFENDANT:  -- I could not answer their

11 questions.

12    THE COURT:  Okay.  That's -- that's been

13 modified to allow you to identify yourself for

14    court related purposes.

15         THE DEFENDANT:  Not by Judge Krier or not by

16    the circuit court.

17         THE COURT:  She's no longer on this case.

18    The case has been assigned to me, so the order

19    that I signed supersedes the prior no contact

20    provisions as it relates to law enforcement.

21         THE DEFENDANT:  I spoke with an attorney

22    about that and he said a circuit court --

23         THE COURT:  Tell the lawyer to come in and

24    tell me that, okay?


11         THE DEFENDANT:  I have two things to say.

12         THE COURT:  Yes, sir.

13         THE DEFENDANT:  Judge McHugh vacated the two

14    orders that allegedly formed the basis for this

15    case.

16         THE COURT:  Okay.

17         THE DEFENDANT:  And, another thing, there's a

18    motion pending now that once you deny it it'll

19    allow direct appeal to the Florida Supreme Court

20    because it's a judicial assignment motion --

21         THE COURT:  Okay.

22         THE DEFENDANT:  -- which the Supreme Court

23    has exclusive jurisdiction over.

24         THE COURT:  Okay.

25         THE DEFENDANT:  Other than that, I assert my

---

---

4

1    Fifth Amendment rights.

2         THE COURT:  Okay.  All right, Mr. Huminski,

3    I'm going to hand you -- Mr. Kunasek, you may not

4    have a copy of this yet, but I want you both to

5    take a look at it.  My understanding is that Mr.

6    Huminski filed another affidavit of indigency for

7    appointment of the Public Defender's Office.

8    I've taken a look at it.  I'm not going to

9    reappoint the Public Defender's Office to

10   represent you.  They were -- originally filed a

11   motion to withdraw from your case because of the

12   nature of the conflict between you and them.

13        Subsequent to that, Regional Counsel was

14   appointed to represent you, as a result of the

15   Public Defender's conflict.  There were

19

20      expense to represent you.  I have stricken the

21      order declaring you to be indigent for purposes

22      of having access to a lawyer at public expense.

23           So, at this point I guess I need to find out

24      from you if you are ready for trial.

25           THE DEFENDANT:  I assert my fifth amendment


1       rights.

2            THE COURT:  Okay.  All right.  We'll set it -

3       -

4            MR. KUNASEK:  Judge, I would like it set this

5       afternoon if that's possible.


11           THE DEFENDANT:  Objection.  I -- I can't hold

12      a trial if I'm asserting my Fifth Amendment

13      rights.

14           THE COURT:  Okay.  That's fine.  And that

15      would be, I'm gonna say, March 16th at 8 -- 8:45,

16      back in this courtroom.  All right.  Sign for

17      your court date, sir.

18           MR. KUNASEK:  Thank you, Judge.

19           THE COURT:  And, Mr. Kunasek, just to be sure

20      all -- has there been discovery provided to Mr.

21      Huminski along the way?

11          THE COURT:  Good morning, sir.

12          Mr. Huminski, are you prepared to go to trial

13     today, sir?

14          THE DEFENDANT:  I have some issues to go

15     through prior.

16          THE COURT:  Okay.  But -- okay, but my

17     question to you is are you ready to proceed to

18     trial today, notwithstanding what other issues

19     you may have?

20          THE DEFENDANT:  No, I believe I have the

21     right to counsel because the circuit court

22     appointed counsel, overruling your ruling that I

23     had no right to counsel.

24          THE COURT:  I think circuit court appointed

25     counsel for you for the appellant case, not

                                                        5

1      necessarily for the trial case.  I would make a

2      distinction between that.  Is there -- if you

3      would look at the case number on that, I think

appointment of counsel is for the

5    appellant issue, not for the trial issue.   That's

6    my understanding of what's going on.

7         So, are you ready for trial or otherwise?

8         THE DEFENDANT:   No, I'm not.

9         THE COURT:   Okay.   Why not?

10        THE DEFENDANT:   Well, there's pretrial

11   motions pending that haven't been ruled upon.

12        THE COURT:   Okay.   I think all the -- all the

13   issues that -- every motion that you have

14   submitted in there is an order signed for those

15   particular issues.

22        THE COURT:   Okay.   But you can't remember

23   what your motions were.

24        THE DEFENDANT:   I have PTSD.   I have

25   generalized anxiety disorder.

---

---

12

1         THE COURT:   Okay.

2         THE DEFENDANT:   I'm disabled and my memory is

3    not as good as your memory --

4        THE COURT:  Okay.

5        THE DEFENDANT:  -- or anybody else's memory.

6    So, I -- I would rely on my disability.

7        THE COURT:  Okay.  Yes, sir.


16       THE DEFENDANT:  Yes, the Supreme Court has

17   exclusive jurisdiction over judicial assignments

18   and has exclusive jurisdiction on rule making and

19   rule clarification.  In this case a county case

20   was transferred -- I mean, a circuit case was

21   transferred to county court, which is not in any

22   rule, no statute, no rule, no law, no authority

23   allows that.  So, in this particular case that

24   assignment from circuit to county is in the

25   exclusive jurisdiction of the Florida Supreme


1    Court, as well as any role that may have been

2    applied.  And I'm -- I assert there's no rule and

3    that it was a procedure seeking a rule.  So, the

4    Supreme Court, would then, again, have to clarify

5    the rules or create a new rule to allow a

6    transfer from the circuit court to county.

7        THE COURT:  Is it your position that that is

8    not something that is addressed in the rules of

9    judicial administration and it's up to the chief

10   judge and/or his assignees to make that

11   determination, as opposed to the Supreme Court of

12     the state of Florida making assignments of cases

13     in each individual county within the state of

14     Florida?

15          THE DEFENDANT:  It's my position that that's

16     not allowed at all.

17          THE COURT:  Okay.

18          THE DEFENDANT:  Judicial assignments are

19     certainly allowed and the county court judge can

20     contemporaneously be assigned to a circuit court

21     case no longer than six months, but there's no

22     such thing that exists as a transfer from circuit

23     to county.  That's why I believe this Court has

24     no jurisdiction and, in fact, the case still

25     remains in county court and this case violates

21

1     double jeopardy because it could be prosecuted in

2     both places and the circuit court was never

3     divested of jurisdiction by any order.

4          THE COURT:  Okay.  All right.  Anything from

5     the State on that issue?

6          MR. KUNASEK:  No, Judge.

7          THE COURT:  All right.  Mr. Huminski, on the

8     issue of -- your motion to allow the Supreme

9     Court to exercise exclusive jurisdiction as to

10    the matters that we discussed in terms of

11    appointment of -- of judges and reassignment of

12    cases, I'm going to deny that motion.

13         Your -- your one motion, as it relates to

14    notice of Judge Krier's refusal to serve papers

15    or orders, does the State have any position on

16    that one way or another?


10         THE DEFENDANT:  The service part is the most

11    critical part of that motion.  It says parties

12    are to go to the internet to get copies of this

13    order.

14         THE COURT:  Okay.

15         THE DEFENDANT:  Showing the exact procedure

16    that I find is a problem in this case is that I

17    was never served with anything.

18         THE COURT:  Okay.  But that's the --

19         MR. KUNASEK:  I don't have a position -- the

20    State doesn't have a position on that, Judge.

21          THE COURT:  Okay.  All right.  Okay.  I don't

22   -- okay.  Mr. Huminski, I guess I'm not going to

23   rule on that at all.  All right.

24          Your next motion is a motion to notice a

25   consent of the State to fourth amendment


1    appointment.  It reads that, you know, now comes

2    Scott Huminski, and notices as above because the

3    State has not filed opposition in 18-AP-0003 to

4    the appointment of counsel for Huminski, thereby

5    consenting to representation in light of the

6    absence of a Nelson/Faretta Hearing, the position

7    of the State is constitutional.

8          Does the State have any position?  I'm sorry.

9    Mr. Huminski, is there anything else you wish to

10   add to that, sir?

11      THE DEFENDANT:  Just that there was no

12   Faretta Hearing, which is required to strip

13   someone of counsel, like I was.  It's Faretta

14   versus California.  And that's been adopted by

15   the Florida Supreme Court as a standard in

16   Florida, as well.  And it's sort of like when you

17   take a plea agreement, it goes through a specific

18   colloquy with the defendant saying, you know, you

19   understand you're giving up the right to

20   attorney, etcetera, etcetera, just as -- similar

21   to a plea agreement.

22      THE COURT:  Okay.  Anything from the State on

22      THE COURT:  Okay.  Anything from the State on

23   that issue?

24      MR. KUNASEK:  No, Judge.

25      THE COURT:  All right.  Mr. Huminski, on that

---

---

24

1   issue I didn't look at it necessarily as you

2   saying I don't want a lawyer.  I looked at your

3   actions as being antagonistic toward all the

14        THE DEFENDANT:  Both conflict counsel and

15    public defender were let off the case on their

16    own motions for conflict of interest, if you look

17    at the record.

18        THE COURT:  Right.  Issues -- conflicts that

19    you created.

20        THE DEFENDANT:  And may I also say that mass

21    murderers, like Charlie Manson, etcetera, have

22    problems with counsel, yet, usually they have

23    tables full of counsel.

24        THE COURT:  Okay.

25        THE DEFENDANT:  So, I think I'm not Charlie

Page

26

1    Manson, so I should get the same appointment mass

2    murderers get.

3        THE COURT:  Okay.  Well, I don't know what

4    the relationship between Mr. Manson may have been

5    with his counsel.  I'm only familiar with your

6    relationship with both the lawyers from the

12        THE DEFENDANT:  Your Honor, may I also say

13    that defendants have been in various courts

14    throughout the country, sometimes have been

15    gagged and tied to their chairs and still had

16    court appointed counsel.

17        THE COURT:  You're not suggesting that I do

18    that to you, are you?

19        THE DEFENDANT:  No, but I'm saying --


20        THE COURT:  Okay.

21        THE DEFENDANT:  -- those people certainly

22    could not get along with their counsel, so I

23    don't think my conduct approaches that.

24        THE COURT:  I would -- I would agree with you

25    on that, but in instances that I've been aware,

5      Is there an offer to Mr. Huminski in this

*Record on appeal 17-MM-815-compressed.pdf*

6      particular case?

7      MR. KUNASEK:  No, Judge.

8      THE COURT:  Okay.  Does the State wish to

9      make an offer to Mr. Huminski in this particular

10     case for a -- a resolution, if he were to enter a

11     plea?

12     MR. KUNASEK:  No.

13     THE COURT:  Okay.  All right.  Mr. Huminski,

14     are you ready for trial otherwise, sir?

15     THE DEFENDANT:  I'm asserting my fourth

16     amendment right to counsel and I'm asserting my

17     fifth amendment right to remain silent.

*Record on appeal 17-MM-815-compressed.pdf*

18     THE COURT:  Okay.  All right.  Is the State

19     prepared to call its witnesses?

20     MR. KUNASEK:  Judge, we are.  We just need --

21     I can proceed and they're gonna need two minutes

22     to get here.

23     THE COURT:  Okay.  All right.

24     MR. KUNASEK:  So, we can start that if the

25     Court wishes.

Given the content of the above transcript excerpts whereby the Clerk of Courts
has refused to file in this matter, no one should be surprised that Prosecutor Anthony Kunasek
committed suicide 30 days after his State and Federal crimes were exposed by Huminski's filings
in this case.

30

Huminski did think suicide was an extreme remedy for Mr. Kunasek, however, looking at the above transcript excerpts, it seems warranted and somewhat rational.


## Memo of Law

Maidman v. Jomar Hotel Corp., 384 So.2d 728, 730 (Fla. 3d DCA 1980) ("... Under 28 U.S.C. § 1446, a petition for removal divests the state court of subject matter jurisdiction.").

A "state court is allowed to resume jurisdiction of the removed case if, and only if, the federal court grants permission by entering an order of remand." Preston v. Allstate Ins. Co., 627 So.2d 1322, 1324 (Fla. 3d DCA 1993) (citing 28 U.S.C. § 1446(d)). Removal to federal court and the effect of removal are governed by federal law. See Harris v. State, 850 S.W.2d 41, 42 (Ark.Ct.App.1993).

Clearly, this Court's reference to a "criminal case" in the intervention order demonstrates impropriety concerning bedrock principles of law such as federal removal.


Dated at Palm Coast, Florida this 5th day of June, 2022.

-/s/- Scott Huminski

_____

Scott Huminski, pro se
P.O. Box 353820
Palm Coast, FL  32135
(239) 300-6656
S_Huminski@live.com

## Certificate of Service

Copies of this document and any attachment(s) was served upon the parties via the U.S. Mails and/or email and/or the e-filing system in this case.

Dated this 5th day of June, 2022.
-/s/- Scott Huminski


_____

Scott Huminski

