# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**EQUALITY FLORIDA, et al.,**

    **Plaintiffs,**

**vs.**                 **CASE NO.: 4:22-CV-00134-AW-MJF**

**RONALD D. DESANTIS, in his
Official capacity as Governor of
Florida, et al.,**

    **Defendants.**

_____/

## DEFENDANT SCHOOL BOARD OF SARASOTA COUNTY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Defendant, School Board of Sarasota County ("SBSC"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b), hereby moves to dismiss Counts I–V of the First Amended Complaint (the "Complaint") (Dkt. 47) and in support, states as follows:

## OVERVIEW OF COMPLAINT AND SUMMARY OF ARGUMENTS

In order to understand the contentions raised in SBSC's motion, it is necessary to understand the convoluted nature of the Complaint's parties, causes of action, and allegations.

This 114-page lawsuit involves thirteen (13) distinct plaintiffs, eighteen (18) distinct defendants, and contains six (6) separate causes of action. The thirteen (13) Plaintiffs consist of:

- two (2) public-interest organizations (neither of which are based in Sarasota County, Florida or whom plead any specific ties to Sarasota County, Florida);
- three (3) current students (one who partially resides in Brandon, Florida and attends public school in Florida in an unidentified county; one in Manatee County, Florida who attends a charter school; and one in Miami-Dade County, Florida who attends a public school);
- one (1) former student – Zander Moricz ("Moricz") (from Sarasota County, Florida);
- three (3) sets of parents (one set from St. Johns County, Florida and two sets from Miami-Dade County, Florida);
- two (2) individual parents (one from Miami-Dade County, Florida and one from Orange County, Florida)
- two (2) teachers (one from Broward County, Florida and one from Pasco County, Florida).

The eighteen (18) Defendants consist of:

- Florida's Governor in his official capacity;
- Florida's Board of Education;
- The seven (7) individual members of Florida's Board of Education in their official capacities;
- Florida's Commissioner of Education in his official capacity;
- Florida's Department of Education; and
- Seven (7) Florida school boards (Broward County, Manatee County, Sarasota County, Miami-Dade County, Orange County, St. Johns County, and Pasco County).

SBSC is a defendant in Counts I-V. Each of these counts contains conclusory language alleging vaguely that each plaintiff in each respective count has been irreparably harmed and has suffered damages to be determined at trial.[1]

Count I, which is pursued by *all* Plaintiffs against *all* Defendants, is brought pursuant to 42 U.S.C. § 1983 hereinafter a "§ 1983 action") that challenges the constitutionality of the recently enacted Florida House Bill 1557 ("H.B. 1557") as vague under the United States Constitution's Fourteenth Amendment's Due Process Clause, both facially and as applied.

Count II, which is also pursued by *all* Plaintiffs against *all* Defendants, is a § 1983 action in which Plaintiffs both: (1) allege that "Defendants" have deprived "Plaintiffs" of the rights, privileges, and immunities secured by the Equal Protection clause of the Fourteenth Amendment to the Constitution, and (2) challenge the constitutionality of H.B. 1557 under a theory that it violates the Constitution's Equal Protection Clause, facially and as applied.

Count III, brought by six (6) Plaintiffs against *all* Defendants, is a § 1983 action that challenges the constitutionality of H.B. 1557 under a theory that it violates the First Amendment rights of plaintiffs M.A., Moricz, S.S., and Jane Doe

---

[1] Given the convoluted nature of the Complaint, the number of Plaintiffs and Defendants involved with each count, the failure to outline how each of the different individual Defendants were liable within each count, and the boilerplate and conclusory description of the relief sought within each count, it is unclear to SBSC what exact claims Plaintiffs have made within each count. For that reason, the below represents SBSC's best understanding of what claims have been alleged by Plaintiffs.

(the "Student Plaintiffs") and organizational plaintiff Equality Florida to receive information and ideas, facially and as applied.  Although it is included, it is unclear how the other organizational plaintiff, Family Equality, is involved in this specific count.

Count IV, which is pursued by six (6) Plaintiffs against *all* Defendants, challenges the constitutionality of H.B. 1557 under a theory that it violates students' First Amendment right to freedom of expression, facially and as applied.

Count V, pursued by six (6) Plaintiff's against all of the Defendants, challenges the constitutionality of H.B. 1557 as well, in this case as overbroad under the First Amendment to the United States Constitution, facially and as applied.

SBSC should be dismissed from Counts I-V of the Complaint for several reasons. First, the Complaint represents a shotgun pleading that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which specific acts.

Additionally, SBSC should be dismissed from Counts I-V for various other reasons. First, neither Moricz, who graduated in May of 2022 (*before* H.B. 1557 became effective), nor any of the other Plaintiffs possess standing against SBSC. Second, Plaintiffs have failed to allege the necessary elements of a valid § 1983 claim and the named Plaintiffs in Count II have failed to state a valid claim that

SBSC deprived the named Plaintiffs of their equal protection rights. Third, SBSC – who had no involvement in H.B. 1557's drafting – is not a proper party to a constitutional challenge of the bill. Rather, such constitutional challenges are more properly addressed against the state-level Defendants.

Thus, Counts I–V must be dismissed. However, notwithstanding all of the above, if this Court determines that Plaintiffs have only stated a valid § 1983 claim against SBSC for a deprivation of rights, such counts must still be dismissed for improper venue based on SBSC's entitlement to litigate any surviving claims in either the Middle District of Florida or Florida's Twelfth Judicial Circuit pursuant to entitlement to "home rule."

## PLEADINGS PERTAINING TO SBSC

All told, the lengthy Complaint makes very limited mention of SBSC or any purported ties that Plaintiffs have to Sarasota County. Below is every reference to SBSC or Sarasota County:

- "Defendant School Board of Sarasota County is a district school board organized and governed pursuant to Fla. Stat. § 1001.34 *et seq.* The School Board of Sarasota County operates Pine View School, which Plaintiff Moricz attended. Its powers and duties include implementing H.B. 1557. *See id.* § 1001.42(8)." Dkt. 47 ¶ 89.

- "Plaintiff Moricz's school district of Sarasota County adopted 'Gender Diverse Student Guidelines' to 'enhance ongoing efforts to make each Sarasota K-12 public school a safer place for all students – with particular emphasis on LGBTQIA community of students.' These guidelines specifically recognize that '[s]tudents who feel

accepted at school are more highly motivated, engaged in learning and committed to achieving the best possible education.'" *Id.* ¶ 106.

- "The Sarasota County Schools' 'Creating Safe Schools for All Students: Gender Diverse Student Guidelines' were updated on March 25, 2022, to remove references to elementary students." *Id.* ¶ 253.

Of the numerous Plaintiffs in this case, only **one (1)** bears any relationship whatsoever to SBSC: Moricz. Regarding Moricz, only the following references are made:

- "Plaintiff Zander Moricz was specifically instructed not to mention H.B. 1557 or his participation in this lawsuit at his high school commencement speech." Dkt. 47 ¶ 10.

- "Plaintiff Zander Moricz is an 18-year-old who recently graduated from Pine View School, a public magnet school in Osprey, Florida for academically gifted students. His parents are divorced, and he mainly lives with his mother and younger brother." *Id.* ¶ 44.

- "Moricz has known he is gay since middle school. At the time, he felt as though he had to constantly hide who he truly was. He would modify his speech and physical gestures and modulate his interests to try to avoid being perceived as gay. He dreaded going to gym class because the boys would tease him in the locker room and call him names like 'pussy' and 'faggot.' Living in this closeted adolescence was deeply debilitating for Moricz at an important time in his life. He never felt like he fit in or belonged at his school." *Id.* ¶ 45.

- "Moricz transferred to Pine View School in sixth grade; he came out as gay during his freshman year. At the time, Moricz wanted to run for president of the freshman class and be a leader for his peers, but he wanted to run only if he could do so without being in the closet. Moricz ultimately decided to run, with support from a friend, and came out to his school and the broader community in the process. To his surprise, Moricz won. He remained class president for all four years." *Id.* ¶ 46.

- "At home, Moricz's family was not at first accepting of his sexuality. It took many difficult conversations for him to feel safe and accepted. But school was different and better. Moricz has had warm and accepting teachers and friends who embraced him for who he is, and he had many opportunities at school to express who he is and take pride in his identity." *Id.* ¶ 47.

- "Moricz's ability to be himself at school allowed him to succeed academically. He had a 5.06 GPA and took nearly every Advanced Placement course his high school offered. He also served as the president of the local Model UN chapter and the head debate captain of the Pine View Speech and Debate Club. He will attend college at Harvard University in the fall." *Id.* ¶ 48.

- "On April 27, 2022, Moricz was called into his principal's office and informed that his upcoming commencement speech as senior class president could not include material related to his activism, including his activism against H.B. 1557 or his participation in this lawsuit. He was told that should he reference any forbidden topics during his speech, the administration would shut off his microphone and halt the ceremony." *Id.* ¶ 174.

- "Moricz delivered his class president speech at the Pine View graduation ceremony on May 22, 2022. Because of his principal's warning, and the administration's threat to cut off his microphone and disrupt the ceremony, Moricz did not directly address H.B. 1557 or this lawsuit, nor did he say the word 'gay.' In short, he was not permitted to give the speech he had planned to give, and he was not able to speak his own identity or values." *Id.* ¶ 175.

- "Instead, he developed a euphemism, in which he spoke about having curly hair, about the difficulties he faced growing up in Florida with curly hair—'due to the humidity,' as he put it—and about his own failed and futile efforts to 'straighten his curls.' He said that ultimately he embraced his curly hair, and he thanked his class and his teachers and principal for accepting and embracing him as curly-haired (prior to the passage of H.B. 1557). 'It's because of the love I've drawn from this community that I came out to my family,' he said. 'Now I'm

happy—and that is what is at stake.' Moricz went on: 'There are going to be so many kids with curly hair who need a community like Pine View, and they will not have one. Instead, they'll try to fix themselves so that they can exist in Florida's humid climate. . . . [My speech] needs to be about this for the thousands of curly-haired kids who are going to be forced to speak like this for their entire lives as students.' He noted that his principal had always 'loved my curls and loved me.' But, Moricz said, 'those we have given our power to'—a non-explicit reference to the passage of H.B. 1557, which he was forbidden from addressing directly—'are the reason that I have to stand here and talk about my hair during my graduation speech.' Moricz's speech was met with cheers and a standing ovation, and his principal was the first to hug him." *Id.* ¶ 176.

- "Moricz's clever coded language enabled him to navigate the day. As Moricz always has, he found a way to soldier on, to care for others, and to call for justice. But he found it dehumanizing to have to speak cagily about his own identity—to be told, in effect, by the State, that there was something shameful and wrong about him that he should not say out loud. He had been thinking about and planning the speech he would give for years, and he was unable to give that speech. As he rewrote the speech in the weeks following his meeting in the principal's office, Moricz was frustrated, hurt, sad, and at times angry that he was being censored and silenced in his efforts to speak about his own identity and values. He wanted to speak openly and candidly, as he had learned to do, but he believed that if he defied the principal's instructions, and the microphones were cut and the ceremony halted, an event that was meant as a celebration for all the students of his class would be ruined. He might put at risk the very love and support that had enabled him to flourish and find happiness at Pine View. Again, Moricz was put to the painful choice of having to hide or suppress a part of himself—to 'straighten his curls'—in order to find acceptance. He had expected that on the day of his graduation, he would be accepted and celebrated as his authentic self, without stigma or censorship. The exercise of State power to stigmatize and censor Moricz thus caused him considerable emotional harm." *Id.* ¶ 177.

- "Similarly, Moricz's teachers have said they will need to remove their images of support, including pride flags and rainbows in the

classroom.  These insignia have always indicated to Moricz that he was in a safe and welcoming environment.  But apparently out of fear that this support constitutes 'classroom instruction on sexual orientation or gender identity', teachers intend to self-censor".  *Id*. ¶ 184.

- "Nominal, compensatory, statutory, and punitive damages in an amount to be determined at trial, as well as prejudgment interest, when appropriate, including the pain and suffering experienced by Moricz as a result of the censorship of his high school graduation speech." Id.  ¶ 315.[2]

Outside of Moricz, not one single allegation is raised against SBSC by any of the other Plaintiffs, nor do the two Plaintiff organizations, either on their own behalf or through their individual members, allege specific ties to SBSC, Sarasota County, Moricz, or any of the remaining Plaintiffs.[3]  Accordingly, the scope of the allegations made against SBSC is exceedingly limited.

## **MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a short and plain statement of the claim showing the plaintiff is entitled to relief to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55, (2007).  A

---

[2] It is unclear which count in the Complaint this paragraph in the "Prayer for Relief" following the body of the Complaint specifically relates to.

[3] Defendant Equality Florida is based in St. Petersburg, Florida. Dkt. 47 ¶ 25. While Equality Florida alleges it has student, parent, and teacher members "throughout the State of Florida" (*Id.* ¶ 26), it fails to plead that any of them have any ties specifically to Sarasota County, FL. Likewise, Family Equality is headquartered in New York, NY. *Id.* ¶ 28. While Family Equality alleges it has a "presence in the southern states, with an emphasis in Florida" (*Id.* ¶ 29), it also fails to plead any specific tie to Sarasota County. Notably, the Complaint is silent regarding whether Moricz is a member of either organization.

complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While the pleading standard set forth in Rule 8 does not require detailed factual allegations, it does demand more than what is pled here – "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint like the one in this case – which contains "naked assertion[s]" without "further factual enhancement" is insufficient. *Id.* Moreover, like the allegations in this Complaint, "conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal." *Moseley v. McKesson Medical-Surgical, Inc.*, No. 8:12-cv-2666-T-30EAJ, 2013 WL 3639686, at *1 (M.D. Fla. July 11, 2013).

## I.   Dismissal is Required Because the Complaint Represents a Shotgun Pleading.

"A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). "Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of these rules' because they are 'calculated to confuse the enemy, and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked.'" *Id*. "Besides violating the rules, shotgun pleadings also 'waste scarce judicial

resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'" *Id.*  Courts have "little tolerance" for them.  *Id*.

There are "four rough types or categories of shotgun pleadings." *Id.* at 1324 (quoting *Weiland*, 792 F.3d at 1321). "The first is 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.'" *Id.* at 1324–25. "The second is a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.'" *Id.* "The third is a complaint that does not separate 'each cause of action or claim for relief' into a different count." *Id.* "And the final type of shotgun pleading is a complaint that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Id.*

For various reasons, this Complaint represents a shotgun pleading. Specifically, the Complaint is replete with conclusory and immaterial facts that bear no relation to any of the causes of action here. For instance, throughout their pleading, Plaintiffs raise facts that have no connection to their causes of action for violation of the First and Fourteenth Amendment by SBSC. As it relates to Moricz

in particular, for example, the Complaint includes a recitation of Moricz's conversation with his school principal, during which he claims that he was told his upcoming commencement speech as Senior Class President could not include material related to his activism. *See* Dkt. 47 ¶ 174. But the Complaint fails to ever connect these claims to any one specific cause of action raised by the Plaintiffs against SBSC. By way of further example, as it relates to Count I, in which Plaintiffs contend that "H.B. 1557 is void for vagueness," (Dkt. 47 ¶ 263), Plaintiffs' only allegation relating to Moricz is that the same bill "fails to provide a person of ordinary intelligence a reasonable opportunity and fair notice to understand what students can and cannot say and do…" *Id.* ¶ 264. This dichotomy exists throughout the pleading, as Plaintiffs repeatedly fail to connect any of the factual allegations presented with claims against SBSC.

Additionally, Plaintiffs repeatedly assert the same claims against the same Defendants without making even the slightest attempt to specify which of the Defendants are responsible for which acts, or which of the Defendants each claim is brought against. Instead, despite the separate and distinct categories of Plaintiffs and Defendants,[4] Plaintiffs bring all-encompassing claims against *all* Defendants in each of Counts I-V. Throughout the Complaint, where Plaintiffs bring such claims, they importantly fail to ever connect individual allegations to each particular

---

[4] Plaintiffs are organizations, students, former students, teachers, and parents. Defendants are state officials, state-level departments, and local school districts.

Defendant. As one mere example of this practice, in the Complaint's "Prayer for Relief," Plaintiffs make the conclusory assertion that Moricz is entitled to damages for censorship without linking this claim to any of the five (5) counts that SBSC is a named Defendant in – which, in turn, leaves SBSC to speculate as to what count in the Complaint this assertion relates to, if any.

For all of these reasons, each count in this Complaint represents a clear shotgun pleading and, accordingly, should be dismissed on this basis alone. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021); *Marsey v. State Bd. of Admin. of Fla.*, 497 F. Supp. 3d 1214, 1216–18 (N.D. Fla. 2020) (Winsor, J.).

## II.     Dismissal is Similarly Required Because None of the Plaintiffs in Counts I-V Possess Standing Against SBSC.

"Article III of the United States Constitution limits the role of the federal judiciary to resolving cases and controversies." *Dykes v. Dudek*, No. 4:11CV116/RS-WCS, 2011 WL 4552395, at *1 (N.D. Fla. Oct. 3, 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). "Standing is a core component of this Article III requirement that must be established by litigants before a court may exercise jurisdiction over their claims." *Id.* (citing *Lujan*, 504 U.S. at 560).

In *Lujan*, "the Supreme Court said the 'irreducible constitutional minimum of standing contains three elements.'" *Nielsen v. DeSantis*, 469 F. Supp. 3d 1261,

13

1265 (N.D. Fla. 2020) (quoting *Lujan*, 504 U.S. at 560). "First, the plaintiff 'must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (internal quotation marks and citations omitted). "Second, 'there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* (internal quotation marks, ellipses, and brackets omitted). "Third, 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (internal quotation marks omitted).

Associations such as Equality Florida and Family Equality "[have] standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Speech First, Inc. v. Cartwright*, 32 F. 4th. 1110, 1119 (11th Cir. 2022) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L. Ed. 2d 610 (2000)).

In order to establish standing, each Plaintiff must satisfy each of the factors described below. Because each Plaintiff cannot do so here, SBSC is entitled to dismissal.

### a. Injury-in-Fact

"An injury-in-fact cannot be an abstract injury." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004). "A plaintiff must point to some type of cognizable harm, whether such harm is physical, economic, reputational, contractual, or even aesthetic." *Id*. "But the injury-in-fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* (quoting *Lujan*, 504 U.S. at 563, 112 S. Ct. at 2137). "The plaintiff must be 'directly' affected apart from [his or] her 'special interest in the subject.'" *Id.* (quoting *Lujan*, 504 U.S. at 563, 112 S. Ct. at 2138). "To be particularized, 'we mean that the injury must affect the plaintiff *in a personal and individual way.*'" *Id.* (quoting *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136 n. 1) (emphasis added). "If the plaintiff is merely a 'concerned bystander,' then an injury-in-fact has not occurred." *Id*.

"[T]hreatened injury must be certainly impending to constitute injury-in-fact…[a]llegations of possible future injury are not sufficient." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338–39 (11th Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 1147, 185 L.Ed.2d 264

(2013)). "While this standard does not require a plaintiff to show that it is 'literally certain that the harms they identify will come about,' it, at the very least, requires a showing that there is a 'substantial risk' that the harm will occur." *Id.* (quoting *Clapper*, at 414 n.5, 133 S. Ct. at 1150 n.5).

"Plaintiffs who seek injunctive relief must make an additional showing to demonstrate standing." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229 (11th Cir. 2021) (citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) ("The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought.")). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate — as opposed to a merely conjectural or hypothetical — threat of future injury.' " *Id.* "When a plaintiff seeks an injunction, [they] must demonstrate that a future injury is imminent — that there is 'a sufficient likelihood that he [or she] will be affected by the allegedly unlawful conduct in the future.'" *Id.* at 1229–30 (quoting *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004)).

"Although concrete allegations of self-censorship tied to a credible threat of enforcement satisfy the injury-in-fact requirement, a 'mere assertion of a chill is insufficient.'" *Restoration Assoc. of Fla., Inc. v. Julie I. Brown*, No. 4:21-CV-263-AW-MAF, 2022 WL 1279692, at *4 (N.D. Fla. Jan. 10, 2022) (Winsor, J.) (citing *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1221 (11th Cir. 2010); *Laird v. Tatum*,

408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm ....")).

Here, of the thirteen (13) Plaintiffs who have brought claims against SBSC in this action, only Moricz has any relation to SBSC.  Specifically, Moricz was a Senior at Pine View School that graduated in **May 2022**. Dkt. 47 ¶ 44 ("Moricz is an 18-year-old who recently graduated from Pine View School"). Because H.B. 1557 does not take effect until **July 1, 2022**, however, Moricz cannot show that he has either been directly affected by the passage of H.B. 1557 or faces any substantial risk of certain *future* harm. Specifically, any claim for injunctive relief based on the prospect of future injury is impossible here as Moricz, as a new graduate, can never possibly be harmed by this law or by the actions of SBSC moving forward. Accordingly, the existence of an *imminent* future injury is impossible here.

Regarding *past* alleged harms to Moricz by SBSC that have already occurred, in Count II of the Complaint, "Plaintiffs" (which includes Moricz) conclusory assert that an equal protection "deprivation" occurred. *See* Dkt. 47 ¶ 275. Thereafter in the "Prayer for Relief," a conclusory claim for damages based on "pain and suffering experienced by Moricz as a result of the censorship of his high school graduation speech" is asserted.  *Id.* ¶ 315. But that too is impossible, as Moricz's only alleged censorship, by his own admission, was relating to his activism, (*see* Dkt. 47 ¶ 174),

and it is unclear how such alleged censorship of activism constitutes an equal protection violation.

Quite simply, although Moricz represents a member of a protected class (as a gay man), nowhere in the Complaint does he allege that he was treated differently on this basis. Rather, the Complaint makes clear that Moricz was only ever directed that his commencement speech "could not include **material related to his activism**, including his activism against H.B. 1557 or his participation in this lawsuit." Dkt. 47 ¶ 174 (emphasis added). In addition to being neither concrete nor credible, at best, Moricz's claim of self-censorship here is similarly insufficient to state a cognizable claim for past injury as it represents a "mere assertion of a chill." *See Restoration Assoc. of Fla., Inc.*, at *4 (quoting *Dermer*, 599 F.3d at 1221).

For their part, the other Plaintiffs in Count I-V similarly fail to raise any *concrete* or *particularized* threat of future injury as it relates to SBSC. Importantly, these remaining Plaintiffs have not plead any claims of past harm by SBSC. As detailed above, as current students, parents, and teachers with no connection to SBSC or Sarasota County as a whole, none of the remaining individual Plaintiffs can state a claim for injury against SBSC, **nor do they try**. Additionally, neither Equality Florida nor Family Equality (the "Organizational Plaintiffs") can state a claim against SBSC. *Speech First, Inc. v. Cartwright*, 32 F. 4th. 1110, 1119 (11th Cir. 2022) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S.

167, 181, 120 S.Ct. 693, 145 L. Ed. 2d 610 (2000)) (ruling that, like the Organizational Plaintiffs here, plaintiffs only "[have] standing to bring suit on behalf of its members when its members would ***otherwise have standing to sue in their own right***...").

Importantly, here, the Organizational Plaintiffs have failed to raise any allegation that their members have standing against SBSC in their own right. In fact, as detailed above, the Complaint is devoid of any allegation from any resident of Sarasota County outside of Moricz. At best, the remaining representative Organizational Plaintiffs are mere "concerned bystanders" who have pled no specific ties to Sarasota County or SBSC amongst its membership, which is insufficient to show that an injury-in-fact was committed specifically by SBSC. *See Koziara v. City of Casselberry*, 392 F.3d 1302, 1305.

While these Organizational Plaintiffs may argue that they have standing against SBSC ***regarding the state-level Defendants*** to challenge the constitutionality of H.B. 1557, and may even possess the ability to potentially obtain injunctive relief against them, based on the utter lack of pled ties to SBSC or Sarasota County – either on its own or through its members – the Organizational Plaintiffs lack standing ***regarding SBSC***.

Moreover, while Counts I-V of the Complaint target H.B. 1557 on various constitutional grounds, SBSC had no involvement in the drafting of the law. Notably,

**Plaintiffs do not even claim as much**. Nor has the law even become effective yet. Rather, Plaintiffs make conclusory allegations that "H.B. 1557 has already stigmatized and singled out LGBTQ students such as … Moricz … as inferior and unequal in public school settings," and "disparately harms LGBTQ students … and denies such students equal educational opportunities based on their LGBTQ orientation or identity." Dkt. 47 ¶¶ 281–82. To the extent this has created an "injury-in-fact," it was created by the drafters of H.B. 1557; not the school districts required to implement it once it becomes effective July 1, 2022.

As discussed further below, the only plausible "deprivation" pled by the Plaintiffs as it relates to SBSC involves the alleged censorship of Moricz. Because the Complaint pleads no other facts that can be interpreted as deprivations by any other Plaintiffs in Count I-V against SBSC, none of these Plaintiffs have established that SBSC has committed an injury-in-fact against them sufficient to confer them standing.

### b. Causal Connection

"A plaintiff ... need not show … that the defendant's actions are the very last step in the chain of causation." *Dream Defs. v. DeSantis*, 553 F. Supp. 3d 1052, 1078 (N.D. Fla. 2021). "[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Id.* (quoting *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir.

2003)). In *Dream Defs.*, the Northern District ruled that, as it related to the defendant sheriffs, the "challenged action" was "their enforcement of the challenged statutory provisions that cause Plaintiffs' injuries — i.e., self-censorship and the diversion of resources." *Id.* at 1081. Because "[t]he provisions at issue are each enforceable by the Defendant Sheriffs…Plaintiffs' injuries resulting from enforcement of these new provisions are traceable to the Defendant Sheriffs," and, accordingly, the plaintiffs were considered to have standing against the Defendant Sheriffs. *Id.* at 1081–82.

As made clear, here, that is not the case with SBSC. The only ties to SBSC pled in the Complaint by any of the Plaintiffs relate to Moricz. As such, the only future "traceability" or "enforcement" by SBSC that could possibly occur against the various Plaintiffs asserting claims in Counts I-V would necessarily have to be against Moricz. Because, here, the "challenged action" of SBSC is impossible by virtue of (a) SBSC's lack of role in the drafting of H.B. 1557. and (b) the bill's later-date of effect, Moricz simply cannot trace an alleged injury to SBSC. Because Moricz has already graduated, there can be no "traceability" to or "enforcement" against him once the law becomes effective July 1, 2022.

Furthermore, once H.B. 1557 becomes effective, SBSC's jurisdiction to enforce it is limited to only those schools within Sarasota County. Accordingly, SBSC has no ability to enforce the provisions of H.B. 1557 against the various other plaintiff students, parents, teachers, or organizations located outside of and without

any connection to Sarasota County. Importantly, the Organizational Plaintiffs have wholly failed to plead the existence of any members with ties, or other relationships whatsoever, to SBSC or Sarasota County. For this reason, the remaining Plaintiffs too lack "traceability." Therefore, none of the Plaintiffs in Counts I-V can establish the causal connection required for standing based on an "enforcement" theory.

### c.  Likelihood of Redress

"Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303–04 (11th Cir. 2011) (quoting *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010).

Here, a favorable decision for Plaintiffs would be injunctive relief enjoining the implementation and enforcement of H.B. 1557. As detailed above, Moricz – who has already graduated – will not be able to show redressability for the purposes of future injunctive relief as even an injunction against H.B. 1557 would not lead to favorable relief in his case. The remaining Plaintiffs, meanwhile, seek only "[p]ermanent injunctive relief enjoining Defendants from implementing and enforcing H.B. 1557..." Dkt. 47 ¶ 314. But, as detailed above, none of the remaining Plaintiffs bear any connection to SBSC. Accordingly, there is no possibility of redressability for Plaintiffs and against SBSC via injunctive relief. Because injunctive

relief against SBSC in favor of the remaining Plaintiffs would provide redress for no one, Plaintiffs lack standing for this reason as well.

In fact, the only possible redressability any of the Plaintiffs in Counts I-V can establish against SBSC involves an alleged "deprivation" of rights that has already occurred. As detailed in the Complaint and above, only Moricz could even possibly obtain relief that would redress any purported injury suffered at the hands of SBSC. But, as explained below, the only "deprivation" pled by Moricz involves a purported deprivation of equal protection rights pursuant to § 1983. Notably, however, Moricz has failed to generally state a valid § 1983 claim and specifically an equal protection claim. Therefore, for this reason as well, none of the Plaintiffs, including Moricz, can establish redressability such that they possess standing against SBSC.

### III.    Dismissal of Counts I-V is Proper Because Plaintiffs Have Failed to State a Valid § 1983 Claim Against SBSC in Each of these Counts.

"In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that 'some person, acting under color of state law, deprived plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Hamilton v. Hall*, 790 F. Supp. 2d 1368, 1370 (N.D. Fla. 2011) (quoting *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985); 42 U.S.C. § 1983).

In each of Counts I, III, IV, and V, Plaintiffs raise purely constitutional challenges to H.B. 1557 itself. However, nowhere within these challenges to this

23

legislation – which has not yet even become effective as law – as raised in these specific counts do any of the various Plaintiffs allege that SBSC either specifically had any involvement in its passage or that, as a result of its passage, SBSC has "deprived" these Plaintiffs of a right secured under the Constitution or federal law. Moreover, nowhere within Counts I-V do any of the various Plaintiffs specifically allege that any "deprivation", whether related to the constitutionality of H.B. 1557 or otherwise, has occurred "under color of state law". Furthermore, in the specific counts of the Complaint that only challenge H.B. 1557's constitutionality, the failure to plead how SBSC was involved with its passage is a failure to allege SBSC "deprived" any of these Plaintiffs in these counts. Thus, no Plaintiff has stated a valid § 1983 claim in Counts I, III, IV, and V against SBSC, and SBSC is entitled to dismissal of Counts I, III, IV, and V on this basis alone.

Moreover, regarding Count II specifically, although it is vaguely and conclusory pled (which makes it difficult to understand exactly what is being asserted by each Plaintiff against each Defendant), when read in a light most favorable to Plaintiffs, the Complaint appears to raise challenges as to the constitutionality of H.B. 1557 while also asserting that the Defendants to Count II are depriving the six (6) Plaintiffs of their equal protection rights. *See* Dkt. 47 ¶¶ 273–85. Specifically, at paragraph 275 of the Complaint, Plaintiffs assert that "Defendants have deprived Plaintiffs of the rights, privileges, or immunities

secured by the Equal Protection Clause because Defendants, without justification have treated Plaintiffs differently from other similarly situated persons based on their sex, sexual orientation, gender, gender identity, and transgender status."[56] Importantly, however, Count II fails to indicate *how* specifically the rights of these six (6) Plaintiffs were deprived by "all Defendants".

Even if, for the purposes of reading the Complaint to include a claim against SBSC in this specific count, "Defendants" is read to include SBSC and "Plaintiffs" is read to include Moricz such that a valid "deprivation" has been pled against SBSC, Plaintiffs will still have failed to plead a valid § 1983 claim here. Specifically, as detailed above, Plaintiffs have failed to plead that they were so deprived "under color of state law." Thus, SBSC is also entitled to dismissal of Count II for this reason as well.

## IV.   Count II Fails to State a Valid Claim of an Equal Protection Violation Against SBSC.

One of the claims asserted in Count II alleges a deprivation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In fact, a close review of the entire Complaint reveals Count II is the Complaint's only count that even arguably asserts a deprivation of rights by SBSC.

---

[5] Count II – while doing so in a conclusory manner – is the only count that includes a plain statement of a "deprivation" by Defendants. The assertions in the other counts, meanwhile, focus on the constitutionality of H.B. 1557.

[6] The use of "Defendants" and "Plaintiffs" in paragraph 275 is yet another example of an improper "shotgun pleading" that is discussed *supra* in Section I., above.

"To show an equal protection violation, [a plaintiff] needs to show that he was treated differently than persons similarly situated and 'that the defendant acted with intent to discriminate', based on a constitutionally protected interest." *Drisin v. Florida International University Board of Trustees*, 16-24939-CIV-WILLIAMS, 2019 WL 289581 at *13 (S.D. Fla. 2019) (citing *Radford v. Smith*, 2005 WL 2237603 at *1 (S.D. Ga. 2005).

Even when viewed in a light most favorable to Plaintiffs, the only remotely plausible deprivation by SBSC of anyone's rights revolves exclusively around the incidents surrounding Moricz's May 22, 2022 graduation speech. *See* Dkt. 47 ¶¶ 174–77. Again, even if "Defendants" in Count II of the Complaint is meant to include SBSC, "Plaintiffs" is meant to include Moricz, and the "deprivations" alluded to in paragraph 275 is meant to include the incidents described in paragraphs 174–77 of the Complaint, SBSC is similarly entitled to dismissal here as nowhere in the Complaint does any Plaintiff allege that SBSC "acted with the intent to discriminate"—a polestar of an equal protection claim. As a result, SBSC is entitled to dismissal of Count II for this reason as well as the Complaint wholly fails to state a valid claim for deprivation of any of the six Plaintiffs' (including Moricz's) equal protection rights.

**V.    Dismissal is Proper Based on Improper Venue**

For all of the reasons detailed above, SBSC contends Counts I–V must be dismissed. However, if this Court were to determine that Moricz has pled a valid § 1983 claim based on a deprivation of his rights by SBSC, any such remaining claims against SBSC in this action must be dismissed for improper venue.

Plaintiffs allege that "Defendant School Board of Sarasota County is a district school board organized and governed pursuant to Fla. Stat. § 1001.34 *et seq.*," (Dkt. 47 ¶ 89), but conspicuously omits that SBSC, as a school board, is organized and governed by the Florida Constitution as the governmental agency duly empowered to administer, manage, and operate public schools *within* Sarasota County, Florida. See, Art. IX, Sec. 4., Fla. Const.

Importantly, no allegation by the Plaintiffs has been raised that SBSC has or had any contacts with this venue. Moreover, SBSC is not alleged to have any jurisdictional authority over any of the Plaintiffs within the venue of this Court, nor is it alleged that SBSC has conducted any business activity, or been involved in any enterprise giving rise to this action with the Plaintiffs, within the venue of this Court.

Moreover, as a political subdivision, SBSC is entitled to a home venue privilege to be sued within the venue assigned to its principal geographical location—either the Twelfth Judicial Circuit in Sarasota County or the Middle

27

District of Florida. A court's analysis regarding venue should "ensure that a defendant is not hailed into a remote district having no real relationship to the dispute." *See Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1357–58 (S.D. Fla. 2009). Instead of raising any allegation that SBSC has any relationship to the dispute or this District, the Complaint instead generally alleges a legal conclusion of jurisdiction and venue of this Court, as follows:

> This Court has personal jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendants are public officials in the State of Florida, they are sued in their official capacities, and certain Defendants maintain their principal headquarters in this District. Defendants reside within this District and/or perform official duties within Florida.

Dkt. 47 ¶ 22.

As a school board within the State of Florida, SBSC has power and authority to act within the District of Sarasota County, Florida. In addition to failing to allege that SBSC has any contacts within this Court's District, or that SBSC has engaged in any relevant action or conduct within the venue of this Court's District, the Complaint similarly fails to raise any allegations that any of the Plaintiffs located ***within*** the Northern District's geographical venue have been or will be affected by any specific action taken by or conduct of SBSC. Instead, it is only Moricz who can claim any conduct which occurred within the confines of Sarasota County. Accordingly, to the extent any claim remains in this action involving SBSC and Moricz unrelated to challenges to H.B. 1557's constitutionality, venue

is only proper in either Florida's federal Middle District or its state Twelfth Judicial Circuit – not Florida's federal Northern District.

Since SBSC has not, through any action or conduct, submitted itself to the venue of this Court's district, SBSC has and hereby asserts its State and common law "home venue privilege" to be sued in the county where it maintains its principal headquarters. *See* § 47.011, Fla. Stat.; *School Bd. of Osceola County v. State Bd. of Educ.*, 903 So.2d 963, 966 (Fla. 5th DCA 2005). Such home venue privilege was created by common law, and among other things, the privilege is intended to "promote orderly, efficient, and economical government" by allowing governmental entities to be sued in the county of their headquarters, "where such suits can be defended at a minimum expenditure of effort and public funds." *Smith v. Williams*, 35 So. 2d 844 (Fla. 1948); *Florida Dept. of Children and Families v. Sun-Sentinel*, 865 So. 2d 1278, 1287 (Fla. 2004); *Fish & Wildlife Conservation Com'n v. Wilkinson*, 799 So. 2d 258, 263 (Fla. 2d DCA 2001).

In consideration of these principles, SBSC asserts that venue in the Northern District for any surviving § 1983 claims against SBSC based on a deprivation of rights is inappropriate and, accordingly, any such claims should be dismissed for this reason too.

WHEREFORE, based on the above, this Court must dismiss SBSC from Counts I-V of the Complaint. SBSC maintains that it is not a proper party to a

constitutional challenge to H.B. 1557 by any of the Plaintiffs as alleged in Counts I-V.  SBSC additionally maintains that none of the Plaintiffs in Counts I, II, III, IV, or V have stated a valid claim against SBSC based on deprivation of rights or otherwise. Further, SBSC maintains that principles of home rule make venue in the Northern District regarding any surviving deprivation claims against SBSC inappropriate.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Counsel for School Board of Sarasota County hereby certifies that, based on Microsoft Word's "Word Count," the forgoing Motion complies with Local Rule 7.1(f) because it contains 7,856 words.

Dated: June 27, 2022                    Respectfully submitted,

/s/ Daniel J. DeLeo
Daniel J. DeLeo, Esq.
Fla. Bar No. 014268
Patrick J. Duggan
Fla. Bar No. 0899461
ddeleo@shumaker.com
pduggan@shumaker.com
mpack@shumaker.com
smcclellan@shumaker.com
Shumaker, Loop & Kendrick, LLP
P.O. Box 49948
Sarasota, Florida 34230-6948
(941) 366-6660
(941) 366-3999 – Fax
*Counsel for School Board*
*of Sarasota County*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the CM/ECF e-filing portal, which will serve a copy on counsel of record.

Dated: June 27, 2022                    Respectfully submitted,

/s/ Daniel J. DeLeo
Daniel J. DeLeo, Esq.
Fla. Bar No. 014268

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants:**

| | |
|---|---|
| Robert A. Kaplan, Esq. | rkaplan@kaplanhecker.com |
| | docketing@kaplanhecker.com |
| | kmagun@kaplanhecker.com |
| | rtuchman@kaplanhecker.com |
| D. Brandon Trice, Esq. | btrice@kaplanhecker.com |
| Joshua Adam Matz, Esq. | jmatz@kaplanhecker.com |
| Kate Linsley Doniger, Esq. | kdoniger@kaplanhecker.com |
| Valerie Lynn Hletko, Esq. | vhletko@kaplanhecker.com |
| John Charles Quinn, Esq. | jquinn@kaplanhecker.com |
| | |
| Christopher Stoll, Esq. | cstoll@nclrights.org |
| Shireen A. Barday, Esq. | sbarday@gibsondunn.com |
| Elizabeth F. Schwartz, Esq. | liz@elizabethschwartz.com |
| | |
| Daniel W. Bell, Esq. | Daniel.Bell@myfloridalegal.com |
| Bilal Ahmed Faruqui, Esq. | bilal.faruqui@myfloridalegal.com |
| | Alisha.robinson@myfloridalegal.com |

Henry Charles Whitaker, Esq.       henry.whitaker@myfloridalegal.com
Anita J. Patel, Esq.               anita.patel@myfloridalegal.com
                                   Complexlitigation.eservice@myfloridalegal.com

Bob Lynn Harris, Esq.              bharris@lawfla.com
                                   ahopkins@lawfla.com
                                   ccarstens@lawfla.com
                                   jdean@lawfl.com

Jeffery James Grosholz, Esq.       jgrosholz@rumberger.com

John David Marsey, Esq.            dmarsey@rumberger.com
                                   dmarseysecy@rumberger.com
                                   docketingorlando@rumberger.com
                                   fsujdm@comcast.net

Walter James Harvey, Esq.          walter.harvey@dadeschools.net
                                   jordanmadrigal@dadschools.net
                                   laynetperez@dadeschools.net

Erin G. Jackson, Esq.              ejackson@johnsonjackson.com
                                   kharris@johnsonjackson.com
                                   lstillwell@johnsonjackson.com
Ashley Tinsley Gallagher, Esq.     agallagher@johnsonjackson.com

Joseph Matthew Wasserkrug          jwasserkrug@mwe.com
                                   amonestime@mwe.com
                                   jkohlasch@mwe.com
                                   mblancoaleman@mwe.com
                                   nmoya@mwe.com

Michael Wesly Weaver, Esq.         mweaver@mwe.com