# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

EQUALITY FLORIDA; FAMILY
EQUALITY; M.A., by and through
his parent AMBER ARMSTRONG;
S.S., by and through her parents,
IVONNE SCHULMAN and CARL
SCHULMAN; ZANDER MORICZ;
LINDSAY MCCLELLAND, in her
personal capacity and as next friend
and parent of JANE DOE; RABBI
AMY MORRISON and CECILE
HOURY; DAN and BRENT
VANTICE; LOURDES CASARES
and KIMBERLY FEINBERG;
LINDSEY BINGHAM SHOOK;
ANH VOLMER; SCOTT BERG;
and MYNDEE WASHINGTON,

                Plaintiffs,

     v.

RONALD D. DESANTIS, in his
official capacity as Governor of
Florida; FLORIDA STATE BOARD
OF EDUCATION; THOMAS R.
GRADY, BEN GIBSON,
MONESIA BROWN, ESTHER
BYRD, GRAZIE P. CHRISTIE,
RYAN PETTY, and JOE YORK, in
their official capacities as members
of the Board of Education; JACOB
OLIVA, in his official capacity as
Commissioner of Education of
Florida; FLORIDA DEPARTMENT
OF EDUCATION; BROWARD
SCHOOL BOARD; SCHOOL
BOARD OF MANATEE COUNTY;

Civil Action No. 4:22-cv-0134-
AW-MJF

SCHOOL BOARD OF SARASOTA
COUNTY; SCHOOL BOARD OF
MIAMI-DADE COUNTY;
ORANGE COUNTY SCHOOL
BOARD; ST. JOHNS COUNTY
SCHOOL BOARD; and PASCO
COUNTY SCHOOL BOARD,

      Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

On July 1, 2022, the very day that H.B. 1557 went into effect and its harmful effects ratcheted up in schools and communities across Florida, Defendants moved to stay discovery pending resolution of their motions to dismiss. But contrary to their argument, there is no general rule that discovery should be stayed while a motion to dismiss is resolved. In fact, the opposite is true: a stay of discovery is disfavored— the exception, rather than the rule. The far more common practice is for the parties to litigation to conduct discovery while motions are pending since that avoids inefficiency and unduly prolonged litigation. Accordingly, a motion to stay discovery may be granted only upon a showing of prejudice, undue burden, and necessity/reasonableness of a stay.

Defendants here come nowhere close to meeting that high bar. They make little attempt to show that they would suffer any prejudice or undue burden if a stay were denied, or that a stay is necessary and reasonable under the circumstances. In

reality, a stay of discovery would substantially prejudice Plaintiffs and unduly delay the litigation. Even before H.B. 1557 took effect on July 1, it was causing widespread injury throughout the state of Florida, including to Plaintiffs, and in recent weeks, the consequences, even before Florida children return to school next month, have been widely reported. *See, e.g.*, Valerie Strauss, *Florida law limiting LGBTQ discussions takes effect — and rocks schools*, Wash. Post (July 1, 2022, 4:14 PM), https://www.washingtonpost.com/education/2022/07/01/dont-say-gay-florida-law; Nick Papantonis, *Teachers voice concerns after Orange County previews 'Don't Say Gay' impact to classrooms*, WFTV.com (June 27, 2022, 11:31 PM), https://www.wftv.com/news/local/teachers-voice-concerns-after-orange-county-previews-dont-say-gay-impact-classrooms/R6VGDIOC2RFURLBUVT6TVWPDGA. As the law now takes effect and the harms explode, Defendants seek to close the door to discovery. Defendants tellingly offer no reason for why they waited this long—and until the effective date itself—before making a motion that they previewed and that the Court invited them to file months ago. *See* ECF No. 37 at 3–4; ECF No. 44 at 3 ¶ 7.

Under the appropriately fast-moving schedule ordered by the Court, discovery is set to close in this case less than four months from now (or on November 4, 2022), and trial is set for February 2023. *See* ECF No. 61. Issuing a stay now would effectively derail that schedule and prejudice Plaintiffs by putting off discovery and

throwing the trial schedule into serious doubt, when each day that goes by with this unconstitutional law on the books is one day longer that Plaintiffs are being injured.

For the reasons set forth below, Plaintiffs respectfully request that the Court deny Defendants' Motion, direct Defendants to respond to Plaintiffs' pending discovery requests, and allow this case presenting important constitutional issues affecting parents and children throughout the state of Florida to proceed toward an efficient and orderly resolution according to the schedule set by the Court.

## ARGUMENT

### I.    The Applicable Standard

While "[m]atters pertaining to discovery are committed to the sound discretion of the district court," it is "the usual practice in this District [to] conduct[] discovery while Rule 12(b)(6) motions are pending." *Yelapi v. Desantis*, No. 4:20-cv-351-AQ-MAF, 2021 U.S. Dist. LEXIS 93652, at *3 (N.D. Fla. Feb. 25, 2021) (Winsor, J.) (citation omitted); *see also Reilly v. Amy's Kitchen, Inc.*, No. 13-21525-Civ-Cohn/Seltzer, 2013 U.S. Dist. LEXIS 108492, at *2 (S.D. Fla. July 31, 2013) ("[T]here is no general rule that discovery be stayed while a pending motion to dismiss is resolved."). As a result, a "stay of discovery should be the exception rather than the rule." *McCrimmon v. Centurion of Fla., LLC*, No. 3:20-cv-36-J-39JRK, 2020 U.S. Dist. LEXIS 199518, at *5 (M.D. Fla. Oct. 27, 2020).

Motions to stay discovery like the one filed by Defendants here "are disfavored by the Court because stays typically delay resolution of a case and extend the life of a case beyond an acceptable time period." *McMillan v. Dep't of Corr.*, No. 5:13-cv-292-WS-GRJ, 2013 U.S. Dist. LEXIS 191249, at *4 (N.D. Fla. Oct. 21, 2013) (denying a motion to stay discovery pending a motion to dismiss). This is true because "when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997).

Motions to stay discovery are therefore typically "denied except where a specific showing of prejudice or burdensomeness is made." *Wiand v. ATC Brokers Ltd.,* No. 8:21-cv-01317-MSS-AAS, 2022 U.S. Dist. LEXIS 76675, at *3 (M.D. Fla. Apr. 27, 2022) (citation omitted). While a court in this District may "take a preliminary peek at the merits of the allegedly dispositive motion," it is only to determine whether "on its face there appears to be an immediate and clear possibility that it will be granted." *Feldman*, 176 F.R.D. at 652 (citation omitted). Instead, the proper focus of the analysis is on the detrimental effect a stay will have on the progress of the litigation. Thus, in order "to prevail on a request to stay discovery, the moving party has the burden to show not only prejudice and undue burden, but

also [the] necessity and reasonableness of a stay." *Silva v. Lee Cnty.*, No. 2:21-cv-210-JLB-NPM, 2021 U.S. Dist. LEXIS 163193, at *2 (M.D. Fla. Aug. 27, 2021).

## II.    Defendants Fail to Meet Their Burden to Stay Discovery

As noted above, in order to prevail on their motion to stay discovery, Defendants have "the burden to show not only prejudice and undue burden, but also necessity and reasonableness of a stay." *Silva*, 2021 U.S. Dist. LEXIS 163193, at *2. They come nowhere close to meeting that burden here.

**Prejudice.** Defendants make no real attempt to show that they would be prejudiced by responding to Plaintiffs' discovery requests (apart from the ordinary and inherent burdens of discovery that apply in every case). Indeed, the prejudice here runs the opposite way, since the urgent harms caused by H.B. 1557 call for prompt adjudication of this dispute. Even before the law took effect on July 1, it was already having dramatic repercussions on Plaintiffs and others throughout Florida, including by chilling Plaintiffs' speech, increasing their anxiety and distress, and leading to bullying and ostracization. *See* First Amended Complaint ("FAC") ¶¶ 173–260, ECF No. 47. The school year is set to begin next month, in just a matter of weeks, at which point these injuries will only multiply.

Commensurate with the urgency of this case, the Court has already ordered a fast-moving schedule, with discovery to close on November 4, 2022 and trial set for February 2023. *See* ECF No. 61. As this Court has previously held at a similar stage

in other cases, a discovery stay pending a motion to dismiss is inappropriate under such circumstances, since "the discovery period is not much longer, and Plaintiffs would be prejudiced by a delay." *See Yelapi*, 2021 U.S. Dist. LEXIS 93652, at *3 & Order Granting Joint Mot. to Amend Schedule, *Yelapi v. Desantis*, No. 4:20-cv-351-AW-MAF (N.D. Fla. Apr. 2, 2021), ECF No. 78 (similar period of approximately four months); see also *Seequip, Inc. v. All Am. Grinding Equip.*, *LLC,* 3:05-cv-259-RS-EMT, 2006 U.S. Dist. LEXIS 104472, at *5 (N.D. Fla. Jan. 4, 2006) (explaining that a stay of discovery would "prejudice Plaintiff and interfere with the pretrial deadlines" when pretrial deadlines "have been set and are fast approaching"). A weeks- or months-long stay of discovery puts the Court's so-ordered expedited schedule in serious jeopardy and risks needlessly prolonging this case, likely at least doubling the time it will take to get to trial.[1]

For these reasons, it is not Defendants who would be prejudiced from offering timely responses to straightforward questions about the implementation and effects of H.B. 1557. Even Defendants do not meaningfully contend otherwise. Rather, it is Plaintiffs (and many other Floridians) who face prejudice from a disruption to the

---

[1] While Defendants criticize Plaintiffs for litigating "at a leisurely pace" due to their decision not to seek preliminary injunctive relief, Mot. 8, that assertion is unfounded. As Plaintiffs explained in their Amended Complaint, they decided not to file a motion for a preliminary injunction specifically because "trial is now scheduled to take place in relatively short order." FAC ¶ 314 n.80. And Plaintiffs have otherwise litigated with alacrity, serving thorough initial disclosures and targeted—and appropriately varied—discovery requests on *all* Defendants.

litigation schedule that perpetuates the harms of H.B. 1557 and forces this Court to upset the schedule it already adopted to govern these proceedings.

**Undue Burden.** Defendants' sole argument as to burden is that Plaintiffs served "dozens of interrogatories and requests for production." Mot. 8. Although Plaintiffs carefully tailored their discovery requests and believe those requests to be appropriate in scope, Defendants' disagreement is no reason to stay discovery. *See Jolly v. Hoegh Autoliners Shipping AS*, No. 3:20-cv-1150-MMH-PDB, 2021 U.S. Dist. LEXIS 65616, at *4–5 (M.D. Fla. Apr. 5, 2021). Instead, Defendants, like any other party, can raise at a meet-and-confer their objections to any specific discovery requests they consider non-compliant with the Federal Rules of Civil Procedure and move for a protective order if the issue cannot be resolved. This case does not involve a poorly counseled or under-resourced party. Defendants are represented by multiple sophisticated counsel who routinely respond to federal lawsuits seeking the types of information properly being sought by Plaintiffs here. Moreover, parents, teachers, and school districts throughout the State are already asking many of the very same questions that Plaintiffs have posed in their discovery requests. *See, e.g.*, Papantonis, *Teachers voice concerns after Orange County previews 'Don't Say Gay' impact to classrooms*, WFTV.com, *supra*. The notion that responding to discovery requests would pose some unusual or undue burden on Defendants cannot be credited.

**Necessity and Reasonableness of a Stay.** Again, Defendants make little effort to establish the "necessity and reasonableness of a stay" under these circumstances. *Silva*, 2021 U.S. Dist. LEXIS 163193, at *2. Nor could they. For the same reasons that a stay would unfairly prejudice Plaintiffs (as described above), a stay would be manifestly *unreasonable* under the circumstances.

*     *     *

In sum, Defendants fail to meet their burden as to each of the elements that courts in this Circuit have held are necessary to warrant a stay of discovery. *See, e.g.*, *Wiand*, 2022 U.S. Dist. LEXIS 76675, at *3; *Silva*, 2021 U.S. Dist. LEXIS 163193, at *2.

## III.   Defendants' Reliance on Inapplicable Legal Principles Does Not Salvage Their Motion

Rather than attempt to meet the applicable standard for a stay, Defendants rely instead on sweeping assertions of law that lack merit. Specifically, Defendants argue that: (1) "facial challenges to the legal sufficiency of a claim or defense . . . should be resolved before discovery begins," Mot. 2 (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)); and (2) the State Defendants' claims of sovereign immunity must be resolved before discovery can commence in this litigation, Mot. 4 (citing *Cook v. Taylor*, No. 2:18-cv-977-WKW, 2019 U.S. Dist. LEXIS 42406, at *3 (M.D. Ala. Mar. 15, 2019)). As explained below, both of these arguments fail as well.

**"Facial Challenges."** Relying primarily on the case of *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), Defendants appear to contend that simply filing a motion to dismiss a complaint that contains a "facial challenge" to a law triggers an automatic stay of discovery. Mot. 2. This is incorrect—and cannot be squared with applicable authority and basic principles that disfavor blanket stays of discovery.

"Since the Eleventh Circuit handed down *Chudasama*, it has been analyzed on numerous occasions, and courts have consistently *rejected* any *per se* requirement to stay discovery pending resolution of a dispositive motion." *Bocciolone v. Solowsky*, 2008 U.S. Dist. LEXIS 59170, at *3–4 (S.D. Fla. July 24, 2008) (emphasis added) (collecting cases). "Various courts have recognized that *Chudasama* does *not* stand for the broad proposition that a court must stay discovery when there is a pending motion to dismiss." *Romacorp, Inc. v. Prescient, Inc.*, No. 10-22872-CIV, 2011 U.S. Dist. LEXIS 62839, at *6 (S.D. Fla. June 8, 2011) (emphasis added); *see Select Exp. Corp. v. Richeson*, No. 10-80526-civ-DIM, 2010 U.S. Dist. LEXIS 157312, at *3 (S.D. Fla. Dec. 1, 2010).

These courts have distinguished *Chudasama*—and reconciled *Chudasama* with the general rule disfavoring discovery stays—by placing it in the context of its particular facts, where the district court "'effectively abdicate[d] its responsibility to manage [the] case' by never ruling on a motion to dismiss that was ripe for over

eighteen months and refusing to rule on discovery disputes the parties routinely brought before the court." *McCrimmon v. Centurion of Fla., LLC*, 3:20-cv-36-J-39JRK, 2020 U.S. Dist. LEXIS 199518, at *3 (M.D. Fla. Oct. 27, 2020) (quoting *Chudasama*, 123 F.3d at 1356, 1360–62); *see Bocciolone*, 2008 U.S. Dist. LEXIS 59170, at *5 (describing the facts in *Chudasama* as "bizarre"). That, of course, is the opposite of what happened here, given that the Court has both set an appropriately fast schedule and promptly adjudicated every dispute, issue, or proposal brought before it. For similar reasons, this Court has previously declined to accept the exact same interpretation of *Chudasama* that Defendants press here. *Compare* Defs.' Mot. for Stay of Disc. and Protective Order, *Yelapi v. Desantis*, No. 4:20-cv-351-AW-MAF (N.D. Fla. Feb. 5, 2021), ECF No. 61, *with Yelapi*, 2021 U.S. Dist. LEXIS 93652, at *3–4 (Winsor, J.).

While Defendants also cite several Eleventh Circuit decisions citing *Chudasama*, these cases are mostly unpublished, nonbinding decisions holding that the district court did not abuse its discretion in staying discovery on the particular circumstances of those cases. *See* Mot. 2; *see, e.g.*, *Stepanovich v. City of Naples*, 728 F. App'x 891, 903 (11th Cir. 2018); *Roberts v. FNB S. of Alma,* 716 F. App'x 854, 857 (11th Cir. 2017). Such cases not only do not resemble the facts of this case, which involves serious constitutional claims under the First, Fifth, and Fourteenth Amendments, but also certainly do not alter "the usual practice in this District [to]

conduct[] discovery while Rule (12)(b)(6) motions are pending." *Yelapi*, 2021 U.S. Dist. LEXIS 93652, at *3 (Winsor, J.). That leaves just *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296 (11th Cir. 2020), which held only that a district court did not abuse its discretion in staying discovery pending a motion to dismiss where it (quite unusually) had "the benefit of a previous court's review of Isaiah's nearly identical claims against a different bank." *Id.* at 1309.

Because this case does not remotely resemble *Chudasama*—and because Defendants' mistaken interpretation of that case is at odds with practice and precedent in this District—there is no merit to their claim that a categorical stay of discovery is warranted here.

**Sovereign Immunity**. Defendants also argue that discovery should be stayed because the State Defendants "have moved to dismiss on sovereign-immunity grounds." *See* Mot. 4–5. They are wrong about this for two separate reasons.

*First*, Defendants' argument has no application to Plaintiffs' Title IX claim, FAC ¶¶ 308–312, since sovereign immunity has expressly been waived for such claims. *See* 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title IX of the Education Amendments of 1972 . . . ."); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007).

As such, considerations of sovereign immunity (even if otherwise applicable) offer no basis to stay discovery on Plaintiffs' Title IX claim. And because that claim alleges discrimination and disparate treatment, FAC ¶ 311, the discovery sought under that claim will not be meaningfully different from the discovery sought under Plaintiffs' equal-protection claims (particularly in light of the fact that Defendants' arguments concerning the Title IX claim rely on similar assertions about how H.B. 1557 works).

In these circumstances, the case law holds that the inapplicability of sovereign immunity to one of Plaintiffs' claims defeats arguments that discovery should be stayed as to substantially related claims. *See Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 776 (11th Cir. 2020) (finding that, where "the Legislative Defendants are not entitled to sovereign immunity against Plaintiffs' ADA claims" and would be required to provide discovery on those claims, and given the overlap between the plaintiffs' ADA claims and Rehabilitation Act claims, ordering the defendants to respond to plaintiffs' Rehabilitation Act claims would not "encroach on the Legislative Defendants' immunity"). Given the close relationship among Plaintiffs' claims—and given the obvious benefit of avoiding piecemeal discovery—the right approach is to allow discovery to proceed, not to abruptly halt it.

*Second*, and more broadly, this Court has already rejected the argument that claims of sovereign immunity warrant automatic stays of discovery, particularly

where the assertion of sovereign immunity turns on factual issues. The defendants in *Yelapi* contended that their assertion of sovereign immunity concerning the plaintiff's Rehabilitation Act claim required a stay of discovery pending their motion to dismiss. 2021 U.S. Dist. LEXIS 93652, at *3 (Winsor, J.). This Court disagreed and denied the stay, highlighting that the immunity defense was "factual" in nature. *Id.*

Here, not only have Defendants raised factual issues bearing on the immunity claims in their respective motions to dismiss, but they aggressively dispute what role (if any) each of them plays or will play in interpreting and enforcing the law—factual disputes that bear directly on the question whether they are entitled to sovereign immunity.

Plaintiffs contend that each of the State-level agency Defendants and their members are expressly tasked with implementation and enforcement of the new law, as are the school districts upon which it imposes liability and duties to ensure compliance. *See, e.g.*, FAC ¶¶ 83–93. The Governor, for his part, has a constitutional duty to ensure that the laws are followed, FAC ¶ 82—and, as Orange County School Board argues, he has an intimate role in enforcing these sorts of initiatives, *see* Def. Orange Cnty. Sch. Bd. Mot. to Dismiss 6–7, ECF No. 63 ("OCSB MTD"). But as a review of the various Defendants' motions to dismiss makes clear, many of them disclaim responsibility for enforcing H.B. 1557, and point at each other, in what

looks like a circular firing squad. *Compare, e.g.*, State Defs.' Mot. to Dismiss 22, ECF No. 68 ("The Governor has no specific authority under H.B. 1557, which is enforced by the State Board of Education and private citizens."), *with* Def. Sch. Bd. of Broward Cnty. Mot. to Dismiss 9, ECF No. 62 ("[T]he establishment of the complained of prohibition on classroom instruction emanates from Florida legislature [*sic*] and will thereafter be more fully defined by rules and regulations adopted by the Florida Department of Education."), *and* OCSB MTD 3 ("The operative arguments to invalidate the law are solely against the state actors.").

Accordingly, just as in *Yelapi*, Defendants have raised fact questions concerning their role with respect to the statutory scheme. These arguments bear directly on the validity of their immunity defenses and thus defeat their argument that a sovereign-immunity defense prohibits any discovery into the implementation of H.B. 1557 at this early stage in the litigation.

## IV. A Preliminary Peek at the Merits Provides No Reason to Stay Discovery

While the Court may "take a preliminary peek at the merits of the allegedly dispositive motion," such a "peek" is only to determine if "on its face there appears to be an immediate and clear possibility that it will be granted." *Feldman*, 176 F.R.D. at 652. There is no such "immediate and clear possibility" here.

**Standing.** Defendants breezily assert that they "raise serious questions about Plaintiffs' standing and, with it, the Court's subject-matter jurisdiction." Mot. 3.

Not so. As we will explain at greater length when we file our substantive opposition brief, Plaintiffs have alleged an injury-in-fact as to each of their claims: they have, in the Eleventh Circuit's words, "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017).

First, as outlined at length in the Amended Complaint, the law already has chilled Plaintiffs' First Amendment rights by causing them to withhold from various forms of speech in which they would otherwise have engaged and participated. *See, e.g.*, FAC ¶¶ 173–201. H.B. 1557 thus "cause[s] a reasonable student to fear expressing" speech that may be prohibited under the law. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1121 (11th Cir. 2022). "That sort of 'objective chill' suffices" for purposes of standing. *Id.* at 1122.

Second, Plaintiffs have plausibly alleged that H.B. 1557's vagueness "exerts a chilling effect" on their speech and actions, *see generally* FAC ¶¶ 173–260, "which is enough for [Plaintiffs] to show an injury-in-fact in the form of self-censorship." *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010). Finally, Plaintiffs have plausibly alleged standing to challenge H.B. 1557 under the Equal Protection Clause. H.B. 1557's discriminatory and disparate effects on Plaintiffs, *see* FAC ¶¶ 273–85, as alleged, are a form of "denial of equal treatment" that clearly constitute

an "injury in fact." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

In addition to alleging injury, Plaintiffs also satisfy the traceability and redressability requirements of Article III because the alleged "injuries are directly traceable to the passage of" H.B. 1557. *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1205 (N.D. Fla. 2020). Plaintiffs, of course, are not required in these circumstances to show that Defendants themselves caused Plaintiffs' injury. *See id.* (finding standing satisfied where the "Plaintiffs' injuries are directly traceable to the passage of" the constitutional amendment at issue); *see also Speech First*, 32 F.4th at 1119.

**Sovereign Immunity.** As noted above, no blanket rule exists that sovereign-immunity defenses must be resolved before discovery may begin in a case like this raising significant free speech, due process, and equal protection issues. *See* Mot. 4. Regardless, the "peek" that the case law suggests, *Feldman*, 176 F.R.D. at 652, at the sovereign-immunity defense shows that it fails. Each of the State Defendants who has moved to dismiss on this ground (Governor DeSantis, the Board of Education and its members, and the Commissioner of Education) certainly has "some connection with the enforcement of" H.B. 1557, *Ex parte Young*, 209 U.S. 123, 157 (1908), consistent with their executive and administrative functions in the State of Florida and Florida's education system. *See, e.g.*, FAC ¶¶ 82–86. Governor

DeSantis, for example, has a constitutional duty to "take care that the laws be faithfully executed" and is "the chief administrative officer of the state responsible for the planning and budgeting for the state." Fla. Const., art. IV, § 1(a). The Board of Education has the powers and duties to, among other things, "enforce systemwide education goals and policies except as otherwise provided by law" and "adopt and periodically review and revise the Sunshine State Standards." Fla. Stat. §§ 1001.02(2)(r), 1001.03(1). And the Commissioner is the Executive Director of the Department of Education, and "is responsible for giving full assistance to the State Board of Education in enforcing compliance with the mission and goals of the Early Learning-20 education system." Fla. Stat. §§ 20.15(2), 1001.10(1). These Defendants cannot simply duck when faced with this important lawsuit.

**Equal Protection (Count II).** Again preferring to litigate the merits rather than the applicable stay factors, Defendants argue that Plaintiffs' equal-protection claim fails because "the gravamen of an equal protection claim is differential governmental treatment, not differential governmental messaging." Mot. 5 (quoting *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017)).[2] But "differential governmental

---

[2] In any event, the "differential governmental messaging" that Defendants blithely reference actually would raise substantial questions under the First Amendment. *See, e.g.*, *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1206 (11th Cir. 2009) ("Under *Pico*, . . . if the Board removed the book simply because it disliked the ideas contained in it and by removal of the book sought to prescribe political orthodoxy or other matters of opinion, then the Board violated the plaintiffs' First Amendment rights." (citing *Bd. of Educ. v. Pico*, 457 U.S. 853, 872 (1982))); *Pratt v. Indep. Sch. Dist. No. 831*, 670 F.2d 771, 779 (8th Cir. 1982) (invalidating the

treatment" is precisely what Plaintiffs allege here. The crux of Plaintiffs' equal-protection claim is that H.B. 1557 has already had and will have a disparate impact on LGBTQ people—and that discriminatory purpose was a "motivating factor" in enacting H.B. 1577 under *Village of Arlington Heights v. Metropolitan Housing Development Corp.* 429 U.S. 252, 266 (1977); *see also, e.g.*, *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995); *City of S. Miami v. DeSantis*, 561 F. Supp. 3d 1211, 1261 (S.D. Fla. 2021). The application of this framework triggers heightened scrutiny, which is fatal to H.B. 1557 here.

**Title IX (Count VI).** Defendants argue that Plaintiffs' Title IX claim is "implausible," Mot. 6, because H.B. 1557 regulates only "classroom instruction"—supposedly meaning only "curricular materials"—and Title IX does not require the use of any specific such curricular materials. Mot. 6. But Defendants' cramped reading of the statute as governing solely "the use of particular textbooks or curricular materials," Mot. 6, does not follow from the plain meaning of the statutory language for a number of reasons, including (of course) that the Legislature did not use the words "textbooks" or "curriculum" anywhere in the statute. Indeed, the words that the Legislature did use are far broader and therefore not susceptible to

---

school board's removal of films from the curriculum, notwithstanding their availability in the library, where the board's action "clearly indicat[ed] that the ideas contained in the films are unacceptable and should not be discussed or considered. This message is not lost on students and teachers, and its chilling effect is obvious").

such a constricted reading. *See* FAC ¶ 112. Moreover, Defendants' arguments in this regard fail to acknowledge H.B. 1557's *actual* effects and harms, including disparate treatment on the basis of sex through exclusion from and denial of the benefits of equal participation in Florida's public-education system. *See, e.g.*, FAC ¶¶ 173–260. To the extent Defendants take issue with the facts alleged in the Amended Complaint, or the way that school districts are interpreting the dictates of H.B. 1557, that is a basis for *authorizing* discovery to begin promptly, not a basis for curtailing it.

**First Amendment (Counts III, IV, V).** Defendants dismiss Plaintiffs' First Amendment claims as providing no "arguable path to discovery" because they are "subject, at most, to rational-basis review." Mot. 6. But Defendants' casual reference to rational-basis review obscures the actually-applicable constitutional principles and requirements. Students have a "right to receive information and ideas," and school officials may not exercise their discretion "in a narrowly partisan or political manner." *Bd. of Educ. v. Pico*, 457 U.S. 853, 870 (1982) (plurality). Furthermore, officials offend students' First Amendment right to receive information where their actions are not "reasonably related to legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988). Thus, censoring student speech absent a showing of "material and substantial interference with schoolwork or

discipline, is not constitutionally permissible." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969).

Guided by these principles and authorities, courts regularly consider the factual motivation for state actions, whether under either the *Board of Education v. Pico*, 457 U.S. 853, or *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, standard. *See, e.g.*, *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1206 (11th Cir. 2009) ("Under *Pico*, . . . if the Board removed the book simply because it disliked the ideas contained in it and by removal of the book sought to prescribe political orthodoxy or other matters of opinion, then the Board violated the plaintiffs' First Amendment rights." (citations omitted)); *Virgil v. Sch. Bd. of Columbia Cnty.*, 862 F.2d 1517, 1520 (11th Cir. 1989) (discussing whether a school board's motivation for removing material from the curriculum due to "sexuality" and "vulgar . . . language and subject matter" was reasonably related to "legitimate pedagogical concerns"); *Gonzalez v. Douglas*, 269 F. Supp. 3d 948 (D. Ariz. 2017) (finding that an effort to eliminate a Mexican-American Studies program from a public-school district violated students' First-Amendment right to receive information where the effort was driven by discrimination).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion be denied and the Court order Defendants to respond to Plaintiffs' discovery requests.

Dated: July 15, 2022

/s/ Roberta A. Kaplan
Roberta A. Kaplan (NY #2507093)*
John C. Quinn (NY #4965000)*
Kate L. Doniger (NY #5128251)*
D. Brandon Trice (NY #5140017)*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel.: (212) 763-0883
rkaplan@kaplanhecker.com

Joshua Matz (DC #1045064)*
Valerie L. Hletko (DC #485610)*
KAPLAN HECKER & FINK LLP
1050 K Street, NW, Suite 1040
Washington, D.C. 20001
Tel: (212) 763-0883
jmatz@kaplanhecker.com

Christopher Stoll (CA #179046)*
NATIONAL CENTER FOR LESBIAN
RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Tel.: (415) 392-6257
CStoll@nclrights.org

Elizabeth F. Schwartz (FL #114855)
ELIZABETH F. SCHWARTZ, P.A.
3050 Biscayne Blvd., Suite 600
Miami, Florida 33137
Tel.: (305) 674-9222
liz@elizabethschwartz.com

Michael W. Weaver (IL #6291021)*
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, Illinois 60606
Tel.: (312) 984-5820
mweaver@mwe.com

Joseph M. Wasserkrug (FL #112274)
MCDERMOTT WILL & EMERY LLP
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
Tel.: (305) 347-6501
jwasserkrug@wme.com

*Attorneys for Plaintiffs*

*\* admitted pro hac vice*