# United States District Court
# Northern District of Florida

| | | |
|---|---|---|
| EQUALITY FLORIDA, ET AL, | ) | Number: 4:22-cv-00134-AW-MJF |
| PLAINTIFFS, | ) | |
| V. | ) | |
| RONALD DESANTIS, ET AL, | ) | |
| DEFENDANTS. | ) | |

## Verified Motion For Injunction Pending Appeal against Defendant DeSantis

NOW COMES, Scott Huminski ("Huminski"), and under oath, swears, deposes, states and pursuant to F.R.C.P. 62 and F.R.App.P 8 moves that the Court issue an injunction pending appeal against Defendant DeSantis prohibiting his furtherance and continuance of his conduct intending to breathe life into a hopelessly *void ab initio* judgment issued in State v. Huminski, 17-mm-815, Lee County Court, that imposed fines, fees and costs upon Huminski that the State of Florida continues to attempt to collect to this day and otherwise benefit from the "criminal conviction" in a *sui generis* common law case that prejudices Huminski with ongoing constant and continuing collection activities harassing Huminski and prejudicing him with regard to employment, housing, credit and other prejudice that flows from a criminal conviction and **prohibits Huminski's communication with the entire government of Florida for life** (not disimilar to the speech prohibitions foisted upon Plaintiffs) and continues to cause shock and injury to body and mind of Huminski, he moves as follows:

1. Huminski was prosecuting a civil case, Huminski v. Town of Gilbert, et al, 20th Circuit Court, 17-CA-421 in the spring of 2017.
2. Huminski filed Chapter 7 bankruptcy in April 2017 and his claims in Gilbert became assets of the estate in bankruptcy staying the civil matter, Gilbert, pursuant to 11 U.S.C. § 362.
3. Upon the trial court in Gilbert refusing to obey and respect the automatic stay of bankruptcy, Huminski removed Gilbert to the United States District Court (Bankruptcy Unit) on June 26, 2017 and the case was docketed as an adversary proceeding in the

FILED USDC FLND GV
JUL 19 '22 AM8:28

Bankruptcy Court, Huminski v. Town of Gilbert, et al., 9-17-ap-00509-FMD (U.S.D.C. Middle District of Florida, Bankruptcy Unit) ("Gilbert Bankruptcy Case").

4. There existed allegations of contempt, a *sui generis* common law offense under Florida law (also Federal law and the stare decisis in virtually all jurisdictions in the U.S.), in the Gilbert Bankruptcy Case that had been removed from the State Courts on 6/26/2017.

5. The State Court chose to hold a hearing in the removed case, Huminski v. Town of Gilbert, et al, three days after removal on June 29, 2017 in the 20th Circuit Court despite its status as removed to the federal courts under Bankruptcy Rule 9027 three days prior.

6. At hearing on 6/29/2017 in State court, after removal, the following true and correct excerpts from the sworn transcript of the June 29, 2017 State court hearing in Gilbert (removed on 6/26/2017) included these colloquies,

THE COURT: Okay. We're here on an order to show cause. This is essentially an arraignment proceeding today. So, I think the things that we have to do today are set court dates for various proceedings, as well as address issues of bond and/or pretrial release, am I correct?

MR. SARLO: Yes, Judge.

THE COURT: Okay. So, first thing is bond and/or pretrial release. Any arguments from anybody?

MR. KUNASEK: Judge, the State will defer to the Court with respect to that. I know there was an issue with serving him with the initial order to show cause. So, his availability may be an issue and the Court's well aware of that more than I am, so I will defer to the Court with

Pre-trial release is not an option for civil cases or *sui generis* common law cases nor is an "arraignment", the State court proceedings continue,

MR. SARLO: The clerk very well may ask us --

THE COURT: I know in Collier County, because I've done a couple of these proceedings in Collier, they do open a new file. So, if you want that to happen, I would think that somebody's gotta ask -- ask the Clerk to do that.

Okay. So, let's see. Middle of August is okay for everybody?

MR. KUNASEK: Yes, Your Honor.

THE DEFENDANT: No.

THE COURT: Could we do it at --

THE DEFENDANT: This case has been removed to bankruptcy court, so I'm not good with that.

THE COURT: Pardon me?

THE DEFENDANT: This case has been removed to bankruptcy court --

THE COURT: This case hasn't been removed to any place, Mr. Huminski.

THE DEFENDANT: Under bankruptcy rule 9027 --

THE COURT: Mr. Huminski, A, you're not a lawyer and, B, this case doesn't get removed to bankruptcy court. That's not how the law works. Okay. You need to --

THE COURT: Yeah, 17-CA-421.

And, also, Madame Clerk, would you please check with the clerk's office because, again, in

eFiled Lee County Clerk of Courts Page 22

Page 2

Collier, they give -- they set up a new file. It's a little bit difficult to have a civil -- a criminal proceeding in a civil case. So, if you could check with somebody about that, maybe we can get that straightened out, too.

THE DEFENDANT: Your Honor, I'd like

The State Court continues illogically categorizing a *sui generis* common law offense, indirect contempt, as a statutory criminal offense in this passage and above,

This is a criminal proceeding. You can go to jail for this. You have violated -- it is alleged that you have violated court orders. It's alleged you have committed indirect criminal contempt. You can go to jail.

eFiled Lee County Clerk of Courts Page 7

Page 2236

Note that Huminski was convicted of contempt in the above passage, amazingly, at arraignment in this alleged "criminal case" despite the non-existence of a statute or criminal code defining the alleged *sui generis* offense (pending in the

federal courts after the State Court was divested of jurisdiction by the removal of 6/26/2017) as a statutory misdemeanor or a felony. The proceedings continue,

THE DEFENDANT: The protective orders mention civil, as well, and civil can be removed to bankruptcy court.

THE COURT: No, sir, you're misinformed. Nothing gets removed from this court to bankruptcy court. That doesn't happen ever.

So, you need to talk to your attorney, who I've appointed because he's the one that knows the law.

THE DEFENDANT: He doesn't know bankruptcy law.

Apparently, a delusional jurist in the above passage believes that proceedings held by her civil, criminal or <u>sui generis common law</u> are absolutely immune from removal to federal court and the claims by the federal courts that they have jurisdiction by operation of a self-executing notice of removal filed in both the State and Federal Courts on 6/26/2017 can be disregarded as nonsense. Despite the Supremacy Clause, this particular State Court believes it is superior to the federal courts and can ignore the jurisdiction of the federal courts.

7. Huminski filed his Notice of Removal of <u>Gilbert</u> on 6/26/2017 in both State and Federal Court and served them on the same date in compliance with Bankruptcy Rule 9027.

8. The now removed federal action <u>Huminski v. Town of Gilbert, et al.</u>, 9-17-ap-00509-FMD (U.S.D.C. Middle District of Florida, Bankruptcy Unit) previously the State Court <u>Gilbert</u> case, 17-CA-421, 20th Circuit, morphed into <u>State v. Huminski</u>, 17-MM-815, Lee County Court via the manufacture of a forged County Court order by the government (prosecutors, court personnel, etc.), not a judge, that was filed in the Lee County Court and held out to be a legitimate County Court order when in reality it was a transparent forgery. See generally, Motion to Intervene.

9. Huminski was not served with any commencement document in State case State v. Huminski, he was served with a show cause order in the Gilbert case (not State v. Huminski) absent 117 pages of attachments which a State's witness confirmed at trial as not served in the original State civil case. The was no service in State v. Huminski and the record contains no proof of service.

10. The only document that resembles a charging/commencement document in State v. Huminski, a forged show cause order, mentioned 117 pages of attachments that were not filed until the date of trial and alleged conviction and Huminski's motion for a bill of particulars was denied when he sought to determine the basis of State v. Huminski. See *Geary v. State, 139 So. 2d 891 (Fla. 3d DCA 1962)* If a court enters an order prior to the filing of proper pleadings, the court lacks jurisdiction. *Lovett v. Lovett*, 93 Fla. 611, 112 So. 768, 775-76 (1927).

11. During 2021 and 2022, Defendant DeSantis conspired with his attorney, Attorney General Ashley Moody, Esq., to foil Huminski's attempts in the Florida 11th Judicial Circuit and the Florida Third District Court of Appeal to vacate and/or declare void the **lifetime prohibition on communication with the entire State of Florida government** and declare the monetary judgment rendered in State v. Huminski *void ab initio*, stop the collection activities by the State on the *void ab initio* debt arising from State v. Huminski and to declare the criminal conviction *void ab initio* thereby freeing Huminski from the ongoing burden and prejudice the criminal conviction has upon Huminski, or any citizen for that matter, and clear the way for Huminski's obtaining a Florida Driver's License which is currently prohibited because of the unpaid costs/fees/fines arising out of State v. Huminski and remedy/vacate the **perpetual speech prohibition with the entire State of Florida** set forth in the judgment in State v. Huminski.

12. The judgment obtained by the State of Florida in State v. Huminski contains the provision that **Huminski not communicate with the entire government of Florida in perpetuity**, a First Amendment violation that Defendant DeSantis along with his counsel (Ashley Moody, Esq.) endeavored to make permanent and maintain in 2021 and 2022 with DeSantis' filings in the Florida 11th Circuit and Third District Court of Appeal. Similar future unconstitutional conduct of the Governor must be enjoined pursuant to the First Amendment and rudimentary Due Process. The top executive of a State should not also be the chief civil rights violator of a State and violator of 18 U.S.C. § § 241, 242, criminal violations that can not be addressed in a civil matter.

13. An attorney (Ashley Moody, Esq., Florida Attorney General) and her client (Defendant DeSantis) share a unified entity/identity status during Huminski's State court actions, they are one in the same, and this creates a *per se* conspiracy presentation and they filed multiple Motions to Dismiss and other adverse papers in the State courts to maintain the State's ability to collect on its ill-gotten gains achieved in State v. Huminski and continue the **lifetime speech prohibition** that Huminski suffers.

14. Defendant DeSantis used multiple legal techniques to assure that the *void ab initio* judgment in State v. Huminski haunted Huminski for the remainder of his life in violation of procedural and substantive Due Process which forbids and negates/nullifies judgments rendered in the absence of any and all jurisdiction. Forgery of the commencement document in State v. Huminski also violates rudimentary Due Process' requirement for fundamental fairness. Using crime, forgery, to transform a *sui generis* common law offense into a statutory crime is repulsive to Due Process, yet, Defendant DeSantis seeks to make this constitutional transgression permanent.

15. The conduct in 2021 and 2022 of Defendant DeSantis transparently sought to deny Huminski his rights under the First Amendment and Due Process with multiple Motions to Dismiss and other adverse papers that foiled Huminski's legitimate claims to be free of burden from a *void ab initio* judgment and Defendant DeSantis succeeded in this scheme/conspiracy with the assistance and counsel of Ashley Moody, Esq..

16. The conduct of Defendant DeSantis and counsel achieved a cover-up of the felony forgery of a court order by prosecutor Anthony Kunasek, Esq. which led to the filings in this Court by Huminski. Conduct that constitutes acts of moral turpitude by Defendant DeSantis and counsel as accessories to the felonies of Prosecutor Kunasek (deceased - suicide).

17. Approximately 30 days after the Huminski filings in the instant matter detailing the forgery, corruption and crime of Mr. Kunasek, he committed suicide with a gunshot wound to the head. Litigation that Defendant DeSantis forced via his choice to cover-up the crimes of Kunasek rather than addressing them.

18. Upon information and belief, Defendant DeSantis could have stipulated to the relief being sought by Huminski and directed the various governmental entities to clear Huminski's name and credit rating and **end the perpetual First Amendment prohibitions**, but, chose to see to it that the Treasury of the State of Florida enjoyed unjust enrichment related to the costs, fines and fees it is still attempting to collect from

Huminski related to State v. Huminski, a matter that is irredeemably *void ab initio*. A Constitutional, moral, ethical and rational approach to the *void ab initio* judgment probably would have spared the life of prosecutor Kunasek. Defendant DeSantis' handling of the Huminski State cases in 2021 and 2022 proximately caused the suicide of Attorney Kunasek in April of this year one month after the filings of Huminski in this case. Death is a predictable side-effect of Defendant DeSantis' furtherance of the patently criminal governmental conduct infecting State v. Huminski. Many times the cover-up can be worse than the crime.

19. Huminski's motion for intervention sought declaratory and injunctive relief against Defendant DeSantis concerning his conduct related to the *void ab initio* judgment in State v. Huminski and the associated **First Amendment prohibitions**.

20. A true and correct excerpt from the final judgment order and Mr. Kunasek (deceased) requesting the lifetime speech prohibition (below and at Para. 29) after the Court stripped Huminski of defense counsel despite his objection without a Faretta hearing, this speech prohibition is listed in the final written order as a lifetime punishment along with the costs, fees and fines that the State of Florida attempts to enforce and collect on to this day which will continue in perpetuity (the costs, fees, fines and **speech prohibitions** listed in the judgment order do not expire) is as follows:

____ Clerk to Update Case w/ Defendants Information Listed ____ COS Fees Due & Owing in the amount $________

DEFENSE MOTION FOR MISTRIAL - DENIED; MOTION TO DISMISS - DENIED; ANY FUTURE FILINGS ARE TO BE WITH THE SIGNATURE OF A LICENSED ATTORNEY; NO COMMUNICATION WITH THE PARTIES IN THE CIVIL OR CRIMINAL CASE

Pre-Sentence Investigation/Sentencing

21. A true and correct excerpt of the docketing of State v. Huminski that lists F.S. 900.04 as the NON-criminal statute Huminski was prosecuted under and "No charge – No level" is as follows,



17-MM-000815 : State of Florida vs Huminski, Scott A

| | | | |
|---|---|---|---|
| Case Type: | Misdemeanor | Date Filed: | 06/30/2017 |
| Location: | County Criminal | UCN: | 362017MM000815000ACH |
| Judge: | James R Adams | Status: | Closed |
| Citation Number: | Misdemeanor | Appear By Date: | |

Parties

| Name | DOB | Type | Attorney | Atty Phone |
|---|---|---|---|---|
| State of Florida | | Plaintiff | Anthony Kunasek | 239-533-1000 |
| Scott Huminski | 12/01/1959 | Defendant | | |

Charge Details

| Offense Date | Charge | Plea | Arrest | Disposition | Sentence |
|---|---|---|---|---|---|
| 06/05/2017 | 1. CONTEMPT OF COURT CIRCUIT OR COUNTY Statute: 900.04 No Charge - No Level | 3/16/2018 Pled Not Guilty | | 3/16/2018 Non Jury Trial - Adjudicated Guilty | |

22. A true and correct docketing of the Gilbert case upon removal to the federal courts is as follows (note the text: "Date Removed From State" below of 6/26/2017 which was followed by the State court hearing of 6/29/2017 "arraigning" Huminski for the alleged "crime" of contempt, a *sui generis* common law offense – not a crime),

| Name | Case No. | Case Title | Chapter / Lead BK case | Date Filed | Party Role | Date Closed |
|---|---|---|---|---|---|---|
| Huminski, Scott Alan (pty) (2 cases) | 2:17-ap-00509-FMD | Huminski v. Town of Gilbert, AZ et al | *Lead BK:* 2:17-bk-03658-FMD Scott Alan Huminski | 06/26/17 | Plaintiff | 08/24/17 |
| | 2:17-bk-03658-FMD | Scott Alan Huminski | 7 | 04/28/17 | Debtor | 08/24/17 |

CM/ECF Query Reports Utilities Help Log Out

**U.S. Bankruptcy Court**
**Middle District of Florida (Ft. Myers)**
**Adversary Proceeding #: 2:17-ap-00509-FMD**

*Assigned to:* Chief Judge Caryl E. Delano
*Lead BK Case:* 17-03658
*Lead BK Title:* Scott Alan Huminski
*Lead BK Chapter:* 7
Show Associated Cases

*Date Filed:* 06/26/17
*Date Terminated:* 08/24/17
*Date Removed From State:* 06/26/17

*Demand:*

*Nature[s] of Suit:* 01 Determination of removed claim or cause

23. Following are true and correct sworn transcript excerpts from State v. Huminski with the Court describing how Circuit Court orders "dissolved" into the County Court (a court of inferior jurisdiction) and how a lower court (a County Court) was able to divest jurisdiction from a higher court (Circuit Court) or as the County Court stated "Well, they've [the Circuit Court] divested themselves of jurisdiction ..." (which never happened),

THE DEFENDANT: Not in the circuit court.

THE COURT: Okay.

THE DEFENDANT: The circuit court order --

THE COURT: Well, they've divested themselves of jurisdiction at this point, so the orders that I signed relative to your case are the warrants that you should be attending to.

24. Upon information and belief the only way a Court can divest itself of jurisdiction, as mentioned in the previous paragraph, is via a dismissal of a case and Judge Krier has mentioned that the case was being transferred from civil to criminal court, a procedure that has no basis in statute, Rule or any other Florida authority. This corrupt procedure placed the "contempt" portion of the civil case in the position of concurrent pendancy before two State courts, a Circuit Court and a County Court. It was a new invention of the 20th Circuit and Lee County courts used to harass and terrorize with the misuse and abuse of the power of criminal prosecution. Below is a true and correct transcript excerpt with the Court explaining how the hijacking of a Circuit Court case by a County Court impacts the orders of the Circuit Court (this particular jurist had been condemned for multiple case hijackings in the past, YORLAN ESPINOSA PENA v. STATE OF FLORIDA, 2D17-4465 (2nd DCA, Fla. Dist. Ct. App. 2018) ),

THE DEFENDANT: I don't think they overrule the circuit court orders of Judge Krier.

THE COURT: Sir, the circuit orders -- the circuit court orders of Judge Krier have sort of been dissolved into this case. So, any subsequent orders addressing similar issues that I've issued are the ones that you should be concerned about.

THE DEFENDANT: That's not evident on the record in the circuit court case --

25. A true and correct excerpt from the sworn transcript concerning personal jurisdiction is as follows:

THE DEFENDANT: The service part is the most critical part of that motion. It says parties are to go to the internet to get copies of this order.

THE COURT: Okay.

THE DEFENDANT: Showing the exact procedure that I find is a problem in this case is that I was never served with anything.

THE COURT: Okay. But that's the --

MR. KUNASEK: I don't have a position -- the State doesn't have a position on that, Judge.

THE COURT: Okay. All right. Okay. I don't -- okay. Mr. Huminski, I guess I'm not going to rule on that at all. All right.

26. A true and correct sworn excerpt from the transcript concerning the stripping of a criminal defendant of defense counsel (6th Amendment) is as follows:

THE DEFENDANT: Just that there was no Faretta Hearing, which is required to strip someone of counsel, like I was. It's Faretta versus California. And that's been adopted by the Florida Supreme Court as a standard in Florida, as well. And it's sort of like when you take a plea agreement, it goes through a specific colloquy with the defendant saying, you know, you understand you're giving up the right to attorney, etcetera, etcetera, just as -- similar to a plea agreement.

THE COURT: Okay. Anything from the State on that issue?

MR. KUNASEK: No, Judge.

27. A true and correct excerpt from Huminski's examination of the deputy that served a show cause order in Huminski v. Town of Gilbert, et al, 17-CA-421, 20th Circuit Court and never served anything in State v. Huminski, 17-MM-815, Lee County Court and what he did serve in Gilbert was missing 117 pages of content is as follows:

Q. Are there any exhibits listed if you read that carefully? It refers to exhibits. See exhibit A, see exhibit B, etcetera, etcetera.

A. Yeah, it mentions exhibits.

Q. And did you serve those exhibits?

A. I don't think so. I just served these in front of me here.

THE DEFENDANT: Exactly. Thank you.

THE DEFENDANT: Your Honor, jurisdiction is achieved though ser -- personal jurisdiction is achieved through proper service, which hasn't taken place by the State's own witness.

28. Only 3 pages were in front of the State's witness in the colloquy from the prior paragraph, not the full 120 pages that should have been served that constituted the full show cause order in the State Circuit Court. The State of Florida in the prior paragraph indicates its belief that service in a civil case where the State is not a party suffices as service in a criminal case in a different court where the State injected itself as plaintiff absent the filing of a charging document whereby the commencement document was a forged court order filed by an unknown entity and not signed by an attorney representing the Plaintiff, the State of Florida, not did it list the State as a Plaintiff, yet, the caption State v. Huminski was somehow adopted by the clerk's office indicating widespread corruption.

29. A true and correct sworn transcript excerpt describing the overall goal of the State of Florida in regarding the *void ab initio* State v. Huminski case was to silence core protected political expression critical of government is as follows:

exhibits, he often times will send email blasts including 300 people. So, I would ask that that immediately cease and desist with respect to communication, third party or direct or indirect.

THE COURT: Mr. Huminski?

THE DEFENDANT: If he could be more specific in that. That's kind of a migration thing and the first amendment requires that any such orders impacting speech be narrowly tailored to a specific governmental interest. So, if he -- if he can narrowly tailor it that would be nice, instead of just saying don't email anyone.

THE COURT: I think he's talking about the parties who are -- and I'm going to assume that are involved -- and I don't know, for lack -- I'll say that -- you know, what's going on with the town of Gilbert, Arizona and how they are related, to some extent, to Lee County.

MR. KUNASEK: I don't believe -- well,

they're related to the extent that they were

brought in as a defendant in this -- Mr. Huminski's case.

THE COURT: Okay.

THE DEFENDANT: That extends the Court's jurisdiction nationwide, I think, that request.

THE COURT: What's the other issue that you have, Mr. Huminski?

THE DEFENDANT: I don't -- did I mention one?

THE COURT: You did.

THE DEFENDANT: Oh, for sentencing, well, I guess I'll skip it.

THE COURT: Okay. I'll add in the additional condition of probation that he is not to

communicate with the other individuals in the other case, also, as requested by the State.

30. In the prior paragraph, the Court orders the protection of some 300 unspecified non-parties to State v. Huminski as a condition of probation, however, when distilled to a written order, the First Amendment banishment extends in perpetuity (See Para. 20 above) and it is not restrained to only the probationary period and Huminski was jailed prior to the end of his probation without bond for not paying costs, fines and fees in the case so the probationary period is not yet complete. Huminski's filing of bankruptcy and the removal to bankruptcy court of the *sui generis* common law offense are an overwhelming portion of the record in the State v. Huminski. Essentially, Huminski was incarcerated in a debtors prison without bond when the record contained absolute proof that Huminski was bankrupt.

31. Attached hereto as Exhibit "A" is a copy of a true and correct settlement demand issued to the parties.

**Memorandum of Law**

The four factors the Court must evaluate in determining whether to grant a motion for an injunction pending appeal are as follows:

> "(1) whether the stay [injunction] applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.". See *Hilton v.Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119 (1987); see also *Robinson v. Attorney Gen.*, 957 F.3d 1171, 1176-77 (11th Cir. 2020); see also *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) (en banc) (applying same standard for injunction pending appeal).

A. Likelihood of Success on the Merits

No Court, Governor, Attorney General or entity can breathe life into a hopelessly *void ab initio* judgment such as in State v. Huminski that was commenced in violation of a removal to the federal courts, that was: (1) commenced completely without service, (2) commenced without service of a document listing the State of Florida as a plaintiff nor signed by an attorney representing the State, and (3) was prosecuted without subject matter jurisdicition because a County Court (a Court of limited jurisdiction) can not hear contempt arising in a Circuit Court (a Court of general jurisdiction). See South Dade Farms v. Peters, 88 So. 2d 891 (Fla. 1956) (emphasis added),

> "In the opinion last cited this court adopted the language of the Supreme Court of the United States in the leading case of Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S. Ct. 492, 501, 55 L. Ed. 797, from which we quote also the following:
>
> > "*There has been general recognition of the fact that the courts are clothed with this power, and must be authorized to exercise it* ***without referring the issues of fact or law to another tribunal*** *or to a jury in the same tribunal. For, if there was no such authority in the first instance, there would be no power to enforce its orders if they were disregarded in such independent investigation. Without authority to act promptly and independently the courts could not administer public justice or enforce the rights of private litigants. Bessette v. W.B. Conkey Co., 194 U.S. 324 337, 24 S. Ct. 665, 48 L.Ed. [997] 1005.*" "

If a court enters an order prior to the filing of proper pleadings, the court lacks jurisdiction. *Lovett v. Lovett*, 93 Fla. 611, 112 So. 768, 775-76 (1927).

Huminski will prevail concerning a case that was commenced via the forgery of a court order, in the wrong court and without service which has now led to the suicide of the prosecutor that forged the faux court order. Huminski will prevail related to the **lifetime speech prohibition** foisted upon Huminski in a patently *void ab initio* court case which can not stand. No entity can breathe life into a *void ab initio* judgment that contains a **perpetual communication prohibition,** far more extreme than the censorship foisted upon the Plaintiffs, preventing any and all communication with the entire State government – a *per se* outrageous First Amendment violation that shocks the conscious.

B. Irreparable Harm

Huminski suffers the *per se* harm, injury and prejudice that flows from a criminal conviction regardless of the fact that *sui generis* common law contempt is not defined as a statutory misdemeanor nor felony in Florida. Huminski was prosecuted criminally under F.S. § 900.04, a statute that does not authorize a statutory misdemeanor nor felony. To satisfy the irreparable harm requirement, Huminski need only demonstrate that absent a preliminary injunction, he is "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. NRDC*, 555 U.S. 7, 22 (2008) (citation omitted). The sole motive behind the fraudulent criminal motivation was to immediately silence Huminski's speech via conditions of pre-trial supervision conditions of release in a *sui generis* common law case and ultimately the **silencing of any and all speech by Huminski with the entire government of Florida for life**.

The State of Florida has engaged in non-stop harassment concerning the *void ab initio* debt that arose in State v Huminski causing shock and injury to Huminski's mind and body. Huminski has been fully disabled for over a decade with Post Traumatic Stress Disorder, General Anxiety Disorder and Social Phobia which elevates the harm, injury and damage Huminski suffers as a result of the relentless collection activities of the State that Defendant DeSantis took steps to protect and make permanent with his filings in the State courts opposing a declaration that the *void ab initio* judgment in *State v. Huminski* was indeed *void ab initio* to cover-up the official crime of forgery by prosecutor Kunasek (deceased – suicide 30 days after the motion to intervene filed in this case). As all "convicts", Huminski suffers prejudice and discrimination concerning credit, housing, employment and all areas negatively impacted by a bogus criminal conviction.

Huminski suffers per se irreparable First Amendment harm and injury from the lifetime speech prohibition imposed in State v. Huminski that Defendant DeSantis endeavored to protect with extreme zeal and disdain for the Rule of Law, most notably, the U.S. Constitution.

___ Clerk to Update Case w/ Defendants Information Listed ___ COS Fees Due & Owing in the amount $______

Defense Motion for Mistrial - Denied; Motion to Dismiss - Denied; Any future filings are to be under the signature of a licensed attorney; No communication with the parties in the civil or criminal case

Pre-sentence Investigation/Sentencing

C. The issuance of an injunction will not harm any parties

A party seeking a preliminary injunction must demonstrate both "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). No party opposed intervention in this case clearly targeting the herein mentioned moral turpitude exhibited by Defendant DeSantis.

An injunction preventing Defendant DeSantis from engaging in any activity intending to enforce or profit the State treasury and continue a **perpetual speech banishment** that are products of a hopelessly *void ab initio* judgment achieved in the absence of any and all jurisdiction will not prejudice any party and will simply comply with the First Amendment, Due Process and the jurisdictional requirements prescribed in Due Process. A judgment entered in the absence of personal jurisdiction, subject matter jurisdiction and commenced in violation of a federal removal simply can not stand despite Defendant DeSantis' desperate attempts in 2021 and 2022 to cover up felony forgery by prosecutor Kunasek (deceased – suicide) in State courts with motions to dismiss and other opposition papers. Defendant DeSantis' zeal to propagate Police State **silencing of core protected political expression critical of government** has risen to a level in Defendant DeSantis whereby it supersedes the oath taken by him concerning both State and Federal constitutions when he became the Governor of Florida.

No party has opposed Huminski's intervention in *Equality Florida v. DeSantis, et al*, an overwhelming indicator of lack of prejudice.

D. Public policy – official crime – governmental acts of moral turpitude – corruption

The need "to prevent irreparable injury to the parties or to the public" pending review is essential in this matter. *Scripps-Howard*, 316 U.S., at 9, 62 S.Ct. 875. Failure to enjoin Defendant DeSantis' obsession with **silencing core protected political speech** critical of

government via his scheme with Ashley Moody, Esq. to attempt to breathe life into a hopelessly *void ab initio* State v. Huminski in the State courts in 2021 and 2022 violates public policy and the public interest. The public interest and public policy demands that a case initiated with a forged court order absent any and all jurisdiction is dispatched in an expedient manner that does not include a Governor covering-up the bold courthouse crimes to maintain a **lifetime speech prohibition** regarding any speech to the entire Florida government in perpetuity.

   The herein-mentioned conduct and the other filings of Huminski in the instant matter set forth conduct of Defendant DeSantis involving moral turpitude concerning the civil rights of Huminski. Notably, Defendant DeSantis' efforts in 2021 and 2022 to maintain Huminski's prohibition concerning the **perpetual lifetime ban on communication** with the entire State of Florida government is a substantial example of violation of rights under the color of law and conspiracy against rights between the Governor and his Attorney General concerning Huminski's First Amendment rights and Due Process – federal crimes. 18 U.S.C. § § 241, 242. Terminating this criminal conduct in this civil context under constitutional torts serves the public interest prior to any criminal proceedings that may follow in other fora. Crimes can only be prosecuted by governmental entities.

   The **lifetime speech prohibition** foisted upon Huminski was achieved in the complete absence of any and all jurisdiction because Huminski was never served in State v. Huminski and there exists no charging document authored by the State that commenced the "criminal" prosecution of a *sui generis* common law offense. Only a forged manufactured order taken by the government from another Court (20th Circuit Court) and then modified to appear as a legitmate County Court order in State v. Huminski existed as a document that resembled a charging document. This fraudulent forgery was then held out by the government to a County Court as a legitimate court order and commencement document in State v. Huminski. Governmental fraud and forgery used to initiate an illegitimate criminal case violate public policy and does shock the conscientiousness of a reasonable person. Such conduct constitutes State-sponsored domestic terrorism supported and embraced up to the highest level in State government; the Governor and Attorney General wielding the vast power of the State.

   Further, the conduct of Defendant DeSantis which covered-up the forgery of a court order (the alleged charging document) in State v. Huminski proximately led to the suicide of the prosecutor who engaged in the forgery. The suicide occurred 30 days after the forgery was proffered in the instant matter by Huminski in court papers. Had Defendant DeSantis along with his co-conspirator Florida Attorney General Ashley Moody, Esq. acted morally and

ethically and taken steps to end the lifetime speech prohibition and constant attempts by the government to derive pecuniary benefit from the *void ab initio* judgment rendered in State v. Huminski and otherwise prejudice Huminski, the life of prosecutor Anthony Kunasek, Esq. may have been spared. The morally bankrupt herein-mentioned conduct of Defendant DeSantis violates public policy.

Public policy prohibits governmental wholesale violation of the First Amendment and Due Process. Public policy also weighs heavily against the cover-up of serious courthouse crimes such as forgery of a court order and actions by the State government pursuing court costs, fines and fees rendered in the absence of any and all jurisdiction and lifelong First Amendment deprivations.

Public policy and the public interest prohibits a Governor, Defendant DeSantis, from attempting to breathe life into a hopelessly *void ab initio* court judgment procured with forgery and fraud.

Some of the felony governmental/official State crimes inherent in State v. Huminski repugnant to public policy are,

- Forgery
- Fraud
- Official Misconduct

The aforementioned coordination of State prosecutors, judges, the State Attorney General and the Governor could easily constitute RICO and conspiracy crimes as well. There were many cooks stirring this kettle of corruption aside from the prosecutor who took his own life as a result of the filings in this case including the 20th Circuit State's Attorney, Judge Elizabeth Krier, Judge James Adams and numerous courthouse staff. Huminski concedes that this case is not the proper litigation to pursue criminal charges by himself nor the Plaintiffs, however, there is quite an overlap between constitutional torts and the criminal conduct set forth herein and public policy supports stopping the acts of moral turpitude by Defendant DeSantis in both a civil and criminal context.

Huminski can not prosecute criminal violations, he is not a prosecutor, however, public policy can certainly weigh in opposing this vile governmental crime even when government does not step in to stop the debauchery and corruption. When government fails to monitor its own corruption, side effects such as the suicide of prosecutor Anthony Kunasek, Esq. appear. A suicide that could have been avoided if the Governor chose to address the official

crime and corruption instead of covering it up. An injunction should issue against Defendant DeSantis before more adverse events occur related to the herein described governmental misconduct. Defendant DeSantis had the opportunity to direct his counsel, the Florida Attorney General, to stipulate to a declaration in State Court to vacate the judgment in State v. Huminski thereby restoring Huminski's First Amendment rights, but, refused to take the ethical and moral course of conduct. The opposite approach was taken by Defendant DeSantis resulting in the suicide of prosecutor Kunasek. Attorney General Ashley Moody, Esq. is the top law enforcement and prosecutorial authority in the State of Florida and certainly could have stipulated to end the First Amendment violations and void judgments which can be remedied in any court and at any time where they have become an issue. The Attorney General also shares responsibility for the suicide of Anthony Kunasek, Esq..

A judgment entered without due service of process is void. *See* *Gelkop v. Gelkop*, 384 So.2d 195 (Fla. 3d DCA 1980); *McAlice v. Kirsch*, 368 So.2d 401 (Fla. 3d DCA 1979); *Grahn v. Dade Home Services, Inc.* 277 So.2d 544 (Fla. 3d DCA 1973). On motion, a court may, at any time, relieve a party from a void final judgment. *See* *Sams Food Store, Inc. v. Alvarez*, 443 So.2d 211 (Fla. 3d DCA 1983); *Tucker v. Dianne Electric, Inc.* 389 So.2d 683 (Fla. 5th DCA 1980); *McAlice. See also* *Ramagli Realty Co. v. Craver*, 121 So.2d 648 (Fla. 1960) (the passage of time cannot make valid that which has been void).

Any judgment or order procured from any court by the practice of fraud or deception may in be set aside at any time – such as the forged commencement document filed in Huminski v. State failing to list the State as a party and not signed under the authority of any prosecutorial entity for the State of Florida, plaintiff in State v. Huminski. A void judgment is a nullity, a brutum fulmen and is subject to collateral attack and may be stricken at any time. 19 Fla.Juris. Void Adjudications, Sect. 383 and the cases there cited. The passage of time cannot make valid that which has always been void. "A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. It is clear and well established law that a void order can be challenged in any court", OLD WAYNE MUT. L. ASSOC. v. McDONOUGH, 204 U. S. 8, 27 S. Ct. 236 (1907). "The law is well-settled that a void order or judgment is void even before reversal", VALLEY v. NORTHERN FIRE & MARINE INS. CO., 254 U.S. 348, 41 S. Ct. 116 (1920). Official corruption is the only discernible reason why the Governor would engage in furtherance of a void judgment ordering a lifetime speech prohibition in stark violation of the founding documents. Covering up the crimes of the late Prosecutor

Kunasek was the highest priority for Defendant DeSantis', a priority that ended up killing the prosecutor the Governor was assisting.

Defendant DeSantis, a graduate of Yale and Harvard Law, knew exactly what he was doing concerning the herein-mentioned conduct. A first year law student would realize the corrupt and criminal nature of the material herein and would reject the furtherance of the crimes of Defendant Kunasek and cooperating government employees/judges/court personnel.

Despite the existence of bedrock authority rejecting Defendant DeSantis' conduct seeking to maintain a **lifelong speech/communication banishment** between Huminski and the entire Florida government, ... "*might appears to be right*" even given the Kunasek loss of life related to this issue. Government oppression and repression under the governance of Defendant DeSantis unfortunately is a higher objective than the preservation of human life, to wit: the life of Chief of Special Prosecutions for the Florida 20th Circuit, Anthony Kunasek, Esq taken by his own hand via a gunshot wound to the head 30 days after the publication of his crimes in the instant matter. A government win at all costs mentality and *let the Rule of Law be damned* approach to fundamental constitutional rights by both the Florida Governor and Florida Attorney General.

## Prayer for Relief

**WHEREFORE**, the Court should enjoin Defendant DeSantis from engaging in any course of conduct intending to benefit the State of Florida, financially or otherwise with regard to the **lifetime speech banishment** or *void ab initio* judgment issued in State v. Huminski. The injunction should also enjoin Defendant DeSantis from engaging in any conduct in furtherance of the prejudice to Huminski that flows from the *void ab initio* judgment rendered in State v. Huminski including preventing Huminski from obtaining a Florida driver's license. The *void ab initio* "criminal" costs, fines and fees (levied in a *sui generis* common law case) prohibit Huminski from obtaining a Florida driver's license.

Dated at Palm Coast, Florida this 17th day of July, 2022.

Scott Huminski, pro se
P.O. Box 353820
Palm Coast, FL 32135
(239) 300-6656
S_Huminski@live.com

Sworn and Subscribed to before me on this 17th day of July, 2022 in Flagler County, Florida.

KYLE RASMUSSEN
Notary Public
State of Florida
Comm# HH260959
Expires 5/4/2026

Notary

Exp. : 05/04/2026

Certificate of Service

Copies of this document and any attachment(s) was served upon the parties via the U.S. Mails and/or email and/or the e-filing system.

Dated this 17th day of July, 2022.

-/s/- Scott Huminski

Scott Huminski

<attachments>

# Exhibit "A"



scott huminski

Sun 6/19/2022 3:15 PM

To: Christopher Sutter; Katia Marques; Martine Legagneur; Stacey Blume; rkaplan@kaplanhecker.com; CStoll@nclrights.org; liz@elizabethschwartz.com; nadine@eqfl.org; geanny@eqfl.org; mark@eqfl.org; nick@eqfl.org; todd@eqfl.org; mark@eqfl.org; robin@eqfl.org; robert@eqfl.org; rene@eqfl.org; andrew@eqfl.org; carlos@eqfl.org; don@eqfl.org; paul@eqfl.org; stratton@eqfl.org; dan@eqfl.org; david@eqfl.org; joe@eqfl.org; brittany@eqfl.org; brandon@eqfl.org; michael@eqfl.org; nikole@eqfl.org; jon@eqfl.org; wesley@eqfl.org; yordanos@eqfl.org; salvatore@eqfl.org; benjamin@eqfl.org; mary@eqfl.org; de@eqfl.org; ian@eqfl.org; Joel Valez-Stokes; jason.parsley@sfgn.com; justin.wyse@sfgn.com; lbrown@washblade.com; srutgers@washblade.com; bpitts@washblade.com; jhickling@washblade.com; prockstroh@washblade.com; tmasters@losangelesblade.com; swong@losangelesblade.com; Scott Wazlowski; m.yamashita@ebar.com; Bilal.Faruqui@myfloridalegal.com; Daniel.Bell@myfloridalegal.com; Henry.Whitaker@myfloridalegal.com; SBarday@gibsondunn.com; Anita.Patel@myfloridalegal.com; ComplexLitigation.eservice@myfloridalegal.com; ServiceSAO-LEE@sao.cjis20.org; oag.civil.eserve@myfloridalegal.com; crimappTPA@myfloridalegal.com; Daniel.Bell@myfloridalegal.com; ejackson@johnsonjackson.com; agallagher@johnsonjackson.com; lstillwell@johnsonjackson.com; kharris@johnsonjackson.com; walter.harvey@dadeschools.net; jordanmadrigal@dadeschools.net; dmarsey@rumberger.com; jgrosholz@rumberger.com; docketingorlando@rumberger.com; bharris@lawfla.com; ahopkins@lawfla.com; jdean@lawfla.com; ccarstens@lawfla.com; mfuqua@fmc.legal; kworcester@sao.cjis20.org; jwasserkrug@mwe.com; ejackson@johnsonjackson.com; agallagher@johnsonjackson.com; Andrew Kadah; sandymodell@aol.com; gzerman@hotmail.com; Christopher Crowley

**Instead of engaging in endless litigation of a hopelessly void ab initio judgment with its perpetual speech prohibitions and other infirmities, I propose as settlement the following,**

**Stipulation to a declaration that State v. Huminski, 17-mm-815 is void ab initio in its entirety including the judgment, costs, fines, fees and the lifetime speech prohibition.**

**This demand will be withdrawn at the end of the week.**

**Also the State must agree to end the "open season" on crime against the Huminski family and address the seemingly state-sponsored perjury of James Greco in 20th Circuit Court whereby he perjured himself in writing and recanted and admitted perjury in the first hearing** in case, 362020DR030822A001CH, constituting felony perjury, felony abuse of a disabled adult and felony abuse of an elderly adult.

https://cdn.muckrock.com/outbound_request_attachments/s_huminski%40live.com/127252/motion_for_injunction_pending_appeal_compressed.pdf

At the above link is my draft for an injunction pending appeal for the district court. A similar document will be filed in the 11th Circuit in Atlanta if Florida insists on litigating these issues endlessly. -- scott