## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

EQUALITY FLORIDA, et al.,

                            Plaintiffs,

        v.

FLORIDA STATE BOARD OF
EDUCATION, et al.,

                            Defendants.

Case No. 4:22-cv-00134 (AW) (MJF)

## NOTICE OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Pursuant to Local Rule 7.1(j), Plaintiffs hereby notify the Court of a July 28, 2022 memorandum that was issued by Defendant Commissioner of Education Manny Diaz, Jr. ("Commissioner") the day after Plaintiffs' memorandum in opposition to Defendants' motions to dismiss was filed on July 27. ECF 91. In that memo, Ex. A, the Commissioner instructs Florida's Superintendents, School Boards, Private School Owners, and Charter School Governing Boards to ignore guidance issued by the U.S. Department of Education ("USDOE") and the U.S. Department of Agriculture ("USDA") that recognizes, following *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), that Title IX's prohibition on sex discrimination encompasses

discrimination based on sexual orientation and gender identity, *see* Exs. B-E.[1]  The memorandum is relevant to Defendants' motions to dismiss for three reasons.

First, it is further evidence of Defendants' discrimination against LGBT members of Florida's public schools in violation of Title IX and the Constitution. Indeed, the Commissioner misleadingly suggests that the foregoing guidance is inconsequential, yet cites a decision in which the district court *rejected* that position and held that USDOE's guidance "broadly determines the rights and obligations of entities that receive federal funding under Title IX, including" the States. *Tennessee et al. v. U.S. Dep't of Educ.*, 3:21-cv-00308, ECF 86 at 28 (E.D. Tenn. July 15, 2022).

Second, the Commissioner instructs schools to disregard USDA's instruction to display an "And Justice for All" poster, which prohibits discrimination on the basis of sexual orientation and gender identity, because doing so "may create a conflict with Florida law." Ex. A at 2.  Thus, contrary to Defendants' position that H.B. 1557 addresses only classroom curriculum, Defendants are expressly instructing schools—one month after the law went into effect—in a manner that would prohibit recognition of basic non-discrimination principles anywhere on campus.

---

[1] The additional exhibits are included for the sake of completeness and ease of reference.

Third, contrary to the School Board of Manatee County's contention that H.B. 1557 does not apply in charter schools, ECF 67 at 13-17, this guidance is directed to Charter School Governing Boards.  ECF 47, Am. Compl. ¶ 30 n.1.

Respectfully submitted,

Dated: August 2, 2022

Roberta A. Kaplan (NY #2507093)*
John C. Quinn (NY #4965000)*
Kate M. Doniger (NY #5128251)*
D. Brandon Trice (NY #5140017)*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel.: (212) 763-0883
rkaplan@kaplanhecker.com

Joshua Matz (DC #1045064)*
Valerie L. Hletko (DC #485610)*
KAPLAN HECKER & FINK LLP
1050 K Street, NW, Suite 1040
Washington, D.C. 20001
Telephone: (212) 763-0883
jmatz@kaplanhecker.com

Christopher Stoll (CA #179046)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Tel.: (415) 392-6257
CStoll@nclrights.org

Michael W. Weaver (IL #6291021)*

MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Tel.: (312) 984-5820
mweaver@mwe.com

Joseph M. Wasserkrug (FL #112274)
MCDERMOTT WILL & EMERY LLP
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
jwasserkrug@mwe.com

Elizabeth F. Schwartz (FL #114855)
ELIZABETH F. SCHWARTZ, P.A.
3050 Biscayne Blvd., Suite 600
Miami, Florida 33137
liz@elizabethschwartz.com

*Attorneys for Plaintiffs*

*\*admitted pro hac vice*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(J)**

Pursuant to Local Rule 7.1(j), I hereby certify that this Notice of Supplemental Authority complies with the word count requirement and contains 350 words according to the word count feature of Microsoft Word.


<u>/s/ Roberta A. Kaplan</u>
Roberta A. Kaplan

# Exhibit A

# FLORIDA DEPARTMENT OF EDUCATION

fldoe.org

**State Board of Education**

Tom Grady, *Chair*
Ben Gibson, *Vice Chair*
*Members*
Monesia Brown
Esther Byrd
Grazie Pozo Christie
Ryan Petty
Joe York

**Manny Diaz, Jr.**
**Commissioner of Education**

**TO:**          Superintendents, School Boards, Private School Owners, Charter School
              Governing Boards

**FROM:**     Manny Diaz, Jr.
              Commissioner of Education

**DATE:**      July 28, 2022

**SUBJECT:**  **Response to Federal Guidance Documents on the Meaning of Sex**
              **Discrimination under Title IX and Related Statutes**

As you may know, the United States Department of Education (USDOE) and the United States
Department of Agriculture (USDA) recently issued guidance documents purporting to clarify the
meaning of sex discrimination under Title IX of the Education Amendments of 1972; the Food
and Nutrition Act of 2008, as amended, Supplemental Nutrition Assistance Program (SNAP) (7
U.S.C. § 2011 et seq.); and related implementing regulations.[1]  These guidance documents
interpret discrimination on the basis of sex to include discrimination on the basis of sexual
orientation and gender identity in light of *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).  In
so doing, this guidance attempts to vastly expand the application of Title IX and related statutes
and regulations.  In addition, without consulting the Florida Department of Education (the
Department), the Florida Department of Agriculture and Consumer Services (FDACS) recently
communicated with Florida schools suggesting that they should comply with the USDA
guidance.

The purpose of this memorandum is to make you aware that the sub-regulatory "guidance"
documents issued by the USDOE and USDA are not binding law, do not create any new legal
obligations, and should not be treated as governing law.  Indeed, the USDOE has even
acknowledged in litigation that its guidance document is not binding or enforceable.  *See State of
Tennessee v. U.S. Dep't of Educ.*, No. 3:21-cv-308, at 26 (E.D. Tenn. July 15, 2022) (noting the
USDOE's contention that "the challenged guidance documents are non-binding interpretations
that 'simply inform the public of the agencies' interpretation of Titles VII and IX, without
purporting to alter obligations thereunder'" and that "the guidance documents expressly state

---

[1] The relevant documents are "Enforcement of Title IX of the Education Amendments of 1972
with Respect to Discrimination Based on Sexual Orientation and Gender Identity in light of
*Bostock v. Clayton County*, 86 Fed. Reg. 32,637 (June 21, 2021)," "Application of *Bostock v.
Clayton County* to Program Discrimination Complaint Processing – Policy Update," "Revised
Nondiscrimination Statement and 'And Justice for All' Posters; Timelines and Guidance for
Implementation," and "Questions and Answers Related to CRD 01-2022 Application of *Bostock
v. Clayton County* to Program Discrimination Complaint Processing – Policy Update."

Superintendents, School Boards, Private School Owners, Charter School Governing Boards
July 28, 2022
Page Two

they do not have the force of law"). As such, you should not treat the USDOE or USDA guidance documents as binding or otherwise modify your practices or procedures based on these documents. Specifically, for example, nothing in these guidance documents requires you to give biological males who identify as female access to female bathrooms, locker rooms, or dorms; to assign biological males who identify as female to female rooms on school field trips; or to allow biological males who identify as female to compete on female sports teams. To the extent that you do any of these things, you jeopardize the safety and wellbeing of Florida students and risk violating Florida law. *See, e.g.*, Fla. Stat. § 1006.205(3)(c) ("Athletic teams or sports designated for females, women, or girls may not be open to students of the male sex."). For the same reason, you should also disregard any suggestion from FDACS that you must comply with the USDOE or USDA guidance, including any suggestion to post "And Justice For All" posters in your schools, as doing so may create a conflict with Florida law.

The Department will not stand idly by as federal agencies attempt to impose a sexual ideology on Florida schools that risk the health, safety, and welfare of Florida students. Working with the State Board of Education, the Department will continue to develop rules to implement and uphold Florida law. The Department will do everything in its power to protect the wellbeing of all Florida students and to vindicate the right of all parents to know what takes place in their child's classroom. We trust that you will join us in this effort.

# Exhibit B

requirements, Security measures, Waterways.

For the reasons discussed in the preamble, the Coast Guard amends 33 CFR part 165 as follows:

## PART 165—REGULATED NAVIGATION AREAS AND LIMITED ACCESS AREAS

■ 1. The authority citation for part 165 continues to read as follows:

**Authority:** 46 U.S.C. 70034, 70051; 33 CFR 1.05–1, 6.04–1, 6.04–6, and 160.5; Department of Homeland Security Delegation No. 0170.1.

■ 2. Add § 165.T11–057 to read as follows:

### § 165.T11–057  Safety Zone; Southwest Shelter Island Channel Entrance Closure, San Diego, CA.

(a) *Location.* The following area is a safety zone: The Northeast Shelter Island Channel Entrance and all navigable waters of San Diego Bay encompassed by by a three hundred yard circle centered on the coordinate 32°43′13.7″ N, longitude 117°13′7.8″ W.

(b) *Definitions.* As used in this section, *designated representative* means a Coast Guard Patrol Commander, including a Coast Guard coxswain, petty officer, or other officer operating a Coast Guard vessel and a Federal, State, and local officer designated by or assisting the Captain of the Port Sector San Diego (COTP) in the enforcement of the safety zone.

(c) *Regulations.* (1) Under the general safety zone regulations in subpart C of this part, you may not enter the safety zone described in paragraph (a) of this section unless authorized by the COTP or the COTP's designated representative.

(2) To seek permission to enter, contact the COTP or the COTP's representative by VHF Channel 16. Those in the safety zone must comply with all lawful orders or directions given to them by the COTP or the COTP's designated representative.

(d) *Enforcement period.* This section will be enforced from 8:30 a.m. until 10:30 a.m. on June 22, 2021.

Dated: June 16, 2021.

**T.J. Barelli,**

*Captain, U.S. Coast Guard, Captain of the Port Sector San Diego.*

[FR Doc. 2021–13136 Filed 6–21–21; 8:45 am]

**BILLING CODE 9110–04–P**

## DEPARTMENT OF EDUCATION

### 34 CFR Chapter I

### Enforcement of Title IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of Bostock v. Clayton County

**AGENCY:** Office for Civil Rights, Department of Education.

**ACTION:** Interpretation.

**SUMMARY:** The U.S. Department of Education (Department) issues this interpretation to clarify the Department's enforcement authority over discrimination based on sexual orientation and discrimination based on gender identity under Title IX of the Education Amendments of 1972 in light of the Supreme Court's decision in *Bostock* v. *Clayton County.* This interpretation will guide the Department in processing complaints and conducting investigations, but it does not itself determine the outcome in any particular case or set of facts.

**DATES:** This interpretation is effective June 22, 2021.

**FOR FURTHER INFORMATION CONTACT:** Alejandro Reyes, Director, Program Legal Group, Office for Civil Rights. Telephone: (202) 245–7272. Email: *Alejandro.Reyes@ed.gov.*

If you use a telecommunications device for the deaf (TDD) or a text telephone (TTY), call the Federal Relay Service (FRS), toll-free, at 1–800–877– 8339.

**SUPPLEMENTARY INFORMATION:**

*Background:* Title IX of the Education Amendments of 1972, 20 U.S.C. 1681– 1688, prohibits discrimination on the basis of sex in any education program or activity offered by a recipient of Federal financial assistance. The Department's Office for Civil Rights (OCR) is responsible for the Department's enforcement of Title IX.

OCR has long recognized that Title IX protects all students, including students who are lesbian, gay, bisexual, and transgender, from harassment and other forms of sex discrimination. OCR also has long recognized that Title IX prohibits harassment and other forms of discrimination against all students for not conforming to stereotypical notions of masculinity and femininity. But OCR at times has stated that Title IX's prohibition on sex discrimination does not encompass discrimination based on sexual orientation and gender identity. To ensure clarity, the Department issues this Interpretation addressing Title IX's coverage of discrimination based on sexual orientation and gender identity

in light of the Supreme Court decision discussed below.

In 2020, the Supreme Court in *Bostock* v. *Clayton County,* 140 S. Ct. 1731, 590 U.S. ____ (2020), concluded that discrimination based on sexual orientation and discrimination based on gender identity inherently involve treating individuals differently because of their sex. It reached this conclusion in the context of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.,* which prohibits sex discrimination in employment. As noted below, courts rely on interpretations of Title VII to inform interpretations of Title IX.

The Department issues this Interpretation to make clear that the Department interprets Title IX's prohibition on sex discrimination to encompass discrimination based on sexual orientation and gender identity and to provide the reasons for this interpretation, as set out below.

*Interpretation:*

Title IX Prohibits Discrimination Based on Sexual Orientation and Gender Identity.

Consistent with the Supreme Court's ruling and analysis in *Bostock,* the Department interprets Title IX's prohibition on discrimination ''on the basis of sex'' to encompass discrimination on the basis of sexual orientation and gender identity. As was the case for the Court's Title VII analysis in *Bostock,* this interpretation flows from the statute's ''plain terms.'' *See Bostock,* 140 S. Ct. at 1743, 1748–50. Addressing discrimination based on sexual orientation and gender identity thus fits squarely within OCR's responsibility to enforce Title IX's prohibition on sex discrimination.

### I. The Supreme Court's Ruling in Bostock

The Supreme Court in *Bostock* held that sex discrimination, as prohibited by Title VII, encompasses discrimination based on sexual orientation and gender identity. The Court explained that to discriminate on the basis of sexual orientation or gender identity ''requires an employer to intentionally treat individual employees differently because of their sex.'' 140 S. Ct. at 1742.[1] As the Court also explained,

---

[1] The Court recognized that the parties in *Bostock* each presented a definition of ''sex'' dating back to Title VII's enactment, with the employers' definition referring to ''reproductive biology'' and the employees' definition ''capturing more than anatomy[.]'' 140 S. Ct. at 1739. The Court did not adopt a definition, instead ''assum[ing]'' the definition of sex provided by the employers that the employees had accepted ''for argument's sake.'' *Id.* As the Court made clear, it did not need to adopt
Continued

when an employer discriminates against a person for being gay or transgender, the employer necessarily discriminates against that person for "traits or actions it would not have questioned in members of a different sex." *Id.* at 1737.

The Court provided numerous examples to illustrate why "it is impossible to discriminate against a person" because of their sexual orientation or gender identity "without discriminating against that individual based on sex." *Id.* at 1741. In one example, when addressing discrimination based on sexual orientation, the Court stated:

Consider, for example, an employer with two employees, both of whom are attracted to men. The two individuals are, to the employer's mind, materially identical in all respects, except that one is a man and the other a woman. If the employer fires the male employee for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague. Put differently, the employer intentionally singles out an employee to fire based in part on the employee's sex, and the affected employee's sex is a but-for cause of his discharge.

*Id.*

In another example, the Court showed why singling out a transgender employee for different treatment from a non-transgender (*i.e.,* cisgender) employee is discrimination based on sex:

[T]ake an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female. If the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision.

*Id.* at 1741–42.

## II. Bostock's Application to Title IX

For the reasons set out below, the Department has determined that the interpretation of sex discrimination set out by the Supreme Court in *Bostock*— that discrimination "because of . . . sex" encompasses discrimination based on sexual orientation and gender identity—properly guides the

Department's interpretation of discrimination "on the basis of sex" under Title IX and leads to the conclusion that Title IX prohibits discrimination based on sexual orientation and gender identity.

a. *There is textual similarity between Title VII and Title IX.*

Like Title VII, Title IX prohibits discrimination based on sex.

Title IX provides, with certain exceptions: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. 1681(a).

Title VII provides, with certain exceptions: "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[ ] . . . .; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex[ ] . . . ." 42 U.S.C. 2000e–2(a). (Title VII also prohibits discrimination based on race, color, religion, and national origin.)

Both statutes prohibit sex discrimination, with Title IX using the phrase "on the basis of sex" and Title VII using the phrase "because of" sex. The Supreme Court has used these two phrases interchangeably. In *Bostock,* for example, the Court described Title VII in this way: "[I]n Title VII, Congress outlawed discrimination in the workplace *on the basis of* race, color, religion, sex, or national origin." 140 S. Ct. at 1737 (emphasis added); *id.* at 1742 ("[I]ntentional discrimination *based on sex* violates Title VII . . . ." (emphasis added)); *see also Jackson* v. *Birmingham Bd. of Educ.,* 544 U.S. 167, 174 (2005) ("[W]hen a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' '*on the basis of* sex,' in violation of Title IX." (second emphasis added)); *Meritor Sav. Bank* v. *Vinson,* 477 U.S. 57, 64 (1986) ("[W]hen a supervisor sexually harasses a subordinate *because of* the subordinate's sex, that supervisor 'discriminate[s]' *on the basis of sex.*" (emphasis added)).

In addition, both statutes specifically protect *individuals* against

discrimination. In *Bostock,* 140 S. Ct. at 1740–41, the Court observed that Title VII "tells us three times—including immediately after the words 'discriminate against'—that our focus should be on individuals." The Court made a similar observation about Title IX, which uses the term *person,* in *Cannon* v. *University of Chicago,* 441 U.S. 677, 704 (1979), stating that "Congress wanted to avoid the use of federal resources to support discriminatory practices [and] to provide *individual* citizens effective protection against those practices." *Id.* (emphasis added).

Further, the text of both statutes contains no exception for sex discrimination that is associated with an individual's sexual orientation or gender identity. As the Court stated in *Bostock,* "when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." 140 S. Ct. at 1747. The Court has made a similar point regarding Title IX: "[I]f we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language." *N. Haven Bd. of Ed.* v. *Bell,* 456 U.S. 512, 521 (1982) (citations and internal alterations omitted). It also bears noting that, in interpreting the scope of Title IX's prohibition on sex discrimination the Supreme Court and lower Federal courts have often relied on the Supreme Court's interpretations of Title VII. *See, e.g., Franklin* v. *Gwinnett Cnty. Pub. Sch.,* 503 U.S. 60, 75 (1992); *Jennings* v. *Univ. of N.C.,* 482 F.3d 686, 695 (4th Cir. 2007); *Frazier* v. *Fairhaven Sch. Comm.,* 276 F.3d 52, 66 (1st Cir. 2002); *Gossett* v. *Oklahoma ex rel. Bd. of Regents for Langston Univ.,* 245 F.3d 1172, 1176 (10th Cir. 2001).

Moreover, the Court in *Bostock* found that "no ambiguity exists about how Title VII's terms apply to the facts before [it]"—*i.e.,* allegations of discrimination in employment against several individuals based on sexual orientation or gender identity. 140 S. Ct. at 1749. After reviewing the text of Title IX and Federal courts' interpretation of Title IX, the Department has concluded that the same clarity exists for Title IX. That is, Title IX prohibits recipients of Federal financial assistance from discriminating based on sexual orientation and gender identity in their education programs and activities. The Department also has concluded for the reasons described in this document that, to the extent other interpretations may exist, this is the best interpretation of the statute.

In short, the Department finds no persuasive or well-founded basis for declining to apply *Bostock's* reasoning—discrimination "because of

---

either definition to conclude that discrimination "because of . . . sex" encompasses discrimination based on sexual orientation and gender identity. *Id.* ("[N]othing in our approach to these cases turns on the outcome of the parties' debate . . . ."). Similar to the Court's interpretation of Title VII, the Department's interpretation of the scope of discrimination "on the basis of sex" under Title IX does not require the Department to take a position on the definition of sex, nor do we do so here.

. . . sex'' under Title VII encompasses discrimination based on sexual orientation and gender identity—to Title IX's parallel prohibition on sex discrimination in federally funded education programs and activities.

*b. Additional case law recognizes that the reasoning of* Bostock *applies to Title IX and that differential treatment of students based on gender identity or sexual orientation may cause harm.*

Numerous Federal courts have relied on *Bostock* to recognize that Title IX's prohibition on sex discrimination encompasses discrimination based on sexual orientation and gender based on sexual orientation and gender identity. *See, e.g., Grimm* v. *Gloucester Cnty. Sch. Bd.,* 972 F.3d 586, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc denied,* 976 F.3d 399 (4th Cir. 2020), *petition for cert filed,* No. 20–1163 (Feb. 24, 2021); *Adams* v. *Sch. Bd. of St. Johns Cnty.,* 968 F.3d 1286, 1305 (11th Cir. 2020), *petition for reh'g en banc pending,* No. 18–13592 (Aug. 28, 2020); *Koenke* v. *Saint Joseph's Univ.,* No. CV 19–4731, 2021 WL 75778, at \*2 (E.D. Pa. Jan. 8, 2021); *Doe* v. *Univ. of Scranton,* No. 3:19–CV–01486, 2020 WL 5993766, at \*11 n.61 (M.D. Pa. Oct. 9, 2020).

The Department also concludes that the interpretation set forth in this document is most consistent with the purpose of Title IX, which is to ensure equal opportunity and to protect individuals from the harms of sex discrimination. As numerous courts have recognized, a school's policy or actions that treat gay, lesbian, or transgender students differently from other students may cause harm. *See, e.g., Grimm,* 972 F.3d at 617–18 (describing injuries to a transgender boy's physical and emotional health as a result of denial of equal treatment); *Adams,* 968 F.3d at 1306–07 (describing "emotional damage, stigmatization and shame" experienced by a transgender boy as a result of being subjected to differential treatment); *Whitaker ex rel. Whitaker* v. *Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,* 858 F.3d 1034, 1044–46, 1049–50 (7th Cir. 2017) (describing physical and emotional harm to a transgender boy who was denied equal treatment); *Dodds* v. *U.S. Dep't of Educ.,* 845 F.3d 217, 221–22 (6th Cir. 2016) (describing "substantial and immediate adverse effects on the daily life and well-being of an eleven-year-old" transgender girl from denial of equal treatment); *Doe,* 2020 WL 5993766, at \*\*1–3 (describing harassment and physical targeting of a gay college student that interfered with the student's educational opportunity); *Harrington ex rel. Harrington* v. *City of Attleboro,* No. 15–CV–12769–DJC, 2018

WL 475000, at \*\*6–7 (D. Mass. Jan. 17, 2018) (describing '' 'wide-spread peer harassment' and physical assault [of a lesbian high school student] because of stereotyping animus focused on [the student's] sex, appearance, and perceived or actual sexual orientation'').

*c. The U.S. Department of Justice's Civil Rights Division has concluded that* Bostock's *analysis applies to Title IX.*

The U.S. Department of Justice's Civil Rights Division issued a Memorandum from Principal Deputy Assistant Attorney General for Civil Rights Pamela S. Karlan to Federal Agency Civil Rights Directors and General Counsels regarding Application of *Bostock* v. *Clayton County* to Title IX of the Education Amendments of 1972 (Mar. 26, 2021), *https://www.justice.gov/ crt/page/file/1383026/download.*

The memorandum stated that, after careful consideration, including a review of case law, ''the Division has determined that the best reading of Title IX's prohibition on discrimination 'on the basis of sex' is that it includes discrimination on the basis of gender identity and sexual orientation.'' Indeed, ''the Division ultimately found nothing persuasive in the statutory text, legislative history, or caselaw to justify a departure from *Bostock's* textual analysis and the Supreme Court's longstanding directive to interpret Title IX's text broadly.''

## III. Implementing This Interpretation

Consistent with the analysis above, OCR will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in education programs and activities that receive Federal financial assistance from the Department. As with all other Title IX complaints that OCR receives, any complaint alleging discrimination based on sexual orientation or gender identity also must meet jurisdictional requirements as defined in Title IX and the Department's Title IX regulations, other applicable legal requirements, as well as the standards set forth in OCR's Case Processing Manual, *www.ed.gov/ ocr/docs/ocrcpm.pdf.*[2]

Where a complaint meets applicable requirements and standards as just described, OCR will open an investigation of allegations that an individual has been discriminated against because of their sexual orientation or gender identity in education programs or activities. This includes allegations of individuals being

harassed, disciplined in a discriminatory manner, excluded from, denied equal access to, or subjected to sex stereotyping in academic or extracurricular opportunities and other education programs or activities, denied the benefits of such programs or activities, or otherwise treated differently because of their sexual orientation or gender identity. OCR carefully reviews allegations from anyone who files a complaint, including students who identify as male, female or nonbinary; transgender or cisgender; intersex; lesbian, gay, bisexual, queer, heterosexual, or in other ways.

While this interpretation will guide the Department in processing complaints and conducting investigations, it does not determine the outcome in any particular case or set of facts. Where OCR's investigation reveals that one or more individuals has been discriminated against because of their sexual orientation or gender identity, the resolution of such a complaint will address the specific compliance concerns or violations identified in the course of the investigation.

This interpretation supersedes and replaces any prior inconsistent statements made by the Department regarding the scope of Title IX's jurisdiction over discrimination based on sexual orientation and gender identity. This interpretation does not reinstate any previously rescinded guidance documents.

*Accessible Format:* On request to the contact person listed under **FOR FURTHER INFORMATION CONTACT**, individuals with disabilities can obtain this document in an accessible format. The Department will provide the requestor with an accessible format that may include Rich Text Format (RTF) or text format (txt), a thumb drive, an MP3 file, braille, large print, audiotape, or compact disc, or other accessible format.

*Electronic Access to This Document:* The official version of this document is the document published in the **Federal Register.** You may access the official edition of the **Federal Register** and the Code of Federal Regulations at *www.govinfo.gov.* At this site you can view this document, as well as all other documents of this Department published in the **Federal Register,** in text or Portable Document Format (PDF). To use PDF you must have Adobe Acrobat Reader, which is available free at the site.

You may also access documents of the Department published in the **Federal Register** by using the article search feature at *www.federalregister.gov.* Specifically, through the advanced search feature at this site, you can limit

---

[2] Educational institutions that are controlled by a religious organization are exempt from Title IX to the extent that compliance would not be consistent with the organization's religious tenets. *See* 20 U.S.C. 1681(a)(3).

your search to documents published by the Department.

**Suzanne B. Goldberg,**

*Acting Assistant Secretary for Civil Rights.*

[FR Doc. 2021–13058 Filed 6–21–21; 8:45 am]

**BILLING CODE 4000–01–P**

---

# DEPARTMENT OF COMMERCE

## Patent and Trademark Office

### 37 CFR Part 11

**[Docket No.: PTO–C–2013–0042]**

**RIN 0651–AC91**

### Changes to Representation of Others Before the United States Patent and Trademark Office; Correction

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Final rule; correction.

**SUMMARY:** The United States Patent and Trademark Office (USPTO or Office) is correcting an earlier final rule, "Changes to the Representation of Others Before the United States Patent and Trademark Office," that appeared in the **Federal Register** on May 26, 2021 and which takes effect on June 25, 2021. This document corrects a minor error. No other changes are being made to the underlying final rule.

**DATES:** This rule is effective June 25, 2021.

**FOR FURTHER INFORMATION CONTACT:** William R. Covey, Deputy General Counsel for Enrollment and Discipline and Director of the Office of Enrollment and Discipline, at 571–272–4097.

**SUPPLEMENTARY INFORMATION:** This document corrects an error pertaining to revisions to definitions made in the final rule. Specifically, the Office intended to change the listed definition of "Roster" to "Roster or register." The Code of Federal Regulations editors informed the Office that the original **Federal Register** instruction to "revise" the definition was incorrect. Rather, the correct instruction should be to "remove and add" the intended definition. This document corrects that instruction.

In FR Doc. 2021–10528, appearing on page 28442 in the **Federal Register** of Wednesday, May 26, 2021, the following correction is made:

### §11.1  [Corrected]

■ On page 28452, in the first column, in part 11, correct amendatory instruction 4 to read as follows:

■ 4. Amend §11.1 by:

■ a. Revising the definitions of "Conviction or convicted" and "Practitioner;"

■ b. Removing the entry for "Roster" and adding, in alphabetical order, an entry for "Roster or register;" and

■ c. Revising the definitions for "Serious crime" and "State."

The revisions and addition read as follows:

**Andrew Hirshfeld,**

*Commissioner for Patents, Performing the Functions and Duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

[FR Doc. 2021–13145 Filed 6–21–21; 8:45 am]

**BILLING CODE 3510–16–P**

---

# LIBRARY OF CONGRESS

## Copyright Office

### 37 CFR Parts 201, 202, 203, 210, and 370

**[Docket No. 2021–3]**

### Technical Amendments Regarding the Copyright Office's Organizational Structure

**AGENCY:** U.S. Copyright Office, Library of Congress.

**ACTION:** Final rule.

**SUMMARY:** This final rule makes technical changes to the U.S. Copyright Office's regulations pertaining to its organizational structure in light of the agency's recent reorganization. It reflects recent structural changes, updates certain of the Office's division names, and adds a new section for the Copyright Claims Board established by the Copyright Alternative in Small-Claims Enforcement Act of 2020.

**DATES:** Effective July 22, 2021.

**FOR FURTHER INFORMATION CONTACT:** Regan A. Smith, General Counsel and Associate Register of Copyrights, by email at *regans@copyright.gov,* Kevin R. Amer, Deputy General Counsel, by email at *kamer@copyright.gov,* or Joanna R. Blatchly, Attorney-Advisor, by email at *jblatchly@copyright.gov* or by telephone at (202) 707–8350.

**SUPPLEMENTARY INFORMATION:** The Copyright Office is publishing this final rule pursuant to its May 2021 reorganization. This effort is intended to accomplish two goals: (1) Rename divisions and realign certain reporting structures to improve the Office's effectiveness and efficiency; and (2) reflect the agency structure for the new copyright small-claims tribunal established by the Copyright Alternative

in Small-Claims Enforcement ("CASE") Act of 2020.[1] The Register has determined that these changes will optimize business processes and aid in the administration of her functions and duties as Director of the Copyright Office.[2]

*Operational reorganization.* The reorganization reduces the number of direct reports to the Register of Copyrights and is expected to create administrative and cost efficiencies by consolidating operational organizations currently headed by senior-level positions. The reorganization brings the Office of the Chief Financial Officer (renamed the Financial Management Division) and the Copyright Modernization Office (renamed the Product Management Division) under the supervision of the Chief of Operations (renamed the Assistant Register and Director of Operations ("ARDO")). Realigning these divisions under the ARDO consolidates operational support elements under one senior manager, in line with operational structures across the Library of Congress. This consolidation is expected to facilitate Office coordination with centralized Library services, and with similar functional elements of other service units. It is also expected to allow the Office to increase the effectiveness of communications across areas of operational responsibility, in alignment with strategic objectives.

The reorganization renames certain organizational elements and senior positions for purposes of greater clarity and consistency. The Office of Public Records and Repositories is renamed the Office of Copyright Records. As noted above, the Office of the Chief of Operations is renamed the Office of the Director of Operations. The following subordinate offices are also renamed: The Copyright Acquisitions Division ("CAD") is renamed Acquisitions and Deposits ("A&D"); the Administrative Services Office ("ASO") is renamed the Administrative Services Division ("ASD"); and the Receipt Analysis and Control Division ("RAC") is renamed the Materials Control and Analysis Division ("MCA"). The Copyright Modernization Office ("CMO") is renamed the Product Management Division ("PMD").

Further, the Office of the Chief Financial Officer ("CFO") is renamed the Financial Management Division ("FMD") and work units under this division are also renamed, including by

---

[1] Public Law 116–260, sec. 212, 134 Stat. 1182, 2176 (2020).

[2] *See* 17 U.S.C. 701(a).

# Exhibit C

**USDA**

**United States Department of Agriculture**

---

<table>
<tr><td>Food and<br>Nutrition<br>Service</td><td>DATE:</td><td>May 5, 2022</td></tr>
<tr><td></td><td>MEMO CODE:</td><td>CRD 01-2022</td></tr>
<tr><td>Braddock<br>Metro Center</td><td>SUBJECT:</td><td>Application of <em>Bostock v. Clayton County</em> to Program Discrimination<br>Complaint Processing – Policy Update</td></tr>
<tr><td>1320<br>Braddock<br>Place<br>Alexandria<br>VA 22314</td><td>TO:</td><td>Regional Directors<br>All Food and Nutrition Service Programs<br>All Regions<br><br>State Directors<br>All Food and Nutrition Service Programs<br>All States</td></tr>
</table>

| Issuing Agency/Office: | FNS/Civil Rights Division |
|---|---|
| Title of Document: | Application of *Bostock v. Clayton County* in Program Discrimination Complaint Processing – Policy Update |
| Document ID: | |
| Z-RIN: | |
| Date of Issuance: | May 5, 2022 |
| Replaces: | |
| Summary: | This memorandum clarifies prohibitions against discrimination based on sex in all FNS programs found in Title IX of the Education Amendments of 1972; the Food and Nutrition Act of 2008, as amended, Supplemental Nutrition Assistance Program (SNAP), formerly the Food Stamp Program (7 USC § 2011 et seq.); and related implementing regulations that prohibit discrimination on the basis of gender identity and sexual orientation.<br><br>USDA/FNS issues this memorandum regarding processing discrimination complaints. |

The United States Department of Agriculture's (USDA) Food and Nutrition Service (FNS) Civil Rights Division issues this memorandum to provide direction to State agencies and program operators regarding processing program complaints that allege discrimination on the basis of gender identity and sexual orientation in programs or activities receiving Federal financial assistance from FNS.

Background

FNS enforces prohibitions on sex discrimination found in Title IX of the Education Amendments of 1972 (Title IX); the Food and Nutrition Act of 2008 (Food and Nutrition Act), as amended, Supplemental Nutrition Assistance Program (SNAP), formerly the Food Stamp Program 7 USC § 2011 et seq.; and related regulations. In June 2020, the U.S. Supreme Court held in *Bostock v. Clayton County*, 140 S. Ct. 1731, 590 U.S. ___ (2020), that employment discrimination based on gender identity or sexual orientation constitutes prohibited discrimination based on sex under Title VII of the Civil Rights Act of 1964. In *Bostock*, the Court explained that when an employer

Regional Directors and State Directors
Page 2

fires an employee for being gay or transgender, the employer fires that person "for traits or actions [the employer] would not have questioned in members of a different sex." 140 S. Ct. at 1737. This means that "[s]ex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids." *Id.* In other words, being gay or transgender is "inextricably bound up with sex." *Id.* at 1742.

On January 20, 2021, President Biden issued Executive Order (EO) 13988, "Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation." 86 Fed. Reg. 7023. The EO set out the Administration's policy that all persons are entitled to dignity, respect, and equal treatment under the law, no matter their gender identity or sexual orientation. EO 13988 references the Supreme Court's holding in *Bostock* and states that *Bostock*'s reasoning applies with equal force to other laws that prohibit sex discrimination "so long as the laws do not contain sufficient indications to the contrary." EO 13988 directs Federal agencies to review laws and regulations that prohibit sex discrimination to determine whether they prohibit discrimination on the basis of gender identity and sexual orientation.

Processing Discrimination Complaints

USDA/FNS is committed to ensuring consistent and robust enforcement of Title IX and the Food and Nutrition Act, in furtherance of the commitment that every person should be treated with respect and dignity. In light of *Bostock*, FNS has evaluated the statutes it enforces and determined that discrimination based on gender identity and sexual orientation can constitute prohibited sex discrimination under Title IX and the Food and Nutrition Act. This interpretation is based on the Agency's legal analysis of the statutory text of Title IX, the Title IX *Bostock* interpretations of the Departments of Justice and Education, the statutory text of the Food and Nutrition Act, and the reasoning set forth in *Bostock* and related caselaw.

As to Title IX, FNS concurs with and adopts the Department of Justice's and Department of Education's analyses concluding that Title IX's prohibition on sex discrimination includes a prohibition on discrimination on the basis of gender identity and sexual orientation. *See* Pamela S. Karlan, Memorandum to Federal Agency Civil Rights Directors and General Counsels, *Application of Bostock v. Clayton County to Title IX of the Education Amendments of 1972* (March 26, 2021); Enforcement of Title IX of the Education Amendments of 1972 with Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of *Bostock v. Clayton County*, 86 Fed. Reg. 32,637 (June 22, 2021).

Regarding the Food and Nutrition Act, the text of the Act's nondiscrimination provision is sufficiently similar to the language in Title VII that the *Bostock* court relied on in reaching its holding. First, the Act provides that "there shall be no discrimination by reason of . . . sex." 7 U.S.C. § 2020(c)(1). Title VII of the Civil Rights Act of 1964 prohibits discrimination "because of" an individual's sex. 42 U.S.C. § 2000e-2(a). The phrases "because of" and "by reason of" are used synonymously. *See, e.g.*, *Bostock*, 140 S. Ct. at 1739 ("And, as this Court has previously explained, the ordinary meaning of 'because of' is 'by reason of' or 'on account of.") (cleaned up); *cf. Merriam-Webster,* https://www.merriam-webster.com/dictionary/by%20reason%20of (last visited Feb. 24, 2022) (defining "by reason of" to mean "because of" or "due to"). Furthermore, in his *Bostock* dissent, Justice Alito listed the Food and Nutrition Act nondiscrimination provision, 7 U.S.C. § 2020(c)(1), among a list of "[o]ver 100 federal statutes [that] prohibit discrimination because of sex" which he anticipated being impacted by the majority decision in *Bostock*. 140 S. Ct. at 1778, 1791 (Alito J. dissenting).

Second, the Food and Nutrition Act, like Title VII, focuses on protecting individuals from discrimination. Title VII expressly protects "any individual" from discrimination. The Food and Nutrition Act also focuses on individual households ("applicant households"), as opposed to program applicants as a whole ("In the certification of applicant households for the supplemental nutrition assistance program, there

Regional Directors and State Directors
Page 3

shall be no discrimination by reason of . . . sex.") 7 U.S.C. § 2020(c)(1). As the *Bostock* Court observed, this focus on individuals is significant because it is not a "defense for the employer to note that, while he treated that individual woman worse than he would have treated a man, he gives preferential treatment to female employees overall." *Id.* at 1741. Similarly, it would not be a defense for a provider to argue that they should not be liable for discriminating against an individual applicant household based on sex because there is data showing that applicants as a whole receive assistance free of sex discrimination.

Thus, FNS concludes the focus on individual households and the prohibition of discrimination "by reason of" sex under the Food and Nutrition Act is sufficiently similar to Title VII such that the *Bostock* analysis applies to the Food and Nutrition Act. This means that the certification of applicant households for SNAP shall be conducted without discrimination on the basis of gender identity and sexual orientation.

State agencies and program operators should expeditiously review their program discrimination complaint procedures and make any changes necessary to ensure complaints alleging discrimination on the basis of gender identity and sexual orientation are processed and evaluated as complaints of discrimination on the basis of sex. State agencies and program operators are advised that the interpretation outlined in this memo does not determine the outcome in any particular case, which will depend on the specific facts and circumstances of that case. Any action taken by USDA in a specific case will take account of all relevant facts and legal requirements, including, where applicable, Title IX's religious exemption, the Religious Freedom Restoration Act, 42 U.S.C. 2000bb et seq., and any other applicable exemptions.

State agencies are reminded to distribute this memorandum to local agencies, Program Operators and Sponsors, and all other subrecipients of Federal financial assistance. Local agencies, Program Operators and Sponsors, and all other subrecipients should direct questions concerning this memorandum to their State agency. State agencies with questions should contact the appropriate FNS Regional Civil Rights Officer. The FNS Civil Rights Division is available to provide technical assistance as you ensure compliance with Title IX's and the Food and Nutrition Act's protections against sex discrimination.

Roberto Contreras
Director
Civil Rights Division
Food and Nutrition Service

Attachments

1/ Bostock Cover Letter
2/ Questions and Answers Related to CRD 01-2022 Application of *Bostock v. Clayton County* to Program Discrimination Complaint Processing – Policy Update

cc:    Deputy Administrators
       Regional Administrators
       Regional Civil Rights Officers

USDA is an Equal Opportunity Provider, Employer and Lender.

# Exhibit D



(https://cacfp.growthzonesites.com/blog/)    ← To Main Blog (https://cacfp.growthzonesites.com/blo

(https://cacfp.growthzonesites.com/policies-regulations/)    ← To Policies & Regulations (https://cacfp.growthzonesites.com/p regulations/)

  

# Updated Nondiscrimination Statement and "And Justice for All" Poster

May 16, 2022



# Summary:

Effective May 5th, 2022, USDA released updated nondiscrimination statement guidance. As a result of recent Supreme Court decision, State agencies and program operators must use the new updated nondiscrimination statement and new "And Justice for All poster".

# Why it Matters:

It is important for child nutrition program operators to be inclusive of all participants in any child nutrition program. Discrimination is prohibited in all child nutrition programs.

# Background:

In June 2020, the U.S. Supreme Court case Bostock v. Clayton concluded that employment discrimination based on gender identity or sexual orientation is prohibited under Title VII of the Civil Rights Act of 1964. Based on Bostock v. Clayton, the Civil Rights Division has updated the nondiscrimination statement and the "And Justice for All" posters to include gender identity and sexual orientation as protected bases.

# The new nondiscrimination guidance is as follows:

### 1. Must update nondiscrimination statement

Updated USDA nondiscrimination statement (https://www.fns.usda.gov/civil-rights/usda-nondiscrimination-statement-other-fns-programs): "In accordance with federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, this institution is prohibited from discriminating on the basis of race, color, national origin, sex (including gender identity and sexual orientation), disability, age, or reprisal or retaliation for prior civil rights activity." All new printing of materials must use the revised nondiscrimination statement. Websites must be updated within 90 days of this policy memo dated May 5, 2022.

### 2. Must display updated "And Justice for All" Poster

Updated "And Justice for All" Posters has been released and must be displayed.

Contact the **state agency or program sponsor** (https://www.fns.usda.gov/contacts/contact-map) in the state you are located to order copies of the "And Justice for All" posters. For more information on accessing new posters see **obtaining "And Justice for All" posters. (https://www.fns.usda.gov/cr/and-justice-all-posters-guidance-and-translations)**

## Questions and Answers:

*Q. What next steps must be taken by State agencies and program operators?*
A. State agencies and program operators will have to update their program discrimination complaint processing procedures for allegations related to services and activities receiving federal financial assistance from the USDA to ensure discrimination complaints alleging sexual orientation and gender identity discrimination are processed as complaints of prohibited sex discrimination. Additionally, State agencies and program operators will need to update their nondiscrimination statements and order new "And Justice for All" posters that reference gender identity and sexual orientation discrimination.

*Q. When should program operators and State agencies update the nondiscrimination statement and the "And Justice for All" posters?*
A. Policy Update is effective immediately. We will work with State agencies and program operators on the timing for updating documents and materials to include the updated nondiscrimination statement. Items that can be changed without further guidance should be updated as soon as possible (websites for example).

*Q. What should program operators and State agencies do with old "And Justice for All" poster?*
A. Currently, updated "And Justice for All" posters are in production and will be available in the coming months. State agencies and program operators must continue to display the applicable version of the poster dated September 2019, until updated "And Justice for All" posters are ordered and received.

*Q. Will a finding be issued for non-compliance with the updated "And Justice for All" poster and nondiscrimination statement?*
A. During the grace period, findings will not be issued if the State agency is unable to display the updated "And Justice for All" poster and incorporate the

nondiscrimination statement on documents and materials. Once the grace period(s) have expired for ordering and displaying posters and reprinting documents, a State agency or program operator must demonstrate efforts taken to comply with the guidance provided before a determination is made to issue a finding of noncompliance.

## For more information on Court Case and Updated Guidance:

Bostock Memo Cover Letter (https://www.cacfp.org/assets/pdf/Bostock+Memo+Cover+Letter+PDF+-+Signed%5B378%5D)

Application of Bostock v. Clayton County (CRD 01-2022) (https://www.cacfp.org/assets/pdf/Application+of+Bostock+v.+Clayton+County)

Bostock Question and Answer Memo Final (CRD 02-2022) (https://www.cacfp.org/assets/pdf/Bostock+Question+and+Answer+Memo+Final)

NDS and AJFA Poster Memo 2022 (https://www.cacfp.org/assets/pdf/NDS+and+AJFA+Poster+Memo+2022)

# Exhibit E

**USDA**

**United States Department of Agriculture**

Food and
Nutrition
Service

Braddock
Metro Center

1320
Braddock
Place
Alexandria
VA 22314

DATE:           May 5, 2022

MEMO CODE:      CRD 02-2022

SUBJECT:        Questions and Answers Related to CRD 01-2022 Application of *Bostock v. Clayton County* to Program Discrimination Complaint Processing – Policy Update

TO:             Regional Directors
                All Food and Nutrition Service Programs
                All Regions

                State Directors
                All Food and Nutrition Service Programs
                All State Agencies

| | |
|---|---|
| **Issuing Agency/Office:** | FNS/Civil Rights Division |
| **Title of Document:** | Questions and Answers Related to Application of *Bostock v. Clayton County* to Program Discrimination Complaint Processing – Policy Update |
| **Document ID:** | Not Applicable |
| **Z-RIN:** | Not Applicable |
| **Date of Issuance:** | May 5, 2022 |
| **Replaces:** | Not Applicable |
| **Summary:** | This memorandum provides clarification on questions related to the prohibitions against discrimination based on sex in all FNS programs found in Title IX of the Education Amendments of 1972; the Food and Nutrition Act of 2008, as amended, Supplemental Nutrition Assistance Program (SNAP) (7 USC § 2011 et seq.); and related implementing regulations prohibiting discrimination on the basis of gender identity and sexual orientation. |

The Food and Nutrition Service (FNS), Civil Rights Division (CRD) is issuing this memorandum to provide clarification on questions related to CRD 01-2022 *Application of Bostock v. Clayton County to Program Discrimination Complaint Processing – Policy Update*, published on May 5, 2022.

FNS's interpretation of discrimination on the basis of sex in programs or activities receiving Federal financial assistance includes discrimination on the basis of sexual orientation and discrimination on the basis of gender identity. The following questions and answers were developed to assist State Agencies and program operators with the implementation of this Policy Update.

USDA is an Equal Opportunity Provider, Employer, and Lender.

Regional Directors and State Directors
Page 2

<b>Questions and Answers</b>

**I.    General**

1. **What next steps must be taken by State Agencies and program operators?**
   State Agencies and program operators will have to update their program discrimination complaint processing procedures for allegations related to services and activities receiving federal financial assistance from the USDA to ensure discrimination complaints alleging sexual orientation and gender identity discrimination are processed as complaints of prohibited sex discrimination. Additionally, State Agencies and program operators will need to update their Nondiscrimination Statements and order new *And Justice for All* posters that reference gender identity and sexual orientation discrimination. The updated FNS Nondiscrimination Statement will be available in multiple languages at https://www.fns.usda.gov/cr/fns-nondiscrimination-statement. Additional guidance will be issued by FNS CRD specifically addressing these two topics.

2. **When should program operators and State Agencies update the Nondiscrimination Statement and the *And Justice for All* posters?**

   Although CRD 01-2022 *Application of Bostock v. Clayton County to Program Discrimination Complaint Processing – Policy Update* is effective immediately, additional guidance is forthcoming. We will work with State Agencies and program operators on the timing for updating  documents and materials to include the updated Nondiscrimination Statement. Items that can be changed without further guidance should be updated as soon as possible (websites for example). Additional guidance for timelines and implementation will be provided in a separate memorandum.

3. **What should program operators and State Agencies do with old *And Justice for All* posters?**

   Currently, updated *And Justice for All* posters are in production and will be available in the coming months. State Agencies and program operators must continue to display the applicable version of the poster dated September 2019, until updated *And Justice for All* posters are ordered and received. Guidance on poster ordering and display is forthcoming.

USDA is an Equal Opportunity Provider, Employer, and Lender.

Regional Directors and State Directors
Page 3

**4.  What if a State Agency or program operator does not currently have an *And Justice For All* poster displayed?**

Contact your Regional Civil Rights Officer for additional information and guidance.

**5.  Who is my Regional Civil Rights Officer?**

See regional contact list at https://www.fns.usda.gov/fns-regional-offices

**6.  How do you request a religious exemption with the U.S. Department of Agriculture?**

Under U.S. Department of Agriculture (USDA) regulation 7 CFR 15a.205, educational institutions and other entities may claim an exemption from the provisions of Title IX by submitting a written declaration to the Secretary of Agriculture identifying the provisions that conflict with a specific tenet of the religious organization.

USDA's Postal Service mailing address is:
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250

**7.  Will a finding be issued for non-compliance with the updated *And Justice for All* poster and Nondiscrimination Statement?**

During the grace period, findings will not be issued if the State Agency is unable to display the updated *And Justice for All* poster and incorporate the Nondiscrimination Statement on documents and materials. Once the grace period(s) have expired for ordering and displaying posters and reprinting documents, a State agency or program operator must demonstrate efforts taken to comply with the guidance provided before a determination is made to issue a finding of noncompliance. Additional guidance on timelines and implementation will be provided in a separate memorandum.

Please note there will not be a grace period for accepting and processing discrimination complaints based on sexual orientation and gender identity in FNS programs.

USDA is an Equal Opportunity Provider, Employer, and Lender.