# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

EQUALITY FLORIDA; FAMILY
EQUALITY; M.A., by and through
his parent AMBER ARMSTRONG;
S.S., by and through her parents,
IVONNE SCHULMAN and CARL
SCHULMAN; ZANDER MORICZ;
LINDSAY MCCLELLAND, in her
personal capacity and as next friend
and parent of JANE DOE; RABBI
AMY MORRISON and CECILE
HOURY; DAN and BRENT
VANTICE; LOURDES CASARES
and KIMBERLY FEINBERG;
LINDSEY BINGHAM SHOOK;
ANH VOLMER; SCOTT BERG;
and MYNDEE WASHINGTON,

                           Plaintiffs,

      v.

FLORIDA STATE BOARD OF
EDUCATION; THOMAS R.
GRADY, BEN GIBSON,
MONESIA BROWN, ESTHER
BYRD, GRAZIE P. CHRISTIE,
RYAN PETTY, and JOE YORK, in
their official capacities as members
of the Board of Education; JACOB
OLIVIA, in his official capacity as
Commissioner of Education of
Florida; FLORIDA DEPARTMENT
OF EDUCATION; BROWARD
SCHOOL BOARD; SCHOOL
BOARD OF MANATEE COUNTY;
SCHOOL BOARD OF SARASOTA
COUNTY; SCHOOL BOARD OF

Civil Action No. 4:22-cv-0134-
AW-MJF

MIAMI-DADE COUNTY;
ORANGE COUNTY SCHOOL
BOARD; ST. JOHNS COUNTY
SCHOOL BOARD; and PASCO
COUNTY SCHOOL BOARD;

              Defendants.

## <u>PLAINTIFFS' MOTION TO LIFT THE STAY OF DISCOVERY</u>

In the nearly seven weeks since this Court granted Defendants' request for a stay of discovery, ECF No. 89 (the "Order"), the facts on the ground have changed materially. As students throughout Florida have returned to school after the summer break, the intended and foreseeable harms of H.B. 1557 are stark, widespread, and proliferating. But because of the stay ordered by this Court on July 21, 2022, ECF No. 89, the parties are effectively stalled, unable to engage in discovery of the facts of H.B. 1557's implementation in public schools and unable to make progress toward the resolution of Plaintiffs' constitutional and statutory claims on the merits.

In the face of these widespread harms and Plaintiffs' willingness to limit discovery, the balance of prejudice has changed significantly since the Court's July 21 Order. The prejudice to Plaintiffs caused by the stay has increased immensely as the effects of H.B. 1557 multiply, with schools literally tearing "safe space" stickers for LGBT students off of walls, removing books that discuss LGBT people from library shelves, canceling any recognition of LGBT history month, and otherwise censoring any reference to LGBT persons or identities. At the same time, in

1

accordance with the Court's prior guidance, Plaintiffs have mitigated any potential prejudice to Defendants as a result of participating in discovery by limiting discovery from Governor DeSantis and Florida legislators. In these circumstances, Plaintiffs respectfully move to lift the stay for the following reasons.

*First*, as of August 10, 2022, the school year has begun. Plaintiffs previously warned that H.B. 1557's harms would "only multiply" once school resumed. Pls.' Mem. of Law in Opp. to Defs.' Mot. to Stay Discovery, ECF No. 81 at 5. Those warnings unfortunately have proven to be an understatement. Indeed, the effects of H.B. 1557 have been swift and profound, rippling throughout communities across Florida and causing injury to students, parents, and teachers, as described below and in Plaintiffs' declarations filed herewith. Throughout Florida, schools are taking extraordinary measures to purge any trace of LBGT people from schools, and teachers are afraid to show any support for LGBT students. For example, just last week, the Miami-Dade school board rejected, by an 8-1 vote, a measure to recognize October as LGBTQ history month, despite having voted in favor of such a measure last year (before H.B. 1557 was passed) by a 7-1 vote. Nearly every board member cited their belief that the measure violated H.B. 1557. Moreover, schools across Florida are peeling "safe space" stickers off of walls, removing books from libraries if they mention LBGT persons and families, and cautioning teachers not to mention or display photos of a same-sex spouse. Teachers are censoring any mention of

LGBT people or issues (including eliminating discussion of historical figures that might require recognition that LGBT people exist), removing classroom posters or materials that indicate support for LGBT students, and declining to sponsor LGBT student groups for fear of running afoul of the law. *See infra* pp. 6-9. Very recently, Defendant Commissioner of Education Manny Diaz, Jr. even issued a memorandum to Florida's school boards to ignore preemptive federal guidance from the U.S. Department of Education that Title IX prohibits discrimination based on sexual orientation and gender identity and thus requires equal treatment of LGBT students and staff. *See* Pls.' Notice of Supp. Auth., ECF No. 95 at 1-2. On its face, that memorandum effectively instructs school boards and, by extension, school personnel, that discrimination against LGBT students is not only permissible but now mandated by Florida law.$

Just as these developments on the ground accelerate, the case itself has been frozen in place. The February trial date that Plaintiffs specifically relied upon in declining to seek preliminary injunctive relief (First Amended Complaint ("FAC") ¶ 314, n. 80) now seems increasingly unlikely to happen as a practical matter. Keeping the case on track to reach an adjudication on the merits as soon as possible is essential to reducing the harms increasingly suffered by school children (and others) throughout Florida.

Moreover, one of the foundations on which the stay was previously entered—Defendants' prediction that H.B. 1557 would be interpreted and implemented narrowly—has completely eroded. As described in Plaintiffs' Notice of Supplemental Authority, ECF No. 95 at 2, Defendants have begun applying H.B. 1557 in an extremely broad manner that is flatly inconsistent with the narrow (and atextual) reading of the statute that they presented in their Motion to Stay Discovery, ECF 72, and in their subsequent Motions to Dismiss. More specifically, Defendants told this Court at that time that H.B. 1557 would only affect "curricular standards" and would "not subject Plaintiffs (or anyone else) to differential treatment." *Id*. at 5. Facts on the ground say otherwise, as it is now crystal clear that the law is being applied to censor any positive or supportive reference to LGBT people, even in the form of safe space stickers, and to subject LGBT students and teachers to disparate treatment. The interests of justice warrant lifting the stay so that the ongoing and escalating harms to Plaintiffs and others can be fully evaluated and addressed without delay.

*Second*, Plaintiffs have taken and continue to take steps to mitigate the Court's stated concerns about prejudice to Defendants based on discovery proceeding while Defendants' Motions to Dismiss are pending. In its Order granting the stay, ECF No. 89, the Court noted that "the discovery sought is extensive and would impose substantial burdens," and that certain Defendants "asserted Eleventh Amendment

immunity, which implicates interests of State's dignity and integrity." *Id.* at 2. Plaintiffs heeded that guidance. Since that Order was issued, Plaintiffs have voluntarily dismissed all claims against Ronald D. DeSantis in his capacity as Governor of Florida, *see* ECF 92, obviating the need for any discovery from him or his office, and removing from this case the defendant with the most (and only) viable claim to Eleventh Amendment immunity. *See* Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF 91 at 30, n.11 (voluntarily dismissing Defendant DeSantis).

Moreover, in an effort to address any other concerns cited by the Court in its Order, Plaintiffs are prepared to withdraw the portions of their discovery requests directed at communications by and among legislators acting in their legislative capacity. As a result, the fact discovery now being sought is narrowly targeted and will not place any undue burden on the remaining Defendants. Any remaining burden concerns can be addressed through the ordinary discovery process, as the parties move forward in discovery and toward trial.

## LEGAL STANDARD

As the Court recognized in its Order granting the stay, ECF No. 89, "district courts have substantial discretion" in deciding whether to stay discovery. Order at 1 (quoting *Patterson v. USPS*, 901 F.2d 927, 929 (11th Cir. 1990)). That broad discretion includes, of course, the authority to lift a stay of discovery previously

granted. *See, e.g.*, *Skytruck Co., LLC v. Sikorsky Aircraft Corp.*, No. 20:9-CV-267-FTM, 2011 WL 13143584, at *2 (M.D. Fla. Mar. 8, 2011) (lifting previously granted stay of discovery) (citing *Duldulao v. 5 Star Thai Dining, Inc.*, No. 8:10-CV-2227-T-33MAP, 2011 WL 32427, at *1 (M.D. Fla. Jan. 5, 2011) (same)).

Moreover, as the Court is aware, it is the "usual practice in this District [to] conduct[] discovery while Rule 12(b)(6) motions are pending." *Yelapi v. Desantis*, No. 4:20-cv-351-AQ-MAF, 2021 WL 1921018, at *1 (N.D. Fla. Feb. 25, 2021) (Winsor, J.). That is the usual practice because "when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997). Such is the case here.

## ARGUMENT

Plaintiffs respectfully request that the Court lift its prior stay of discovery because circumstances have changed on both sides of the scale, enhancing the prejudice to Plaintiffs and mitigating any prejudice to Defendants.

### I.     H.B. 1557's Ongoing Harms Underscore the Need for Discovery to Commence.

While the injurious effects of H.B. 1557 were felt immediately upon its passage and even before it took effect on July 1, 2022, *see* FAC ¶¶ 173-260, the start of the school year on August 10 has significantly amplified those harms and brought

new ones to the fore. School districts, schools, and individual faculty and staff have all struggled with implementation of the new law, as a result of its vague mandate and draconian consequences. For the most part, exactly as intended, H.B. 1557 has been construed across the state in a way that maximizes the scope of its prohibitions, and the scale of its consequences, all to inflict significant harm on Florida's LGBT community. These developments underscore the depths of ongoing injury suffered by Plaintiffs, which call for resolution of this case on the merits as soon as practically possible. They also directly contradict the proffered statutory interpretation and predicted course of events on which Defendants based their stay motion in the first place.

*First*, in just the three weeks since the law went into effect, H.B. 1557 has been broadly applied, both inside and outside the classroom, to teachers and to many others, and to school-related activities and personal relationships alike. For example:

- The Pasco County School District instructed employees to remove "safe space stickers" from all schools, effectively eliminating the existence of such spaces, in order to comply with H.B. 1557.[1] Safe spaces have long been utilized by schools to create an inclusive environment for LGBT students, allowing them to feel included, secure and welcome in sometimes hostile or otherwise challenging school environments. And safe space

---

[1] *See* Jeffrey S. Solochek, "Pasco schools ban 'safe space' stickers that show support for LGBTQ students," TAMPA BAY TIMES, Sept. 1, 2022, *available at* https://www.tampabay.com/news/education/2022/09/01/pasco-schools-ban-safe-space-stickers-that-show-support-for-lgbtq-students/; *see also* Anna Skinner, "'Safe Space' Stickers Banned by School District Following DeSantis Bill," NEWSWEEK, Sept. 1, 2022, *available at* https://www.newsweek.com/safe-space-stickers-banned-school-district-following-desantis-bill-1739162.

stickers signal to students that anti-LGBT (or other discriminatory) language and harassment will not be tolerated where they appear. H.B. 1557 is undermining that protection and removing signs of safety mere weeks after taking effect.

- The Duval County Public School District has removed safe space stickers that "identify[] their classroom[s] as a safe space for students in the LGBT community" in order to comply with H.B. 1557.[2]

- The Polk County School District refused a request from an assistant principal for more safe space stickers, citing the new law.[3]

- Orange County school officials warned educators not to wear rainbow articles of clothing and to remove not only safe space stickers from the classroom, but also pictures of same-sex spouses from their desks.[4]

- A friend of Plaintiff S.S., a senior at Miami Beach Senior High School, sought to create a website dedicated to LGBT resources for their International Baccalaureate ("IB") program service project, but the IB Coordinator rejected the idea, citing H.B. 1557. *See* Declaration of Plaintiff S.S. ¶¶ 3-4. As a result, the friend is not proceeding with their preferred project. *Id.* ¶ 5.

---

[2] *See* Rich Donnelly, "'They Feel Like They Are Under Siege:' LGBT Advocates Speak Out Against Removal of 'Safe Space' Stickers in Duval Schools," FIRST COAST NEWS, Aug. 18, 2022, *available at* https://www.firstcoastnews.com/article/news/local/equal-rights-groups-criticize-district-for-removing-safe-space-stickers/77-6668b593-64c1-44fa-9c98-d88107420832; *see also* Emily Bloch, "Equality Florida slams Duval Schools for removing 'Safe Space' rainbow stickers amid 'rebrand,' THE FLORIDA TIMES-UNION, Aug. 15, 2022, *available at* https://www.jacksonville.com/story/news/education/2022/08/15/duval-schools-replace-safe-space-stickers-rebrand-no-rainbows/10312688002/.

[3] Madeleine Carlisle, "LGBTQ Teachers Struggle to Navigate Florida's So-Called 'Don't Say Gay' Law," TIME, Aug. 25, 2022, *available at* https://time.com/6208554/florida-lgbtq-teachers-dont-say-gay-education-law/.

[4] Matt Lavietes, "As Florida's 'Don't Say Gay' law takes effect, schools roll out LGBTQ restrictions," NBC NEWS, June 30, 2022, *available at* https://www.nbcnews.com/nbc-out/out-news/floridas-dont-say-gay-law-takes-effect-schools-roll-lgbtq-restrictions-rcna36143.

- The Director of Student Services in one school district warned the school psychologist that if anything in H.B. 1557 were violated, the psychologist would be personally charged with a misdemeanor.

- Multiple school districts have removed books from library shelves and book fairs on account of LGBT content.[5] Similarly, multiple teachers have been told that they could lose their teaching license if they are found with objectionable content in their classrooms, leading them to remove access to books altogether.[6]

- A Palm Beach County history teacher changed her lesson plans about the first U.S. woman astronaut, Sally Ride, to omit her identity as a lesbian "because she didn't know how to explain that without running afoul of the new laws."[7]

- The Miami-Dade school board, representing the nation's fourth-largest public school system, rejected a plan to make October LGBTQ History month by an 8-1 vote.[8] The same measure passed the school board in 2021, before H.B. 1557 was enacted, by a vote of 7-1. Nearly every board member cited H.B. 1557 as a concern, with one board member stating that the measure was "in direct violation" of H.B. 1557. The measure would also have provided resources for teachers in 12th grade social studies to teach about the Supreme Court's decisions in *Obergefell v. Hodges* and *Bostock v. Clayton County*.

---

[5] Leslie Postal, "New Florida laws have schools jittery about handling books," ORLANDO SENTINEL, Aug. 29, 2022, *available at* https://www.orlandosentinel.com/news/education/os-ne-florida-law-school-libraries-books-20220829-z7hfur4oinhgjfd23jaqfaxzo4-story.html.

[6] Jo Yurcaba, "Florida teachers navigate their first year under the 'Don't Say Gay' law," NBC NEWS, Aug. 19, 2022, *available at* https://www.nbcnews.com/nbc-out/florida-teachers-navigate-first-year-dont-say-gay-law-rcna43817.

[7] Lori Rozsa, "Florida teachers race to remake lessons as DeSantis laws take effect," THE WASHINGTON POST, July 30, 2022, *available at* https://www.washingtonpost.com/education/2022/07/30/florida-schools-desantis-woke-indoctrination/.

[8] Andrew Atterbury, "Miami Dad school board rejects LGBTQ history month over fears it violates 'Don't Say Gay,'" POLITICO, Sept. 7, 2022, *available at* https://www.politico.com/news/2022/09/07/miami-dade-school-board-spars-over-lgbtq-history-month-recognition-00055368.

These examples—obtained without the benefit of any discovery—only scratch the surface of H.B. 1557's harmful impact. Certainly, there are many more instances that have gone unreported or are otherwise unknown to Plaintiffs without access to discovery tools.

These escalating harms and uncertainties emphasize the need for discovery to commence, so that the case can get back on track and Plaintiffs' claims can be adjudicated on the merits on as expedited a basis as possible. Indeed, commensurate with the urgency of this case, the Court initially ordered a fast-moving schedule with a trial date of February 2023. *See* ECF No. 61. Every day that discovery remains stayed renders that trial date increasingly unlikely and increases the harm and prejudice to Plaintiffs (and others). *See Seequip, Inc. v. All Am. Grinding Equip.*, *LLC*, 3:05-cv-259-RS-EMT, 2006 WL 8445231, at *5 (N.D. Fla. Jan. 5, 2006) (explaining that a stay of discovery would "prejudice Plaintiff and interfere with the pretrial deadlines" when pretrial deadlines "have been set and are fast approaching").

As this Court recognized in its original Order, "delay" is the "principal downside of a stay." Order at 1. The prejudice to Plaintiffs caused by that delay has only grown in the nearly two months since the Order was issued. *Yelapi*, 2021 WL 1921018, at *1 (N.D. Fla. Feb. 25, 2021) (denying discovery stay where "the discovery period is not much longer, and Plaintiffs would be prejudiced by a delay"); *Eli Research, LLC v. Must Have Info Inc.*, 2014 WL 2118874, at *2 (M.D. Fla. May

21, 2014) (denying motion to stay discovery because "delaying discovery until the Court rules on the Motion to Dismiss will cause Plaintiff harm and their case will go forward"). Following the current Scheduling Order—which provided for approximately four months of discovery and an additional three months until trial—even if discovery were to start as of the date of this filing, trial would not occur until the middle of April, exposing Plaintiffs to ever-increasing harms through the end of the school year. *See* ECF No. 61.

*Second*, these developments underscore the fact that H.B. 1557, in both practice and implementation, looks nothing like the law that Defendants described in their papers seeking and obtaining a stay of discovery and moving to dismiss. Defendants repeatedly claimed that H.B. 1557 would be limited to "curricular standards" and would "not subject Plaintiffs (or anyone else) to differential treatment." Motion to Stay at 5. Those representations are now belied by the reality of what is happening in Florida public schools, as H.B. 1557 is affecting virtually every aspect of public education, from what materials can be displayed in classrooms to which books are available to students to whether teachers can mention a same-sex spouse or sponsor a gay student club. Now that implementation of the law has begun and its sweeping impact is apparent, Plaintiffs respectfully ask the Court to reassess the equities of maintaining the stay of discovery at this point.

Rather than seeking to limit the scope of H.B. 1557 consistent with their prior representations to this Court, Defendants have taken affirmative steps to emphasize the law's sweeping scope and discriminatory intent. As explained in Plaintiffs' Notice of Supplemental Authority, Defendant Commissioner of Education instructed school districts to ignore Title IX's prohibition on engaging in discrimination based on sexual orientation or gender identity because it "may create a conflict with Florida law." Notice of Supplemental Authority at 2 (citation omitted). Not surprisingly, Defendants have since tried to walk back that categorical instruction by maintaining that it only concerns sports, State Defs.' Reply in Support of Mot. to Dismiss, ECF 105 at 8 n.4, but they have not issued any subsequent clarifying directive to the school districts, nor have they ever tried to explain how a blanket directive to disregard Title IX's protections given the breadth of Title IX bears any relationship to a purported concern only about sports. The fact that Defendants continue to say one thing to this Court and something else to teachers and school administrators desperate for guidance only exacerbates the problems inherent in H.B. 1557's vague and draconian mandate—and underscores the need to reassess the balance of prejudice now that the school year has begun and Defendants' prior representations have proved to be counterfactual.

## II.    Plaintiffs Have Voluntarily Narrowed the Scope of this Case and Discovery

The balance of equities has shifted in Plaintiffs' favor not only because of the increasing prejudice to Plaintiffs in maintaining the stay, but also because, in the interest of adjudicating their claims as expeditiously as possible, Plaintiffs have substantially and voluntarily narrowed the scope of the discovery they seek.

As noted above, the Court's Order granting a stay noted that the discovery being sought was "extensive" and that certain Defendants had asserted Eleventh Amendment immunity. Order at 2. Plaintiffs have now fully addressed these concerns in the following two ways.

*First*, Plaintiffs have voluntarily dismissed all claims against former Defendant DeSantis. *See* ECF. No. 92. Plaintiffs also hereby affirm they will not seek third-party discovery from the Governor's Office. Not only do these actions eliminate discovery demands on the Governor's Office, they also obviate the Eleventh Amendment immunity claims by the one Defendant who had the only potentially viable claim to such immunity. *See Falls v. DeSantis*, No. 22-cv-166, ECF 68 at 2-3 (N.D. Fla. July 7, 2022).

While this does not fully eliminate from the case all Defendants who have asserted Eleventh Amendment immunity, any remaining claims are weak at best, particularly since Defendants' own Motion to Dismiss has established that the remaining Defendants do have "some connection with the enforcement of" H.B.

13

1557. Pls.' Opp'n, ECF 91 at 30 (citation and quotation marks omitted). Indeed, Defendants themselves conceded that the law is "enforced by the State Board of Education," which is overseen by the State Education Officials. State Defs.' Mot. to Dismiss, ECF 68 at 22. Those Defendants, accordingly, are proper subjects of targeted discovery.

*Second*, Plaintiffs hereby withdraw and affirm that they will not further seek discovery of communications by and among legislators in connection with the drafting and negotiation of the law, outside the legislative record in order to prove improper animus under the Equal Protection Clause (and First Amendment), which is completely and adequately demonstrated by the public statements and materials already cited by Plaintiffs. Specifically, Plaintiffs amend or withdraw the following document requests that were served on all Defendants, as follows:

> 2. All Documents concerning the ~~drafting, proposal, consideration, passage, enactment,~~ enforcement, operationalization, application, interpretation, or implementation of H.B. 1557~~, or any prior versions of this bill~~.

> 3. ~~All Documents concerning any amendments to H.B. 1557, including offered, considered, or proposed amendments, whether or not adopted or approved.~~

> 5. ~~All Documents concerning H.B. 1557, or any earlier version or draft of that bill, including Communications transmitted between You and any other person.~~

Plaintiffs further amend the following interrogatories:

> 8. Identify all offices, subdivisions, officials, agents, employees partners, affiliates, and/or representatives of Your office who

14

have information or knowledge regarding the passage of H.B. 1557, including its ~~drafting, proposal, consideration, debate, enactment, and~~ implementation.

9. Identify all persons with whom You have communicated concerning the ~~drafting, proposal, consideration, passage, enactment,~~ enforcement, operationalization, application, interpretation, or implementation of H.B. 1557.

11. Identify all instances of classroom instruction "on sexual orientation or gender identity" in grades K-3 and all instances of classroom instruction that were not "age-appropriate or developmentally appropriate for students" in grades 4-12 that were referenced, considered or intended to be prohibited in connection with ~~the proposal, consideration, passage, and/or enactment of H.B. 1557, or that You have considered in~~ interpreting, operationalizing, applying, and/or implementing H.B. 1557.

Additionally, Plaintiffs amend the instructions to both document requests and interrogatories to clarify that none of these discovery requests seek communications by or among legislators.

These amendments further reduce the burden of discovery on all Defendants. They additionally shield from discovery in this matter the legislative process by which H.B. 1557 was enacted. The remaining discovery requests are appropriately tailored to target relevant information and place no undue burden on Defendants. Any burden objections Defendants may otherwise have can be addressed through the meet-and-confer process and, as necessary, discovery motion practice, which would itself take time. *See Jolly v. Hoegh Autoliners Shipping AS*, 2021 WL 1822758, at *2 (M.D. Fla. Apr. 5, 2021) (denying discovery stay where defendants

failed to show an "*unusually* prejudicial or burdensome circumstances which could warrant a stay") (emphasis in original).

## **CONCLUSION**

Since the Court entered its Order staying discovery, the prejudice to Plaintiffs from having no ability to conduct discovery has only grown—and will continue to do so—while Plaintiffs have taken steps to mitigate any possible undue and unusual prejudice to Defendants that would result from engaging in the ordinary discovery process. Plaintiffs respectfully submit that the circumstances have changed such that the interests of justice and balance of equities now warrant the commencement of discovery.

## **CERTIFICATE OF COUNSEL UNDER LOCAL RULE 7.1(B)**

Pursuant to Local Rule 7.1(B), the undersigned certifies that counsel for Plaintiffs conferred by written correspondence with Defendants concerning the foregoing issues, and that certain Defendants have opposed the motion while others have not responded.

Dated: September 12, 2022

Roberta A. Kaplan
John Quinn
Kate Doniger
Brandon Trice
KAPLAN HECKER & FINK LLP

16

350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com

Joshua Matz
Valerie L. Hletko
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

Christopher Stoll
NATIONAL CENTER FOR LESBIAN
RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
(415) 392-6257
CStoll@nclrights.org

Elizabeth F. Schwartz
ELIZABETH F. SCHWARTZ, P.A.
3050 Biscayne Blvd., Suite 600
Miami, Florida 33137
liz@elizabethschwartz.com

Michael W. Weaver
MCDERMOTT WILL & EMERY
444 West Lake Street
Chicago, Illinois 60606
(312) 984-5820
mweaver@mwe.com

Edward B. Diskant
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5754
ediskant@mwe.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2022, true and correct copies of the foregoing were duly served upon all parties via ECF.

Dated: New York, NY
         September 12, 2022                                    Roberta A. Kaplan, Esq.