## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| M.A., by and through his parent AMBER ARMSTRONG; S.S., by and through her parents, IVONNE SCHULMAN and CARL SCHULMAN; RABBI AMY MORRISON and CECILE HOURY; LOURDES CASARES and KIMBERLY FEINBERG; ANH VOLMER; SCOTT BERG; and MYNDEE WASHINGTON, | Civil Action No. 4:22-cv-00134 (AW) (MJF) |
| Plaintiffs, | |
| v. | **SECOND AMENDED COMPLAINT** |
| FLORIDA STATE BOARD OF EDUCATION; THOMAS R. GRADY, BEN GIBSON, MONESIA BROWN, ESTHER BYRD, GRAZIE P. CHRISTIE, RYAN PETTY, and JOE YORK, in their official capacities as members of the Board of Education; FLORIDA DEPARTMENT OF EDUCATION; BROWARD COUNTY SCHOOL BOARD; SCHOOL BOARD OF MANATEE COUNTY; SCHOOL BOARD OF MIAMI-DADE COUNTY; ORANGE COUNTY SCHOOL BOARD; and PASCO COUNTY SCHOOL BOARD, | **JURY DEMAND** |
| Defendants. | |

## **INTRODUCTION**

1.      Plaintiffs bring this action to invalidate and enjoin the enforcement of Florida House Bill 1557 (2022), which violates the First and Fourteenth Amendments to the United States Constitution, and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX").

2.      Since the law went into effect on July 1, 2022, it has caused numerous concrete harms to Plaintiffs and other students, teachers, and parents in Florida's public schools.   Faced with H.B. 1557's vague prohibitions and the threat of enforcement, schools have removed references to LGBTQ identities in curricula and shut down student proposals that touch on LGBTQ issues.   They have removed LGBTQ-related books, torn down LGBTQ safe spaces, directed teachers not to mention their same-sex partners in class, and refused to recognize the LGBTQ community's contributions through LGBTQ History Month—despite doing so before H.B. 1557, and continuing to do so for other protected classes.

3.      Students have been unable to participate in Gay-Straight Alliances ("GSAs") because potential faculty advisors are concerned about violating the law. Students have been told about rules requiring them to wear clothing that aligns with their gender assigned at birth and prohibiting dancing between students of the same sex.  And the State has directed everyone to disregard federal regulations prohibiting discrimination on the basis of sexual orientation or gender identity in schools, while

simultaneously making it clear that any violation of H.B. 1557 by teachers will result in suspension or revocation of their licenses.

4.     As a result of these and other actions—many of which are *expressly* based on concerns about complying with H.B. 1557, and others of which are obviously based on H.B. 1557 under logic and common sense—Plaintiffs and others in Florida's public schools have suffered concrete harms.  They have been denied equal educational opportunities they would like to receive, in the curriculum and beyond, and they have been subjected to a discriminatory educational environment that treats LGBTQ people and issues as something to be shunned and avoided, on pain of discipline and liability.  This type of overtly discriminatory treatment has no place in a free democratic society and should not be permitted to stand.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the United States Constitution, 42 U.S.C. § 1983, and Title IX.

6.     This Court has personal jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendants are public officials in the State of Florida, they are sued in their official capacities, and certain Defendants maintain their principal headquarters in this District.  Defendants reside within this District and/or perform official duties within Florida.

7.     There is an actual and justiciable controversy between Plaintiffs and Defendants because H.B. 1557 constitutes an immediate infringement on the constitutional and statutory rights of Plaintiffs.

## PARTIES[1]

### I.     Plaintiffs

8.     Plaintiffs are students, parents, and teachers who are being harmed and will continue to be harmed by H.B. 1557.

9.     M.A. is a gay, 17-year-old junior at Manatee School for the Arts, a public charter school in Palmetto, Florida.[2]

10.     S.S. is a lesbian, 17-year-old senior at Miami Beach Senior High School.

11.     Rabbi Amy Morrison and Dr. Cecile Houry are a committed lesbian couple in a domestic partnership.  They have two children, one in third grade at

---

[1] Plaintiffs have removed certain parties and allegations in accordance with the Court's September 29, 2022 Order on Defendants' Motions to Dismiss, EFC No. 120 ("Order"), subject to Plaintiffs' appellate rights, *see, e.g.*, *Reynolds v. Behrman Cap. IV L.P.*, 988 F.3d 1314, 1319-20 (11th Cir. 2021).

[2] Looking to its plain text and legislative history, H.B. 1557's applicability to charter schools is unclear—a circumstance that itself will have a chilling effect on those schools' LGBTQ communities.  While charter schools are generally exempt from the Florida Early Learning-20 Education Code, they must comply with "statutes pertaining to student health, safety, and welfare." Fla. Stat. § 1002.33(16)(a)(5) (2021). H.B. 1557 purports to relate to students' "mental, emotional, or physical health or well-being." It also amends Fla. Stat. § 1001.42(8), a section titled "Student welfare" containing provisions relating to "health, safety, and other matters relating to the welfare of students."  Fla. Stat. § 1001.42(8)(a). In addition, Governor DeSantis conducted the bill signing ceremony at a charter school, and his Press Secretary has stated that the law will apply in charter schools. *See* Danielle J. Brown, *Does the so-called 'Don't Say Gay' law apply to Florida charter public schools?*, FLORIDA POLITICS (Mar. 30, 2022), https://floridapolitics.com/archives/512625-does-the-so-called-dont-say-gay-law-apply-to-florida-charter-public-schools/.      Thus, while there are reasonable arguments that H.B. 1557 does not apply in charter schools, the State is likely to take the position that it does—a threat that is causing the very injuries identified in this Amended Complaint.

Miami Children's Museum Charter School, a public school in Miami-Dade County, and the other in kindergarten at Sunset Elementary School.

12.     Dr. Lourdes Casares and Dr. Kimberly Feinberg are a lesbian couple who have been together for over eighteen years.  They married in 2016, when same-sex marriage became legal in Florida.  They live together in Miami-Dade County and have a child who is in K-4 at a public school.

13.     Anh Volmer is a heterosexual woman who lives with her husband, her daughter, a first grader, and her son, a third grader.  Her children attend public elementary school in the Orlando area.

14.     Scott Berg is a long-time elementary school teacher at Flamingo Elementary School in Broward County.  Berg and his husband have been married for eight years and together as a couple for 12 years.  Since becoming a teacher 30 years ago, Berg has taught nearly every grade in elementary school.  He currently teaches elementary school art, and his students range from pre-kindergarten to fifth grade.

15.     Myndee Washington is a long-time middle-school civics and drama teacher at Union Park Charter Academy in Pasco County.  She is also a parent of three children, one of whom identifies as bisexual and attends a public high school in Pasco County.

## II.  Defendants

16.    Defendant Florida State Board of Education is the chief implementing and coordinating body of K-12 public education in Florida.  It supervises the State's public education system and the head of the Department of Education.  FLA. CONST., art. IX, § 2; Fla. Stat. § 20.15(1) (2021).  The Board of Education has authority to implement the provisions of law conferring duties upon it for the improvement of the State system of public education, including to adopt comprehensive educational objectives, approve plans for cooperation with other public agencies in the development of rules and enforcement of laws for which it and such agencies are responsible, enforce systemwide education goals and policies, and adopt and periodically review and revise the Next Generation Sunshine State Standards, which are the core content of the curricula to be taught in the state in K-12 public schools. Fla. Stat. §§ 1001.02-.03, 1003.41 (2021).  Under H.B. 1557, the Board of Education is required to review and approve or reject any recommendation of a special magistrate as to whether a school district is in compliance with the law, and to adopt rules necessary to implement the foregoing procedure.  *Id.* § 1001.42(8)(c)(7)(b)(I). The Board of Education is the recipient of federal financial assistance.

17.    Defendant Thomas R. Grady is the Chairman of the Board of Education, and Defendant Ben Gibson is Vice Chairman.  Defendants Monesia

Brown, Esther Byrd, Grazie P. Christie, Ryan Petty, and Joe York are members.  All are sued in their official capacities as members of the Board of Education.

18.    Defendant Florida Department of Education is the administrative agency that is responsible for implementing Florida's education policies and programs, under the implementation direction of the Board of Education.  Fla. Stat. §§ 20.15, 1001.20 (2021).   Under H.B. 1557, the Department of Education is responsible for reviewing and updating, as necessary, school counseling frameworks and standards, educator practices and professional conduct principles, and any other student services, personnel guidelines, standards, or frameworks in accordance with the requirements of the act.  The Department of Education is the recipient of federal financial assistance.

19.    Defendant Broward County School Board is a district school board organized and governed pursuant to Fla. Stat. § 1001.34 *et seq.*  The Broward County School Board operates Flamingo Elementary School, where Plaintiff Berg is employed as a teacher.  Its powers and duties include implementing H.B. 1557. *See id.* § 1001.42(8).

20.    Defendant School Board of Manatee County is a district school board organized and governed pursuant to Fla. Stat. § 1001.34 *et seq.*  The School Board of Manatee County operates Manatee School for the Arts, which Plaintiff M.A.

attends.   Its powers and duties include implementing H.B. 1557.   *See id.* § 1001.42(8).

21.   Defendant School Board of Miami-Dade County is a district school board organized and governed pursuant to Fla. Stat. § 1001.34 *et seq.*  The School Board of Miami-Dade County operates Miami Beach Senior High School, which S.S. attends; Miami Children's Museum Charter School and Sunset Elementary School, which the children of Morrison and Houry attend; and the school attended by the child of Plaintiffs Casares and Feinberg.   Its powers and duties include implementing H.B. 1557.  *See id.* § 1001.42(8).

22.   Defendant Orange County School Board is a district school board organized and governed pursuant to Fla. Stat. § 1001.34 *et seq.*  The Orange County School Board operates the school attended by the children of Plaintiff Volmer.   Its powers and duties include implementing H.B. 1557.  *See id.* § 1001.42(8).

23.   Defendant Pasco County School Board is a district school board organized and governed pursuant to Fla. Stat. § 1001.34 *et seq.*  The Pasco County School Board operates Union Park Charter Academy, where Plaintiff Washington is employed as a teacher, and a public school where her son is a student.   Its powers and duties include implementing H.B. 1557.  *See id.* § 1001.42(8).

## STATEMENT OF FACTS

**I.    Florida's commitment and obligation to provide a meaningful education for all students and school districts' efforts to meet it**

24.    The Supreme Court has affirmed the central role of public schools as "the nurseries of democracy." *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S. Ct. 2038, 2046 (2021).  In keeping with this longstanding commitment to "academic freedom," *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967), the First Amendment protects students' "right to receive information and ideas," *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982) (quoting *Stanley v. Georgia*, 394 U.S. 557, 564 (1969)).  Moreover, "students do not 'shed their constitutional rights to freedom of speech or expression,' even 'at the school house gate.'" *Mahanoy*, 141 S. Ct. at 2044 (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)).

25.    Florida also guarantees that "all K-12 public school students are entitled to a uniform, safe, secure, efficient, and high quality system of education, one that allows students the opportunity to obtain a high quality education" that is "made available without discrimination on the basis of race, ethnicity, national origin, gender, disability, religion, or marital status."  Fla. Stat. §§ 1002.20(1), (7) (2021).

26.    In recent years, local school districts have aspired to make Florida's promise of a meaningful education real for a historically excluded and disadvantaged group—LGBTQ students—through non-discriminatory, inclusive curricula and school environments.

27.     For instance, Plaintiff M.A.'s school district in Manatee County has had a policy requiring "equal opportunity and access in relation to all stakeholders: students, families, and staff … by valuing, acknowledging, recognizing, and celebrating everyone in our school system" regardless of "gender, sex, gender identity, gender expression, [or] sexual orientation."  That policy instructs the School Board to, among other things, "[s]elect and develop instructional materials that are historically accurate and represent the experiences of the diverse school community."[3]  Manatee County also has a policy of Non-Discrimination and Access to Equal Educational Opportunity that prohibits discrimination and harassment on the basis of sexual orientation, transgender status, and gender identity and requires that educational programs "be designed to meet the varying needs of all students."  Specifically, curriculum content must "fairly depict the contribution of" different groups "toward the development of human society."[4]  And finally, Manatee County previously adopted "LGBTQ+ District Guidelines" "intended to assist faculty, staff, and students in fostering positive self-image, establishing safe and inclusive schools, and promoting academic success for students who are, or are perceived to be, Lesbian, Gay, Bisexual, Transgender, or Questioning (LGBTQ)," which included

---

[3] School District of Manatee County Policy Manual, *po9142* (Oct. 27, 2020),
        https://go.boarddocs.com/fl/mancofl/Board.nsf/goto?open&id=APMMA75599D6#.

[4] School District of Manatee County Policy Manual, *po2260* (Apr. 12, 2022),
        https://go.boarddocs.com/fl/mancofl/Board.nsf/goto?open&id=APMMA75599D6#.

eight "Actions" the district should take to support LGBTQ students in accordance with the laws in place at the time.[5]

28.    The Miami-Dade County Public Schools, where Plaintiff S.S., the children of Casares and Feinberg, and the children of Morrison and Houry attend school, has "comprehensive anti-discrimination and anti-bullying policies that require all students be treated with respect regardless of their unique characteristics, including sexual orientation or gender identity."  The "Guidelines for Promoting Safe and Inclusive Schools" have the stated goal of "promot[ing] a positive, proactive approach that upholds and protects the rights of transgender and gender nonconforming students; and best practices to ensure that transgender students and gender nonconforming students have equitable access to all aspects of school life (academic, extracurricular and social) in ways that preserve and protect their dignity."[6]  These guidelines highlight existing district policies that support LGBTQ youth, including prohibitions against discrimination, bullying, and harassment, and include best practices to support and ensure the safety of all students.[7]

---

[5] School District of Manatee County, *LGBTQ+ District Guidelines*, https://web.archive.org/web/20211228214657/https://www.manateeschools.net/cms/lib/FL02202357/Centricity/Domain/4941/District_LGBTQ_Guidelines.pdf.

[6] Miami-Dade County Public Schools, *Guidelines for Promoting Safe and Inclusive Schools*, at 2 (last revised July 2020), https://api.dadeschools.net/WMSFiles/94/pdfs/GUIDELINES-FOR-PROMOTING-SAFE-07-2020.pdf.

[7] *Id.* at 2, 9-11.

29.     Similarly, Broward County School District, where Plaintiff Berg teaches, has sought to "promote safer schools and create more welcoming and affirming learning environments" for LGBTQ students, those perceived to be LGBTQ, and their allies.[8]   As an example, Broward County requires a non-discriminatory curriculum that must at least include literature written by LGBTQ authors, history including LGBTQ public figures, discussions of families including same-sex parents and relevant topics encompassing the diversity of LGBTQ young people, and recognition of national LGBTQ events.[9]   Broward County has also adopted an anti-bullying policy that prohibits bullying and harassment based on sexual orientation, gender identity, and gender expression.[10]

30.     The Palm Beach County School District has supported LGBTQ youth by requiring a non-discriminatory curriculum that covers, among other things, the history and social movements of LGBTQ people, discussions of families that include same-sex parents/caregivers, and relevant topics encompassing the diversity of

---

[8] Broward County Public Schools, *Lesbian, Gay, Bisexual, Transgender, Questioning + Critical Support Guide*, at iv (2012), https://stonewall-museum.org/wp-content/uploads/Broward-County-Public-Schools-LGBTQ-Critical-Support-Guide-2016-1-3.pdf.

[9] *Id.* at 4-5.

[10] *Id.* at 5-6.

LGBTQ young people.  It also has adopted an Anti-Bullying Roundtable and Strategic Plan, which includes safe environments for all students and staff.[11, 12]

31.     Such measures have helped to create a non-discriminatory, inclusive environment for LGBTQ students that is critical to meeting their educational needs.[13]  They have also promoted the safety, equal treatment, and acceptance of LGBTQ students, who are at risk of harassment, depression, and other negative educational experiences because of their sexual orientation or gender identity.  *See infra* Part III.

---

[11] School District of Palm County, *The School District of Palm Beach County LGBTQ+ Critical Support Guide*, 6, 16-17 (2d ed. 2021), https://cdn5-ss14.sharpschool.com/UserFiles/Servers/Server_270532/File/Students%20&%20Parents/Curriculum/10.19.2022_SDPBC_LGBTQ_CriticalSupportGuide.pdf.

[12] Other counties have adopted similar guidelines. *See* Alachua County Public Schools, *LGBTQ+ Critical Support Guide* (Dec. 8, 2021), https://web.archive.org/web/20211222213631/https://go.boarddocs.com/fl/alaco/Board.nsf/files/C9HSYJ7300DD/$file/LGBTQ+%20Critical%20support%20Guide.pdf; Duval County Public Schools, *LGBTQ+ Support Guide* (2020), https://s3.documentcloud.org/documents/21988102/dcps_lgbtq_support_guide_2020.pdf; Hillsborough County Public Schools, *Lesbian, Gay, Bi-Sexual, Transgender, and Questioning/Queer (LBGTQ+) Critical Resource and Support Guide for Staff* (Aug. 31, 2021), https://www.wfla.com/wp-content/uploads/sites/71/2022/02/Hillsborough-Schools-LGBTQ-Critical-Resource-Guide-2021-08.31.21.pdf; Pinellas County Schools, *Inclusive Schools Support Guide: Promoting Safe and Inclusive Schools* (May 28, 2020), http://www.pccpta2020.com/wp-content/uploads/2021/09/Inclusive-Schools-Support-Guide_FINAL_5.28.20.pdf; Volusia County Schools, *Lesbian, Gay, Bi-sexual, Transgender and Questioning (LGBTQ) Support Guide* (2020), https://beacononlinenews.com/wp-content/uploads/2022/03/VCS-LGBTQ-Support-Guide-2020.pdf.

[13] *See, e.g.*, *2018-2019 NEA Resolutions* at 219-20, NATIONAL EDUCATION ASSOCIATION OF THE UNITED STATES OF AMERICA (2019), https://my.lwv.org/sites/default/files/resolutions_nea_hb_2019.pdf (recommending that schools adopt "inclusive educational programs that address the unique needs and concerns" of LGBTQ students).

## II.    H.B. 1557 was enacted to undercut these developments, harm LGBTQ students, and stifle speech

32.    H.B. 1557 seeks to undo all of this, and in part, already has.  Although it is formally entitled the "Parental Rights in Education Act," it is popularly and more accurately known as Florida's "Don't Say Gay" law.  H.B. 1557 is avowedly aimed at eliminating, and already has begun to eliminate, any recognition or discussion of LGBTQ persons or issues in public schools.

33.    In relevant part, H.B. 1557 amends Florida Statutes Section 1001.42 to add new subsection 8(c)(3), which provides:

> Classroom instruction by school personnel or third parties on sexual orientation or gender identity may not occur in kindergarten through grade 3 or in a manner that is not age-appropriate or developmentally appropriate for students in accordance with state standards.

34.    The law does not define the subject matter of the speech it seeks to prohibit.  Nowhere does it even attempt to define its operative terms.  "Classroom instruction" is left undefined, as are "sexual orientation" and "gender identity."[14] Nor does the law define the actors whose speech is restricted: "school personnel" could span from teachers to principals to guidance counselors, while "third parties" ostensibly reaches anyone outside of the school personnel context, including parents, other family members, and even students.

---

[14] Adding to its intended vagueness, the Preamble to H.B. 1557 states that it is a law "prohibiting classroom *discussion* about sexual orientation or gender identity."  (Emphasis added.)

35.     The law's prohibitions expressly apply in grades K-3.  But they do not stop there.  H.B. 1557 applies to any grade where "classroom instruction" is "not age-appropriate or developmentally appropriate in accordance with state standards." As with its other core provisions, the law does not define what those "state standards" are.  The law does require the Department of Education to "review and update … school counseling frameworks and standards; educator practices and professional conduct principles; and any other student services personnel guidelines, standards, or frameworks," but even that need not occur until June 30, 2023—a year *after* the law went into effect.

36.     During an April 2022 interview, Governor Ronald DeSantis made clear that he intends for the prohibition to extend to all grade levels.

> Q. "You did the bill about K, or pre-K through 3.  Why'd you stop at 3?  That's my question."
> A. "Well it does and it says anything above that has got to be developmentally and age-appropriate, so the Florida Department of Education will be putting some meat on the bones on that…"
> Q. "Would you be potentially looking at limitations at older kids?"
> A.  Well here's the thing.  *Things like woke gender ideology have no place in the schools period.*  I mean if you want woke gender ideology then go to Oberlin or Berkeley or something like that, but it's just not appropriate…."[15] (emphasis added).

---

[15] Fox News, "DeSantis: Education not indoctrination," YOUTUBE (Apr. 29, 2022), 6:06-40, https://www.youtube.com/watch?v=12IVeeq2ydk.

37.     In the meantime, any parent with a "concern" about a violation of H.B. 1557 may sue their school district for court costs and attorneys' fees, subject only to the requirement to give 30 days' notice.  Notably, H.B. 1557 places no limit on when parents can sue school districts, and legislators rejected an amendment that would allow districts to recover costs and fees if they prevail.  This means that parents will be able to file suit long before the Department of Education may provide any guidance as to the meaning of certain aspects of the law, with little repercussion.

38.     The intended impact of this law is apparent.  It seeks to undo the equal inclusion of LGBTQ people and issues in Florida's schools and to impede policies requiring equal treatment and support of LGBTQ students.  Presented with vague prohibitions under the threat of litigation, schools and educators have been and will be chilled from discussing or even referencing LGBTQ people, and LGBTQ students have been and will be stigmatized, ostracized, and denied the educational opportunities that their non-LGBTQ peers receive.

39.     That is precisely what the Florida lawmakers who supported and passed this law intended.  Indeed, legislators and Governor DeSantis have been crystal-clear about their goal of eliminating any discussion about LGBTQ identities and issues from public schools.  Just as legislators' statements evidenced DOMA's aim to "interfere[] with the equal dignity of same-sex marriages," *United States v. Windsor*, 570 U.S. 744, 771-72 (2013), the statements here reflect disapproval of LGBTQ

students, parents, and teachers and an open desire to prevent any mention of LGBTQ people.

40.     For example, the sponsor of H.B. 1557 in the Senate, Senator Dennis Baxley, openly admitted that the law is intended to prohibit discussions about sexual orientation and gender identity of LGBTQ students.  He warned that "everybody now is all about coming out when you're in school" and there is a "concern" about "kids trying on different kinds of things they hear about and different kinds of identities and experimenting."   Senator Baxley added that "parents are very concerned about the departure from the core belief systems and values."  He also claimed that "75% of people … agree with me that there's something wrong with how we're emphasizing this and all of a sudden overnight [students] are a celebrity when they felt like they were nobody."  These statements reveal an overt intention to single out LGBTQ people and their families for negative treatment, to discourage LGBTQ students from disclosing their identities, to censor any positive mention of LGBTQ people, and to prevent schools from supporting LGBTQ people on an equal basis with others.[16]

41.     In other statements, Senator Baxley confirmed that the purpose of the law is to discourage students from coming out as LGBTQ.  When Senator Baxley

---

[16] Fla. S., recording of proceedings, at 08:09:30-08:12:00 (Mar. 7, 2022 at 10:00 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_4gaky6b9-202203071000&Redirect=true.

was asked if the reason for H.B. 1557 is that "there seems to be a big uptick in the number of children who are coming out as gay or experimenting and therefore we need to not discuss it in the younger grades," he responded: "[W]e know there are social inputs into how people act and what they decide to do so, yeah, that's part of our concern for the well-being of our children."[17]  As another senator observed, Senator Baxley's comments reflect "invidious discrimination for what we have targeted and we have selected as a protected class."[18]

42.    In other contexts, Senator Baxley has explained that H.B. 1557 is designed to prevent discussion of LGBTQ families.  At a Senate hearing on February 8, 2022, Republican Senator Travis Hutson gave the example of a math problem in which "Sally has two moms or Johnny has two dads."  Senator Baxley said that is "exactly" what the law aims to prevent.[19]

43.    H.B. 1557's sponsor in the House, Republican Joe Harding, has also been forthcoming about the law's discriminatory focus on LGBTQ students and issues.  During legislative debate, Representative Harding justified the law on the

---

[17] Fla. S., recording of proceedings, at 08:12:00-08:13:00 (Mar. 7, 2022 at 10:00 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_4gaky6b9-202203071000&Redirect=true.

[18] Kelly Hayes, *'Gay is not a permanent thing': Legislature passes bill to restrict LGBTQ topics in elementary schools*, FLORIDA POLITICS (Mar. 9, 2022), https://floridapolitics.com/archives/505744-gay-is-not-a-permanent-thing-legislature-sends-controversial-parental-rights-bill-to-governor/.  Consistent with his discriminatory aim behind H.B. 1557, in 2018 Senator Baxley told his constituents: "I know some districts where there's a big infestation of homosexuals that are pushing their agenda…."

[19] Madeleine Carlisle, *Florida Just Passed the "Don't Say Gay" Bill. Here's What It Means for Kids*, TIME (Mar. 8, 2022), https://time.com/6155905/florida-dont-say-gay-passed/.

basis that talking about sexual orientation and gender identity could result in students "hav[ing] one identity in school and one at home because the school encourages that kind of behavior."[20]  Similarly, in an interview on October 15, 2022, Representative Harding explained that his concern was with schools talking with "child[ren] about their pronouns, or whatever new thing that we've created," and with "14-year-old children … being all these different types of genders."  In the same interview, Representative Harding more broadly criticized efforts by Disney (and others) to make "LGBTQ person[s] … 'mainstream,'" a notion he called "just really out of line … with what the majority of Americans believe in and see."[21]

44.    Other supporting legislators have been equally candid that H.B. 1557 is focused on LGBTQ people and is intended to bar discussions of LGBTQ people and issues—not of heterosexual and non-transgender people's sexual orientation or gender identity.[22]

45.    For instance, in voicing support for H.B. 1557, Representative Juan Alfonso Fernandez-Barquin claimed: "We have children as young as six years old

---

[20] Kirby Wilson, *Republicans made changes to 'don't say gay' bill.  LGBTQ advocates aren't buying it*, TAMPA BAY TIMES (Feb. 18, 2022), https://www.tampabay.com/news/florida-politics/2022/02/17/republicans-made-changes-to-dont-say-gay-bill-lgbtq-advocates-arent-buying-it/.

[21] The Epoch Times, Epoch TV, https://www.theepochtimes.com/from-gender-theory-guides-to-transition-questionnaires-florida-state-rep-joe-harding-on-the-fight-for-parental-rights-in-education_4795734.html.

[22] Fla. S., recording of proceedings, at 08:11:30-08:12:00 (Mar. 7, 2022 at 10:00 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_4gaky6b9-202203071000&Redirect=true.

being taught the radical leftist gender theory and that is frightening."[23]   Senator Ileana Garcia also suggested that discussions of sexual orientation should be prohibited because "'gay' is not a permanent thing.   LGBT is not a permanent thing."[24]

46.      The premise of H.B. 1557 is that if schools and educators prevent any recognition or discussion of LGBTQ people or issues, then LGBTQ students will be deterred from disclosing their identities and will instead be—or try to be— heterosexual or non-transgender.

47.      Governor DeSantis also made clear that H.B. 1557's limitation on "sexual instruction" does not apply to instruction on heterosexuality and cisgender identities, asserting that parents do not "want their kids to have transgenderism or something injected into classroom instruction."[25]

48.      Governor DeSantis's press secretary, Christina Pushaw, confirmed this understanding.   She called H.B. 1557 an "Anti-Grooming Bill" and said that "[i]f you're against the Anti-Grooming Bill, you are probably a groomer or at least you

---

[23] Kelly Hayes, *'We are in distress': House passes LGBTQ instruction bill despite pleas from Democrats*, Florida Politics (Feb. 24, 2022), https://floridapolitics.com/archives/500337-we-are-in-distress-house-passes-lgbtq-instruction-bill-despite-pleas-from-democrats/.

[24] Kelly Hayes, *'Gay is not a permanent thing': Legislature passes bill to restrict LGBTQ topics in elementary schools*, Florida Politics (Mar. 9, 2022), https://floridapolitics.com/archives/505744-gay-is-not-a-permanent-thing-legislature-sends-controversial-parental-rights-bill-to-governor/.

[25] *Florida Governor DeSantis defends controversial 'Don't Say Gay' bill*, CBS News (Mar. 5, 2022), https://www.cbsnews.com/news/florida-governor-desantis-defends-dont-say-gay-bill/.

don't denounce the grooming of 4-8 year old children."[26]  She has also stated that "[a]ny adult who wants to discuss sexual and gender identity topics with other people's 5- to 8-year-old children—while keeping this a secret from their parents—is either a groomer or is complicit in promoting an environment where grooming becomes normalized."[27]  Pushaw's statements imply that even discussing LGBTQ issues or acknowledging LGBTQ people's existence will cause students to "become" LGBTQ.  They also imply that teachers and other school staff who create an environment in which LGBTQ students and issues are treated openly and equally are akin to adults who "groom" minors to subject them to sexual abuse. The dangerous, false, and discriminatory implication is that, in contrast to heterosexual and non-transgender identities, LGBTQ identities are inherently sexualized, and the mere presence of LGBTQ people or open discussion of LGBTQ issues in schools is therefore akin to improperly sexualizing children.[28]

49.    Pushaw's statements were echoed by other supporters of H.B. 1557, who also readily acknowledged the law's focus on LGBTQ people and issues.  For

---

[26] Christina Pushaw (@ChristinaPushaw), TWITTER (Mar. 4, 2022, 6:33 PM), https://twitter.com/ChristinaPushaw/status/1499890719691051008.

[27] Christina Pushaw (@ChristinaPushaw), TWITTER (Apr. 5, 2022, 9:12 AM), https://twitter.com/ChristinaPushaw/status/1511331024541782020.

[28] *See* Monica Hesse, *Fans of Florida's 'Don't Say Gay' bill have a new favorite word: 'Grooming*,' WASH. POST (Mar. 12, 2022), https://www.washingtonpost.com/lifestyle/2022/03/12/florida-dont-say-gay-bill/.  In fact, there is a very real risk that the law will *adversely* impact the detection and prevention of child abuse insofar as instances of sexual abuse and related behaviors are often reported to, or by, teachers and other school personnel.  Measures that limit open lines of communication between students and teachers tend to result in students being afraid or ashamed to speak up about potentially problematic conduct or behavior.

instance, the Florida Family Policy Council, a group that lists as a core issue "LGBT Agenda & Transgenderism," has called H.B. 1557 the "'Don't turn my son into a daughter' bill."[29]

50.    On March 10, shortly before he signed it into law, Governor DeSantis again stated that "[i]n the state of Florida, we are not going to allow them to inject transgenderism into kindergarten."  He added, "[w]e don't want transgenderism in kindergarten and first grade classrooms."[30]  And after the bill was passed, Governor DeSantis expressed his intention to "go on offense" against "[i]njecting transgender ideology in[to] kindergarten classrooms."[31]

51.    Governor DeSantis has not expressed concerns about students identifying as cisgender (or heterosexual) at any age.

52.    The premise behind the statements of those who drafted, supported, and enacted the law is clear: discussions about LGBTQ people are wrong and must be prohibited because the mere recognition of LGBTQ existence will make otherwise heterosexual and cisgender children more likely to be gay and transgender.  It is also a direct statement to LGBTQ children that you are not normal and if you can't

---

[29] Florida Family Policy Council, *About FFPC*, https://www.flfamily.org/about-ffpc (last visited May 23, 2022); Florida Family Policy Council, *Legislative Session Week 7 of 9 – February 25, 2022* (Feb. 25, 2022), https://www.flfamily.org/uncategorized/week-7-of-9-insiders-report-legislative-session.

[30] *DeSantis slams 'woke' Disney after CEO condemns parents' rights bill*, FOX NEWS (Mar. 11, 2022), https://video.foxnews.com/v/6300358476001#sp=show-clips.

[31] Christina Pushaw (@ChristinaPushaw), TWITTER (Apr. 22, 2022, 9:11 PM), https://twitter.com/ChristinaPushaw/status/1517672480571330566?s=20&t=pNnN0_XA5DfCsSbanAtxMA.

change, you should hide your identity.  H.B. 1557 is not even a dog whistle; it is an open declaration of discrimination against LGBTQ children and children with LGBTQ parents.  A law whose purpose is to prevent people from being LGBTQ is not only ridiculous, unscientific, and at odds with reality; it is also offensive and unconstitutional.  *See Obergefell v. Hodges*, 576 U.S. 644,   661 (2015) ("[P]sychiatrists and others [have] recognized that sexual orientation is both a normal expression of human sexuality and immutable.").

53.     Other than statements focusing on LGBTQ students and why the law is needed to prevent students from identifying as LGBTQ or hearing about LGBTQ identities and issues, the legislative record is remarkably sparse with respect to any particular examples of "classroom instruction" that H.B. 1557 was somehow meant to "fix."  Instead, proponents relied upon vague and generalized assertions about problems the law is intended to address.  For instance, when asked for "specific examples" of why H.B. 1557 was needed in response to "lesson plans," Senator Baxley, the bill's sponsor in the Senate, suggested that others "visit some of the websites."[32]

---

[32] Fla. S. Comm. on Appropriations, recording of proceedings, at 46:00-47:00 (Feb. 28, 2022 at 10:00 AM) https://www.flsenate.gov/media/VideoPlayer?EventID=1_3xdlmr8t-202202281030&Redirect=true.

54.     The intentional vagueness and discriminatory purpose of H.B. 1557 is further shown by the repeated refusal of lawmakers to adopt language that might mitigate the law's widely recognized discriminatory and chilling effects.

55.     Representative Carlos Smith introduced Amendment No. 703365 to replace "sexual orientation or gender identity" with "sexual activity."   That amendment failed.[33]

56.     Senator Jeff Brandes (a Republican) similarly proposed several amendments to replace "sexual orientation or gender identity" with "human sexuality or sexual activity."   He stated: "If the intent [of this bill] is not to marginalize anyone, let's make sure we aren't."  But his amendments failed.  Senator Baxley commented that Senator Brandes's amendments would "significantly gut" the law's intent—once again confirming that his goal was to marginalize LGBTQ people.[34]

57.     Senator Lauren Book proposed Amendment No. 755282 to clarify that "'classroom instruction' does not include instruction or discussion relating to" "family structures," "objective historical events," "bullying prevention,"

---

[33] Fla. H.R, recording of proceedings, at 03:43:30-03:47:30 (Feb. 22, 2022 at 1:00 PM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_1az3it1i-202202221300&Redirect=true.

[34] Fla. S. Comm. on Appropriations, recording of proceedings, at 01:04:00-01:07:00 (Feb. 28, 2022 at 10:00 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_3xdlmr8t-202202281030&Redirect=true.

"discussions between students," and "questions asked by students and any answer." That amendment failed.[35]

58.     Senator Randolph Bracy and Representative Marie Paule Woodson proposed Amendments Nos. 734244 and 600607, respectively, to clarify that the law "does not apply to any discussion between a student who identifies as transgender, gender nonconforming, non-binary, or otherwise LGBTQ+ and their peers." Those amendments failed.[36]

59.     Senator Tina Polsky proposed Amendment No. 290096 to clarify that "sexual orientation" "means an individual's heterosexuality, homosexuality, or bisexuality," and "gender identity" means "gender-related identity, appearance, or behavior, regardless of whether such ... is different from that traditionally associated with an individual's physiology or assigned sex at birth." That amendment failed.[37]

60.     Senator Gary Farmer proposed Amendment No. 175814 to amend a different provision of the Florida Education Code that requires health education to

---

[35] Fla. S., recording of proceedings, at 05:23:30-05:33:30 (March 7, 2022 at 10:00 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_4gaky6b9-202203071000&Redirect=true.

[36] Fla. S., recording of proceedings, at 05:33:30-05:37:00 (Mar. 7, 2022 at 10:00 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_4gaky6b9-202203071000&Redirect=true; Fla. H.R, recording of proceedings, at 03:47:30-03:54:00 (Feb. 22, 2022 at 1:00 PM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_1az3it1i-202202221300&Redirect=true.

[37] Fla. S., recording of proceedings, at 04:50:30-04:55:00 (March 7, 2022 at 10:00 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_4gaky6b9-202203071000&Redirect=true.

"teach[] the benefits of monogamous heterosexual marriage," by striking the word "heterosexual." Fla. Stat. § 1003.46(2)(a) (2021). That amendment failed.[38]

61.     Representative Fentrice Driskell introduced Amendment No. 194533 to require a court to "award reasonable attorney fees and court costs" to prevailing school districts. That amendment failed.[39]

62.     The fact that these amendments failed further demonstrates the law's plain intent. H.B. 1557 is not about prohibiting "classroom instruction" on any "sexual orientation" or "gender identity," including those of heterosexual and non-transgender people, but only about the sexual orientation and gender identity of LGBTQ people. Nor is it about ensuring that instruction is "age-appropriate or developmentally appropriate." Florida law *already* requires that health education, including instruction on "human sexuality," "[p]rovide instruction and material that is appropriate for the grade and age of the student." Fla. Stat. § 1003.46(2)(d) (2021).[40] Moreover, as the failed amendments make clear, the Legislature is perfectly capable of providing greater specificity when it wants to do so.

---

[38] Fla. S., recording of proceedings, at 04:29:00-04:33:30 (Mar. 7, 2022 at 10:00 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_4gaky6b9-202203071000&Redirect=true.

[39] Fla. H.R, recording of proceedings, at 04:23:00-04:28:30 (Feb. 22, 2022 at 1:00 PM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_6ybmwtgu-202202021430&Redirect=true.

[40] This same provision, as noted, requires that instruction on human sexuality "[t]each the benefits of monogamous heterosexual marriage," Fla. Stat. § 1003.46(2)(a) (2021), and in passing H.B. 1557 lawmakers refused to strike "heterosexual" from this text.

63.   The Legislature's ability to be clear when it wishes to do so is confirmed by another recent enactment (albeit one that suffers from distinct infirmities): the "Stop WOKE Act."[41]  There, in seeking to prohibit "instruction" in public schools on critical race theory, the Legislature listed eight specific "concepts," such as that "[a] person, by virtue of his or her race, color, national origin, or sex is inherently racist, sexist, or oppressive, whether consciously or unconsciously."[42]  Thus, when the Legislature undertakes to declare, with some level of specificity, what it doesn't want taught in schools, it obviously knows how to do so.  But here—in sharp contrast—the Legislature refused to provide any specifics about what "classroom instruction on sexual orientation or gender identity" means. Instead, it chose to enact a highly vague provision that invites arbitrary and discriminatory enforcement against LGBTQ people—exactly as the Legislature intended.

64.   The discriminatory purpose of H.B. 1557 is further apparent from a persistent pattern of efforts by the current Legislature and Governor to use the legislative process to ostracize and harm LGBTQ people.

65.   In December 2021, Governor DeSantis's administration took down a Department of Education web page that provided anti-bullying resources to help

---

[41] H.B. 7 (2022).

[42] *Id.* § 2.

promote safe school environments and address high rates of suicide after a right-wing online publication, the *Florida Capital Star*, raised questions with the Department about the inclusion of links to resources for LGBTQ young people.[43] That page was restored after the LGBTQ-related references were removed.

66.    Last year, Governor DeSantis line-item vetoed all LGBTQ-related funding from the budget, including money earmarked for mental health programming to support survivors of the Pulse night club massacre, to house homeless LGBTQ children, and for Orlando's LGBTQ community center.[44]

67.    H.B. 1557 is merely the latest in a sequence of discriminatory laws and policies.

68.    And H.B. 1557 itself reflects a longer history in which opponents of LGBTQ rights have used narratives of "depravity" and "grooming" to stigmatize LGBTQ people and try to justify altering the school environment in ways meant to discriminate against LGBTQ people.[45]

69.    During a press conference on March 28, 2022, Governor DeSantis propagated these discriminatory narratives, stating falsely that critics of H.B. 1557

---

[43] Brody Levesque, *Florida's DeSantis attacks LGBTQ youth by removing website resource*, LOS ANGELES BLADE (Dec. 6, 2021), https://www.losangelesblade.com/2021/12/06/floridas-desantis-attacks-lgbtq-youth-by-removing-website-resource/.

[44] Office of Governor Ron DeSantis, *2021 Veto List (2021)*, https://www.flgov.com/wp-content/uploads/2021/06/2021-Veto-List-Final.pdf.

[45] *See, e.g.,* Clifford Rosky, *Anti-Gay Curriculum Laws*, 117 COLUM. L. REV. 1461 (2017).

"support sexualizing kids in kindergarten" and "enabling schools to, quote, transition students to a, quote, different gender without the knowledge of the parent."[46]

## IV.    H.B. 1557 has harmed, and inevitably will continue to harm, Plaintiffs and other LGBTQ members of Florida's public schools

70.    Since H.B. 1557 became effective on July 1, 2022, it has caused numerous concrete harms to Plaintiffs and other LGBTQ students, parents, and teachers—as well as others in Florida schools who want the educational environment, including curriculum, to be inclusive of the LGBTQ community.

71.    For example, Plaintiff S.S. and the children of Plaintiffs Morrison, Houry, Casares, and Feinberg, all of whom attend school in Miami-Dade County, have been directly harmed by H.B. 1557.  Last year, the Miami-Dade School Board overwhelmingly voted for Item H-11 to recognize and observe October as LGBTQ History Month throughout the school system "as an effective means of educating and calling to action our community to work together by fighting prejudice and discrimination in their own lives and increasing visibility and raising awareness." As the board noted, "[t]eaching LGBTQ history fosters a welcoming school climate where LGBTQ students, families, and educators can live their authentic lives and be

---

[46] Ryan Dailey, *DeSantis signs bill on how schools handle sexual orientation, gender identity*, PALM COAST OBSERVER (Mar. 28, 2022), https://www.palmcoastobserver.com/article/desantis-signs-bill-on-how-schools-handle-sexual-orientation-gender-identity.

treated with dignity and respect."[47]  That item passed 7-1.  A briefing was then issued to activities directors and club sponsors, but not classroom teachers, providing various LGBTQ resources that could be used, voluntarily, but not in the classroom.[48]

72.    This year, a resolution was similarly proposed to recognize October as LGBTQ History Month.  It also would "provid[e] information and resources for teachers who teach *12th grade* social studies the opportunity to teach important landmark civil rights cases, including the Supreme Court cases of *Obergefell v. Hodges (2015)* and *Bostock v. Clayton County (2020)*" as part of the broader, existing curriculum on "important Supreme Court Landmark cases that have shaped our country's civil rights history."[49]

73.    But this year, as a direct result of H.B. 1557, that measure was rejected, 8-1.  At least four members specifically referenced H.B. 1557 as the basis for their decision to vote against the item.  Member Christi Fraga said it was "in direct violation of our parental rights bill."[50]  Member Mari Tere Rojas likewise said H-11

---

[47] Board Meeting of Oct. 20, 2021, Revised H-11, "The School Board of Miami-Dade County, Florida, recognize and observe October 2021 as Lesbian, Gay, Bisexual, Transgender, and Queer (LGBTQ) History Month," https://pdfs.dadeschools.net/Bdarch/2021/bd102021/agenda/h11rev2.pdf.

[48] Facebook, Miami-Dade County Public Schools, "Regular Board Meeting – 09/07/22" (hereinafter, "Miami-Dade Board Sept. 2022 Meeting"), at 6:15:45, https://www.facebook.com/miamischools/videos/3344757705755927/ (statement of Member Baez-Geller).

[49] Board Meeting of Sept. 7, 2022, Revised H-11, "That the School Board of Miami-Dade County, Florida, recognize and observe October 2022 as Lesbian, Gay, Bisexual, Transgender, and Queer (LGBTQ) History Month, and direct the Superintendent to explore the feasibility of proving information and resources about landmark Supreme Court cases, including Obergefell v. Hodges (2015) and Bostock v. Clayton County (2020), for 12th grade Social Studies classes," https://pdfs.dadeschools.net/Bdarch/2022/bd090722/agenda/h11rev.pdf (emphasis added).

[50] Miami-Dade Board Sept. 2022 Meeting at 6:12:30.

"does not comply with … H.B. 1557."[51]  Member Lubby Navarro stated: "We have a new law called the Parents Bill of Rights and I am following the law."[52]  Member Dr. Steve Gallon III said he was "concerned that the item as it's presented does not fully comport with the law, specifically the Parental Bill of Rights."[53]  Three others alluded to concerns about what was being taught in classrooms and compliance with the law more broadly, which can reasonably be inferred to be based on H.B. 1557,[54] especially because throughout the day-long hearing, many audience participants made clear their view that Item H-11 would violate H.B. 1557.

74.    Because of H.B. 1557 and the resulting rejection of Item H-11, Plaintiff S.S. will be denied educational resources that she (and other LGBTQ students) very much wish to have available to them.  Moreover, as a senior, she has been denied curricular content that she wants to have available to her, including the opportunity to learn about and discuss the Supreme Court's landmark LGBTQ precedents.  These developments are consistent with S.S.'s reasonable fears, prior to H.B. 1557 becoming effective, that the law would eliminate LGBTQ-related lessons and

---

[51] *Id.* at 6:26:45.

[52] *Id.* at 6:48:45.

[53] *Id.* at 7:14:14.

[54] *Id.* at 7:24:20 (Statement of Member Dorothy Bendross Mindingall) ("Our parents must know exactly what we are putting in these classrooms."); *id.* at 7:33:17 (Statement of Perla Tabares Hantman) ("The item in front of us concerns changes to instruction…. My concern is that it changes, … if not curriculum, it changes the way instruction is taught."); *id.* at 7:40:40 (Statement of Member Luisa Santos) (voting against bill without amendment, proposed by Member Baez-Geller, that would have provided resolution must be "in adherence with the Parental Rights in Education bill," because "currently as the item reads" it was not "in alignment with the laws that we have respected in all our previous items").

discussions, and that her once welcoming school environment will now be less welcoming to LGBTQ students—including by discriminatorily silencing any mention of LGBTQ people and issues—and her ability to obtain an equal education will suffer.  Upon information and belief, Plaintiff S.S. and the children of Plaintiffs Morrison, Houry, Casares, and Feinberg would take advantage of LGBTQ resources that are not being provided to students as a result of H.B. 1557's vague proscription and the rejection of Item H-11.

75.     Likewise, the children of Plaintiffs Morrison, Houry, Casares, and Feinberg will be denied equal educational resources that their parents want to be made available to them in order to foster an equal, accepting, and non-discriminatory environment and to ensure safety.

76.     After H.B. 1557 went into effect, a friend of S.S., a senior at Miami Beach Senior High School, wanted to create a website dedicated to LGBTQ resources as their community service project, which is a required part of the International Baccalaureate ("IB") curriculum.  When they proposed this to the IB coordinator, they were told they shouldn't do so because it might violate H.B. 1557. As a result, S.S.'s friend did not pursue the project they wanted to pursue and was denied educational opportunities they want to receive.  In addition to harming S.S.'s friend, this act of discrimination caused S.S. harm by demonstrating that, because of H.B. 1557, LGBTQ students are no longer equal to others and do not have the same

freedom as other students to pursue academic projects that relate to LGBTQ people or issues.  Beyond losing out on the benefit of learning from her friend's project, S.S. has been placed into an officially disfavored group of students who are treated differently than others with respect to the academic projects they can pursue.

77.    Plaintiff M.A. started a Gay-Straight Alliance ("GSA") in eighth grade because he knew how important his family's support had been for him and he couldn't imagine what it was like for others who lacked that support.  Today, M.A. is the president of his school's GSA, which typically has between 15 and 30 members and creates a welcoming space for other LGBTQ students and their allies.

78.    However, since H.B. 1557 went into effect, no teacher will serve as an advisor to the club due to fears of violating the law.  As a result, M.A. and other interested students have been barred from participating in a GSA, even though other student clubs have otherwise begun to meet in September.  M.A. and others have thus been denied equal educational opportunities, causing them to lose the ability to participate in an activity they previously enjoyed and benefitted from and very much want to receive, and which other students who wish to form clubs that do not relate to LGBTQ people or issues are free to enjoy.  In other words, because it is unclear whether H.B. 1557's ban extends to teacher participation in GSAs, M.A. and others have been denied the opportunity to participate in a GSA as they would like to do.

79.     In addition, M.A. has been told by a student in middle school that there is a policy that would require transgender or non-binary sixth grade students to wear clothing consistent with their gender assigned at birth and would prohibit dancing between persons of the same gender.  Despite inquiries to school personnel, he has not received a definitive response as to whether either such policy exists.  As a result of such policies, LGBTQ students will be denied educational opportunities and treated disparately from other students.  Thus, because it is unclear whether H.B. 1557 prohibits students from wearing clothing or engaging in conduct that is perceived to be LGBTQ in nature, LGBTQ students in Manatee County are being prohibited from engaging in speech and conduct at school that they would otherwise like to engage in.

80.     In Orange County, where Plaintiff Volmer's children attend school, teachers have been instructed not to talk about same-sex partners because "it could be deemed classroom instruction on sexual orientation or gender identity," according to district spokesman Michael Ollendorff.[55]  Teachers in K-3 classrooms were also cautioned against wearing clothing that could bring up similar discussions.[56]  As a result, Volmer's children are being denied an equal educational opportunity,

---

[55] See Lori Rozsa, *Florida Teachers Race to Remake Lessons As DeSantis Laws Take Effect*, WASH. POST (July 30, 2022), https://www.washingtonpost.com/education/2022/07/30/florida-schools-desantis-woke-indoctrination/?utm_medium=social&utm_source=twitter&utm_campaign=wp_main.

[56] *Id.*

including an opportunity to see LGBTQ teachers as equal citizens and role models, that she wants to be made available to them, in order to foster a non-discriminatory environment for all families and persons.  Thus, again, because it is unclear whether H.B. 1557 precludes teachers from talking about their same-sex partners (or transgender identity) in class or even wearing clothing that could prompt discussions related to LGBTQ persons and issues, Volmer's child (and others at her school) are being denied the opportunity to hear about such issues and identities, as they would like to do.

81.     On September 1, 2022, Pasco County, where Plaintiff Washington is a teacher and her son is a high school student, directed employees to remove safe space stickers from all schools and eliminated the existence of such spaces, citing the need to comply with H.B. 1557. [57]  Schools have long used safe spaces to create a non-discriminatory environment for LGBTQ students, allowing them to feel included, secure, and welcome in sometimes hostile school environments.  Safe space stickers signal to students that anti-LGBTQ language and harassment will not be tolerated and that LGBTQ students will be treated equally.[58]  As a result, Washington and her

---

[57] Casey Albritton, *Pasco County Schools eliminates "Safe Space" stickers*, CBS NEWS (Sept. 14, 2022), https://www.cbsnews.com/tampa/news/pasco-county-schools-eliminates-safe-space-stickers/.

[58] Duval County similarly in August directed the removal from classrooms of all safe space stickers, rainbow flags, and other LGBTQ-related items. Emily Bloch, *Equality Florida slams Duval Schools for removing 'Safe Space' rainbow stickers amid 'rebrand,'* THE FLORIDA TIMES-UNION (Aug. 15, 2022), https://www.jacksonville.com/story/news/education/2022/08/15/duval-schools-replace-safe-space-stickers-rebrand-no-rainbows/10312688002/.

son have been denied equal educational opportunities that they want to be made available in order to foster a non-discriminatory for all families and persons. Because it is unclear whether H.B. 1557 proscribes safe spaces and other insignia of LGBTQ support, Washington is being denied the opportunity to display such materials and create a more welcoming environment, as she wants to do, and her son and other students in Pasco County are being denied such spaces and symbols of support.

82.   In addition, at Washington's son's high school, school officials have removed lines referring to LGBTQ issues from two musicals because of concerns that their inclusion would violate H.B. 1557.  As a result, Washington's son (and other LGBTQ students at his school) has been denied equal educational opportunities that he wants to receive and treated disparately from other students. Because it is unclear whether H.B. 1557 prohibits references to LGBTQ persons and issues in musicals, students are being denied exposure to such references, which they would like to receive.

83.   In July 2022, Broward County, where Plaintiff Berg teaches kindergarten, transported at least 100 LGBTQ children's books to the Stonewall National Museum & Archives, shortly after it received complaints from the "Moms for Liberty" group that the books were "inappropriate," including such LGBTQ-related titles as *Stella Brings the Family*, *In Our Mothers' House*, and *My Princess*

*Boy*.  Those complaints occurred shortly after H.B. 1557 went into effect.[59]  As a result, LGBTQ (and other) students have been denied educational opportunities that Berg and many others in his school want to be made available in order to foster a non-discriminatory environment for all families and persons.  Upon information and belief, absent H.B. 1557, this discriminatory removal of LGBTQ-related books would not have occurred.  Because it is unclear whether H.B. 1557 proscribes making LGBTQ children's books available anywhere in school, students are being denied access to such books and Berg is being denied the ability to use such books and foster a more welcoming environment for LGBTQ students.

84.    Broward County is not alone in removing books due to the new law. Also after H.B. 1557 went into effect, in Seminole County, the school district pulled three books featuring gender-nonconforming protagonists from the school and asked that they be excluded from upcoming book fairs.[60]  And in Palm Beach County, a "handful" of books (according to the deputy superintendent and chief of schools)

---

[59] *See* Shira Moolten, *Broward School District Donated LGBTQ Books Ahead of New Florida Law*, SOUTH FLORIDA SUN-SENTINEL (July 8, 2022), https://www.sun-sentinel.com/news/education/fl-ne-broward-schools-lgbtq-books-20220708-mqbfatmyajgufcfix4mhdtlnwe-story.html.

[60] *See* Leslie Postal, *New Florida laws have school jittery about handling books*,  ORLANDO SENTINEL (Aug. 29, 2022), https://www.orlandosentinel.com/news/education/os-ne-florida-law-school-libraries-books-20220829-z7hfur4oinhgjfd23jaqfaxzo4-story.html.

were moved to library sections for older grades in order to comply with the law's standards for K-3 students.[61]

85.    Also in Palm Beach County, after H.B. 1557 went into effect, one teacher has altered her lessons about Sally Ride, the first American woman to fly in space, to omit the fact that Ride was a lesbian because she believed that doing so would put her at risk of violation or being deemed to have violated H.B. 1557.[62]

86.    Consistent with its intent, H.B. 1557 has resulted in changes in behavior at every level of Florida's public school systems.  While the law provides for liability to be imposed on school districts alone, school districts are seeking to structure the behavior of school personnel, students, and everyone else who comes into contact with the school system so as to avoid litigation.  And students, teachers, other school personnel, and parents, aware of the threat of discipline, are acting accordingly.

87.    Indeed, the State recently made clear that H.B. 1557 imposes drastic consequences on teachers for violations.  On October 19, 2022, the Board of Education passed a motion to amend Florida Administrative Code Rule 6A-10.081

---

[61] See Katherine Kokal, *COVID Policies to LGBTQ Law: 8 Things to Know as Palm Beach County Goes Back to School*, THE PALM BEACH POST (Aug. 1 , 2022), https://www.palmbeachpost.com/story/news/education/2022/08/01/covid-lbgtq-law-what-know-palm-beach-county-schoolyear-starts/10201919002/.

[62] See Lori Rozsa, *Florida Teachers Race to Remake Lessons As DeSantis Laws Take Effect,* WASH. POST (July 30, 2022), https://www.washingtonpost.com/education/2022/07/30/florida-schools-desantis-woke-indoctrination/?utm_medium=social&utm_source=twitter&utm_campaign=wp_main.

to specifically provide that teachers can lose their license if they violate H.B. 1557.[63]

At the hearing on that proposal, public commenters said, among other things, that "I

believe there should be disciplinary action for any educator who decides to speak on

their sexual orientation."[64]  Defendant Christie similarly stated that the proposed rule

was needed to address "children … hearing about sexuality in kindergarten."[65]  In

approving the measure, Defendant Gibson stated: "We are simply here to implement

and execute the laws the legislature our elected officials [sic] passed."[66]

88.    Finally, in implementing and executing H.B. 1557, the State has

rejected the notion that LGBTQ persons are entitled to the same protections against

discrimination as their peers.  On July 28, 2022, the Commissioner of Education

issued a memorandum directing school districts throughout the State (including

charter school governing boards) to disregard guidance by the United States

Department of Education and the Department of Agriculture ("USDA") recognizing

that, following the Supreme Court's decision in *Bostock v. Clayton County*, 140 S.

Ct. 1731 (2020), Title IX's prohibition on sex discrimination encompasses

---

[63] Fla. Dep't of State, Fla. Admin. Code & Fla. Admin. Reg. Rule 6A-10.081, Proposed 6A-10.081 (Sept. 26, 2022), https://www.flrules.org/gateway/ruleNo.asp?id=6A-10.081; The Florida Channel, 10/19/22 State Board of Education Meeting, https://thefloridachannel.org/videos/10-19-22-state-board-of-education-meeting/.

[64] *Id.* at 2:08-23 (Statement of Leslie Kirschenbaum).

[65] Leslie Postal, SOUTH FLORIDA SUN SENTINEL, *Florida teachers could lose licenses for defying 'don't say gay,' 'anti-woke' laws* (Oct. 19, 2022), https://www.sun-sentinel.com/news/education/os-ne-state-board-educator-rules-20221019-fpqkpy6hdndezi6fhanofmpq4q-story.html.

[66] Libbey Dean, News Channel 8, *Florida school board approves controversial rules in compliance with Parental Rights in Education law* (Oct. 19, 2022), https://www.wfla.com/news/politics/florida-school-board-approves-controversial-rules-in-compliance-with-parental-rights-in-education-law/.

discrimination based on sexual orientation and gender identity.[67]   Among other things, the memorandum instructs schools to disregard the USDA's instruction to prominently display an "And Justice for All" poster, which prohibits discrimination on the basis of sexual orientation and gender identity, because doing so "may create a conflict with Florida law."[68]

89.    Although the State has claimed that memorandum does not concern H.B. 1557 and is referring to Florida law that "regulates sports teams designed for women," State Defs.' Reply in Support of Mot. to Dismiss, ECF No. 105 at 8 n.4, the State has never explained how a blanket directive to disregard Title IX and a prohibition on merely displaying anti-discrimination messaging in a place where it can be readily viewed violates a state law concerning participation of transgender students in sports.   Drawing all reasonable inferences in Plaintiffs' favor, the State's broad rejection of LGBTQ anti-discrimination in public schools—issued shortly after H.B. 1557 went into effect—is causally tied to the law's proscription.   And as a result of such a policy, LGBTQ persons in public schools will be denied educational opportunities and benefits and treated disparately from others.   In other words, because it is unclear whether H.B. 1557 proscribes LGBTQ anti-discrimination in Florida's public schools, LGBTQ students, teachers, and parents

---

[67] *See* Notice of Supp. Auth. in Opp. to Defs.' Mots. to Dismiss, ECF No. 95, Ex. A (filed Aug. 2, 2022).

[68] *See also* U.S. Dep't of Agriculture, Food and Nutrition Service, "And Justice for All Posters (Guidance and Translations), https://www.fns.usda.gov/cr/and-justice-all-posters-guidance-and-translations.

are being denied such protections, which they obviously wish (and are entitled) to receive.

90.    H.B. 1557 is especially pernicious because it harms a disfavored group that already faces heightened discrimination and heightened mental and physical risks.  As President Biden recognized in condemning the law, H.B. 1557 is "designed to target and attack the kids who need support the most—LGBTQI+ students, who are already vulnerable to bullying and violence just for being themselves."[69]

91.    The Trevor Project's 2021 National Survey on LGBTQ Youth Mental Health found that 42% of LGBTQ youth seriously considered attempting suicide in the last year.  72% of respondents reported symptoms of generalized anxiety disorder in the last two years.  62% reported symptoms of major depressive disorder in the last two weeks.  And nearly half wanted counseling from mental health professionals but did not receive it.[70]

92.    With respect to Florida schools specifically, the Gay, Lesbian and Straight Education Network's ("GLSEN") 2019 National School Climate Survey

---

[69] Anthony Izaguirre, *White House denounces Florida GOP over 'Don't Say Gay' bill*, ASSOCIATED PRESS (Feb. 8, 2022), https://apnews.com/article/education-florida-73ffe14f403d95e0cc09f2804d0d9ffe.  The American Academy of Child and Adolescent Psychiatry has likewise asserted that H.B. 1557 "blocks teachers and educators from talking about LGBTQ+ issues and undermines existing protections for LGBTQ+ youth and families in schools."  American Academy of Child & Adolescent Psychiatry, *Florida's 'Don't Say Gay or Trans' Law Stigmatizes LGBTQ+ Youth and Families* (Mar. 18, 2022), https://www.aacap.org/AACAP/zLatest_News/Floridas_Dont_Say_Gay_or_Trans_Law_Stigmatizes_LGBTQ_Youth_Families.aspx.

[70] *National Survey on LGBTQ Youth Mental Health 2021*, THE TREVOR PROJECT, https://www.thetrevorproject.org/survey-2021/?section=Introduction (last visited May 24, 20022).

found that the school climate in Florida is "not safe" for most LGBTQ secondary school students, even before enactment of H.B. 1557.[71]  94% of respondents heard students use "gay" in a negative way, 80% heard other homophobic remarks (*e.g.*, "fag") or negative remarks about gender expression, and 72% heard negative remarks about transgender people.  Roughly 10% of respondents were victims of physical assault based on their sexual orientation or gender expression, and only 28% of LGBTQ students who reported incidents of verbal or physical harassment or assault said it resulted in effective staff intervention.

93.     Students also described an environment of disparate treatment, where 31% were disciplined for public displays of affection that did not result in similar action for non-LGBTQ students, and 57% of transgender students were unable to use the bathroom aligned with their gender.  Just 9% of students reported attending a school with a comprehensive anti-bullying and harassment policy that included specific protections based on sexual orientation and gender identity and expression, 15% were taught positive representations of LGBTQ people, history, or events, and only a mere 3% reported receiving LGBTQ-inclusive sex education at school.

94.     Similarly, the Youth Risk Behavior Survey—which is conducted by the CDC and managed by the Florida Department of Education to monitor priority

---

[71] *2019 State Snapshot: School Climate for LGBTQ Students in Florida*, GLSEN (2021), https://www.glsen.org/sites/default/files/2021-01/Florida-Snapshot-2019.pdf.

health-risk behaviors that contribute substantially to the leading causes of death, disability, and social problems among youth[72]—found that for the first time since sexual orientation was added in 2013, there has been an increase in LGBTQ youth seriously considering suicide.  There was no corresponding shift among heterosexual and cisgender peers.[73]

95.    Ample research in neuroscience, social science, and education has demonstrated that threats based on social identity affect the health and education of students.  Put simply, making children feel unsafe causes lasting damage to their physical health, brain development, and learning.  And that is precisely why school districts have responded with the kinds of affirming and accepting measures— measures that are essential to creating a non-discriminatory school environment and that H.B. 1557 is designed to stamp out.

96.    LGBTQ students who are taught a non-discriminatory curriculum are less likely to hear homophobic remarks or remarks about gender expressions.  They perform better academically and are more likely to pursue post-secondary education.

---

[72] On April 20, 2022, the Florida Department of Education ended its decades-long participation in the Youth Risk Behavior Survey, which means that Florida will no longer be collecting data necessary to understand and support adolescent health in Florida, including data that will determine the impact H.B. 1557 and other anti-LGBTQ laws and policies will have on Florida's youth. *See* Evie Blad, *Some States Back Away Form a Major Student Well-Being Survey. Why, and What it Could Mean*, EDUCATION WEEK (May 5, 2022), https://www.edweek.org/leadership/some-states-back-away-from-a-major-student-well-being-survey-why-and-what-it-could-mean/2022/05.

[73] *Youth Risk Behavior Survey: Data Summary & Trends Report 2009-2019*, at 98 CENTERS FOR DISEASE CONTROL AND PREVENTION (2019) https://www.cdc.gov/healthyyouth/data/yrbs/pdf/YRBSDataSummaryTrendsReport2019-508.pdf.

They are also significantly more likely to have classmates who are somewhat or very accepting of LGBTQ people.[74]

97.     Having a supportive and non-discriminatory school environment is also tied to better mental health.  LGBTQ youth who have the benefit of a trusted adult at their school have higher levels of self-esteem.[75]  And anti-bullying policies that are specifically protective of LGBTQ students are tied to reduced bullying of LGBTQ students, as well as decreases in depressive symptoms and less psychological distress; this is also true for the presence of GSAs.[76]  Moreover, respecting transgender and non-binary youth by using the  pronouns that correspond to their identities, just as teachers do for other youth, is also associated with lower rates of attempted suicide.[77]

98.     In short, LGBTQ students with inclusive educational environments receive a more equal and fair education; they are less likely to suffer discrimination, stigma, and harm; and they are more likely to report positive health outcomes.  H.B. 1557 stigmatizes and marks as "lesser" LGBTQ students—a serious injury in itself.

---

[74] Joseph G. Kosciw et al., *The 2019 National School Climate Survey: The Experiences of Lesbian, Gay, Bisexual, Transgender, and Queer Youth in Our Nation's Schools*, GLSEN (2020), at p. xxiii, https://www.glsen.org/sites/default/files/2021-04/NSCS19-FullReport-032421-Web_0.pdf.

[75] Adrienne B. Dessel et al., *The importance of teacher support: Differential impacts by gender and sexuality*, 56 J. OF ADOLESCENCE 136 (2019).

[76] Jack Day et al., *Gay-Straight Alliances, Inclusive Policy, and School Climate: LGBTQ Youths' Experiences of Social Support and Bullying*, 30 J. OF RSCH. ON ADOLESCENCE 418 (2019).

[77] *National Survey on LGBTQ Youth Mental Health 2021*, THE TREVOR PROJECT, https://www.thetrevorproject.org/survey-2021/?section=Introduction (last visited May 24, 2022).

It also creates and exacerbates environments where LGBTQ students are more likely to do poorly in school, experience bullying and harassment, and suffer higher risks to their mental and physical health.  Research has shown that in states with laws widely known as "No Promo Homo" laws, like H.B. 1557, students were more likely to hear homophobic remarks from school personnel, staff were far less effective in handling reported incidents of harassment or assault, and schools were less likely to have LGBTQ-related resources (such as comprehensive harassment policies, supportive school personnel, and Gay-Straight Alliances).[78]

## CAUSES OF ACTION

### COUNT I

**Due Process Clause of the Fourteenth Amendment
to the United States Constitution: Vagueness**
(Brought pursuant to 42 U.S.C. § 1983 by all Plaintiffs against Defendants Grady,
Gibson, Brown, Byrd, Christie, Petty, York, Broward County School Board,
School Board of Manatee County, School Board of Miami-Dade County, Orange
County School Board, and Pasco County School Board)

99.    Plaintiffs incorporate by reference paragraphs 1-15, 17, 19-23, 32-37, 53-63, and 70-98 as though fully set forth herein.

100.   A law is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  These requirements have

---

[78] Joseph G. Kosciw et al., *The 2019 National School Climate Survey: The Experiences of Lesbian, Gay, Bisexual, Transgender, and Queer Youth in Our Nation's Schools*, GLSEN (2020), https://www.glsen.org/sites/default/files/2021-04/NSCS19-FullReport-032421-Web_0.pdf.

particular weight when the law threatens to impinge on First Amendment rights.  *See Smith v. Goguen*, 415 U.S. 566, 573 (1974).

101.   H.B. 1557 is void for vagueness and thereby violates Plaintiffs' Fourteenth Amendment rights facially and as applied by Defendants.

102.   H.B. 1557 prohibits "[c]lassroom instruction" by "third parties" on "sexual orientation" and "gender identity" in K-3, and otherwise in any context where it is not "age-appropriate" and "developmentally appropriate" in accordance with unspecified "state standards" that may go into effect long after the law does. These key terms are all ambiguous and undefined.  The vagueness of these terms has a chilling effect on the behavior and speech of students, teachers, and parents, including Plaintiffs, as well as other school personnel, because they are unable to determine what the law does and does not prohibit; they are uncertain about what they are legally able to say and do in school; and they hesitate to speak or participate in school out of fear of violating the law and facing discipline.

103.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer irreparable injury, including violations of their rights under the Fourteenth Amendment to due process.

## COUNT II

### Equal Protection Clause of the Fourteenth Amendment
### to the United States Constitution: Discrimination
(Brought pursuant to 42 U.S.C. § 1983 by Plaintiffs M.A., S.S., Casares, Feinberg, Morrison, Houry, Berg, and Washington against Defendants Grady, Gibson, Brown, Byrd, Christie, Petty, York, Broward County School Board, School Board of Manatee County, School Board of Miami-Dade County, and Pasco County School Board)

104.   Plaintiffs incorporate by reference paragraphs 1-12, 14-15, 17, 19-21, and 23-98 as though fully set forth herein.

105.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall … deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.

106.   Defendants have deprived Plaintiffs of the rights, privileges, or immunities secured by the Equal Protection Clause because Defendants, without sufficient justification, have treated Plaintiffs differently from other similarly situated persons based on their sex, sexual orientation, gender, gender identity, and transgender status.

107.   H.B. 1557 was enacted with a discriminatory purpose and results in discriminatory and disparate treatment of LGBTQ people, and thus violates the Fourteenth Amendment rights of Plaintiffs facially and as applied by Defendants.

108.   H.B. 1557 disparately harms LGBTQ students, teachers, and parents, including Plaintiffs, and denies them educational opportunities and the right to participate in education on the basis of their LGBTQ orientation or identity.

109.   In addition, as to Plaintiffs Casares and Feinberg, Morrison and Houry, and Berg, H.B. 1557 violates the equal protection right to marry on the "same terms and conditions as opposite-sex couples." *Obergefell*, 576 U.S. at 676; *see also id.* at 667 ("A third basis for protecting the right to marry is that it safeguards children and families and thus draws meaning from related rights of childrearing, procreation, and education."); *Pavan v. Smith*, 137 S. Ct. 2075, 2078 (2017).  The purpose and effect of H.B. 1557 is that LGBTQ married couples will be treated differently and worse than non-LGBTQ married couples in important aspects of their interactions with Florida's public schools, and that the children of LGBTQ married couples will similarly suffer discrimination and disadvantage in Florida's public schools as compared to all other children.

110.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs M.A., S.S., Casares, Feinberg, Morrison, Houry, Berg, and the children of Casares, Feinberg, Morrison, Houry, and Washington have already suffered and will continue to suffer irreparable injury, including violations of their Fourteenth Amendment rights to equal protection of the laws.

## COUNT III

**Equal Protection Clause of the Fourteenth Amendment
to the United States Constitution: Discriminatory Enforcement**
(Brought pursuant to 42 U.S.C. § 1983 by Plaintiffs M.A., S.S., Casares, Feinberg,
Morrison, Houry, Berg, and Washington against Defendants Grady, Gibson,
Brown, Byrd, Christie, Petty, York, Broward County School Board, School Board
of Manatee County, School Board of Miami-Dade County, and Pasco County
School Board)

111.   Plaintiffs incorporate by reference paragraphs 1-12, 14-15, 17, 19-21,

and 23-98 as though fully set forth herein.

112.   The Equal Protection Clause of the Fourteenth Amendment prohibits

state actors from engaging in discriminatory or selective enforcement of facially

neutral laws.

113.   Defendants have deprived Plaintiffs M.A., S.S., Casares, Feinberg,

Morrison, Houry, Berg, and the children of Casares, Feinberg, Morrison, Houry, and

Washington of the rights, privileges, or immunities secured by the Equal Protection

Clause by selectively enforcing H.B. 1557 against them based a discriminatory

purpose, while failing to enforce H.B. 1557 against other similarly situated

individuals.

114.   Specifically, although H.B. 1557 purports to be a neutral law restricting

classroom instruction on all sexual orientations and gender identities, Defendants

have deliberately and unlawfully applied H.B. 1557 solely to restrict discussion of

and instruction on LGBTQ sexual orientations, gender identities, and issues and

solely to prohibit LGBTQ-related activities, while failing to restrict discussion and instruction of non-LGBTQ sexual orientations, gender identities, and issues, and failing to prohibit non-LGBTQ-related activities.

115.   Defendants have selectively applied H.B. 1557 against Plaintiffs M.A., S.S., Casares, Feinberg, Morrison, Houry, Berg, and the children of Casares, Feinberg, Morrison, Houry, and Washington based on a discriminatory purpose: not in spite of, but expressly because they are LGBTQ, wish to discuss LGBTQ-related issues, or wish to engage in LGBTQ-related activities. Indeed, such discriminatory enforcement was the Legislature's intent in enacting H.B. 1557, as reflected in numerous statements in the legislative record.

116.   By contrast, individuals who are similarly situated to such Plaintiffs have been treated differently.  Despite being similar in all material respects, they have not been subjected to the same discriminatory treatment.

117.   For example, due to discriminatory and selective enforcement of H.B. 1557, students have been unable to participate in LGBTQ-related student clubs; books featuring LGBTQ-related protagonists have been removed from school libraries; students have been discouraged from pursuing LGBTQ-related research projects; and students have been prohibited from dancing with others of the same gender.  At the same time, Defendants have taken no such action to bar non-LGBTQ-related student clubs, remove non-LGBTQ-related books from libraries, discourage

non-LGBTQ-related research projects, or prohibit students from dancing with others of a different gender.

118.   As a direct and proximate result of Defendants' unlawful discriminatory and selective enforcement of H.B. 1557, Plaintiffs M.A., S.S., Casares, Feinberg, Morrison, Houry, Berg, and the children of Casares, Feinberg, Morrison, Houry, and Washington have already suffered and will continue to suffer irreparable injury, including violations of their Fourteenth Amendment rights to equal protection of the laws.

## COUNT IV

**First Amendment to the United States Constitution:
Right to Receive Information**
(Brought pursuant to 42 U.S.C. § 1983 by Plaintiffs M.A., S.S., Morrison, Houry, Casares, Feinberg, Volmer, and Washington against Defendants Grady, Gibson, Brown, Byrd, Christie, Petty, York, School Board of Manatee County, School Board of Miami-Dade County, Orange County, and Pasco County School Board)

119.   Plaintiffs incorporate by reference paragraphs 1-13, 15, 17, and 20-98 as though fully set forth herein.

120.   The First Amendment to the United States Constitution provides: "Congress shall make no law … abridging the freedom of speech."   U.S. CONST., amend. I.   The First Amendment applies to the State of Florida pursuant to the incorporation doctrine of the Fourteenth Amendment.

121.   The First Amendment protects "the right to receive information and ideas."   *Pico*, 457 U.S. at 867.   Laws regarding school curricula and instruction

violate students' First Amendment rights to receive information and ideas where they are not "reasonably related to legitimate pedagogical concerns," *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988), or where officials exercise their discretion over curricular decisions "in a narrowly partisan or political manner," *Pico*, 457 U.S. at 870.

122.   H.B. 1557 violates the First Amendment right to receive information and ideas of Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and Washington facially and as applied by Defendants.   More specifically, the law violates their right to receive and debate information and ideas concerning the sexual orientation and gender identity of LGBTQ people, even when such information serves essential pedagogical purposes.

123.   H.B. 1557's restrictions on students' rights to receive information and ideas concerning sexual orientation and gender identity are unrelated to legitimate pedagogical concerns, and serve no other legitimate state purpose.   Instead, H.B. 1557 is rooted in animus against LGBTQ individuals, as demonstrated by the public record and by its enforcement to bar only discussion and recognition of LGBTQ people and issues, while imposing no restrictions on the discussion of heterosexual and non-transgender people and issues.   H.B. 1557 is also the result of partisan or political decision-making.

124.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and Washington have suffered and will continue to suffer irreparable injury, including violations of their First Amendment rights to receive information and ideas.

## COUNT V

**First Amendment to the United States Constitution:**
**Right to Freedom of Expression**
(Brought pursuant to 42 U.S.C. § 1983 by Plaintiffs M.A., S.S., Morrison, Houry, Casares, Feinberg, Volmer, and Washington against Defendants Grady, Gibson, Brown, Byrd, Christie, Petty, York, School Board of Manatee County, School Board of Miami-Dade County, Orange County, and Pasco County School Board)

125.   Plaintiffs incorporate by reference paragraphs 1-13, 15, 17, and 20-98 and 28-109 as though fully set forth herein.

126.   "[S]tudents do not 'shed their constitutional rights of freedom to speech or expression,' even 'at the school house gate.'" *Mahanoy*, 141 S. Ct. at 2044 (quoting *Tinker*, 393 U.S. at 506).  Thus, student speech is presumptively protected unless it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Id.* at 2045 (quoting *Tinker*, 393 U.S. at 513).

127.   Likewise, laws regulating students' speech violate their First Amendment rights where such laws are not "reasonably related to legitimate pedagogical concerns." *Kuhlmeier*, 484 U.S at 273.

128.   H.B. 1557 violates the First Amendment right to freedom of expression of students, including Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and Washington.  More specifically, the law restricts Plaintiffs' ability to discuss topics related to the sexual orientation and gender identity of LGBTQ people in class and related settings, and also restricts their ability to self-identify as LGBTQ.

129.   H.B. 1557's restrictions on students' rights to free expression concerning the sexual orientation and gender identity of LGBTQ people are not justified by preventing disruption to the school environment, are unrelated to legitimate pedagogical concerns, and serve no other legitimate state purposes. Instead, the law is rooted in animus against LGBTQ individuals, as demonstrated by the public record and by its enforcement to bar only discussion and recognition of LGBTQ people and issues, while imposing no restrictions on the discussion of heterosexual and non-transgender people and issues.

130.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and Washington have suffered and will continue to suffer irreparable injury, including violations of their First Amendment right to freedom of expression.

## COUNT VI

### First Amendment to the United States Constitution: Overbreadth

(Brought pursuant to 42 U.S.C. § 1983 by Plaintiffs M.A., S.S., Morrison, Houry, Casares, Feinberg, Volmer, and Washington against Defendants Grady, Gibson, Brown, Byrd, Christie, Petty, York, School Board of Manatee County, School Board of Miami-Dade County, Orange County, and Pasco County School Board)

131.   Plaintiffs incorporate by reference paragraphs 1-13, 15, 17, and 20-98 and 28-109 as though fully set forth herein.

132.   A "law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

133.   H.B. 1557 is overbroad in violation of the First Amendment rights of Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and Washington facially and as applied by Defendants, because even to the extent that the law could be interpreted as having any legitimate pedagogical purpose, "a substantial number of its applications are unconstitutional." *Id.*  More specifically, even if H.B. 1557 has some legitimate pedagogical purpose, it is not narrowly tailored to that purpose but rather will be applied in a manner that broadly infringes Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and Washington's First Amendment rights to receive information and ideas, and their right to freedom of expression.

134.    H.B. 1557's overbroad restrictions are not justified by preventing disruption to the school environment, are unrelated to legitimate pedagogical concerns, and serve no other legitimate state purposes.  Instead, the law is rooted in animus against LGBTQ individuals, as demonstrated by the public record, as well as by partisan or political reasons.

135.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and Washington have suffered and will continue to suffer irreparable injury, including violations of their First Amendment rights.

## COUNT VII

**Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688: Discrimination Based on Sex**
(By Plaintiffs M.A., S.S., Morrison, Houry, Casares, Feinberg, Volmer, and Washington against Defendants State Board of Education and Florida Department of Education)

136.    Plaintiffs incorporate by reference paragraphs 1-13, 15-16, 18, and 24-98 as though fully set forth herein.

137.    Defendants State Board of Education and Florida Department of Education are recipients of federal financial assistance.

138.    The acts and omissions of Defendants have violated Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and

Washington's rights under Title IX by discriminating against them on the basis of sex, which includes sexual orientation and gender identity.

139.   More specifically, H.B. 1557 results in the disparate treatment of students in Florida's public education system on the basis of sex, because they are excluded from the participation in, denied the benefits of, and/or discriminated in education.  By implementing and enforcing H.B. 1557, Defendants State Board of Education and Florida Department of Education are intentionally and/or with deliberate indifference engaging in such discrimination.

140.   Indeed, the State has explicitly instructed Florida schools to disregard federal regulatory guidance that Title IX's prohibition on discrimination on the basis of "sex" includes discrimination on the basis of sexual orientation and gender identity.  That instruction, which was given not one month after H.B. 1557 went into effect, reflects a direct challenge to Title IX's anti-discrimination provision and is preempted by federal law.  *See* 34 C.F.R. § 106.6(h).

141.   As a direct and proximate result of Defendants State Board of Education and Florida Department of Education's unlawful conduct, Plaintiffs M.A., S.S., and the children of Morrison, Houry, Casares, Feinberg, Volmer, and Washington have suffered and will continue to suffer irreparable injury, including violations of their First Amendment rights.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and request an award of the following relief:

142.    A declaratory judgment that H.B. 1557 and the actions described herein deprive Plaintiffs of their rights under the United States Constitution, including the First and Fourteenth Amendments thereto, and applicable federal statutory law, including 42 U.S.C. § 1983;

143.    Permanent injunctive relief enjoining Defendants from implementing and enforcing H.B. 1557 in violation of the rights guaranteed to Plaintiffs by the United States Constitution and applicable federal statutory law;

144.    An award of Plaintiffs' costs of suit and reasonable attorneys' fees, expenses, and costs under 42 U.S.C. § 1988 and other applicable laws; and

145.    Such other relief as the Court deems necessary, just, and proper.

Dated: New York, New York       Respectfully submitted,
      October 27, 2022

Roberta A. Kaplan (NY #2507093)*
John C. Quinn (NY #4965000)*
Kate L. Doniger (NY #5128251)*
D. Brandon Trice (NY #5140017)*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel.: (212) 763-0883
rkaplan@kaplanhecker.com

Joshua Matz (DC #1045064)*
Valerie L. Hletko (DC #485610)*
KAPLAN HECKER & FINK LLP
1050 K Street, NW, Suite 1040
Washington, D.C. 20001
Tel: (212) 763-0883
jmatz@kaplanhecker.com

Christopher Stoll (CA #179046)*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Tel.: (415) 392-6257
CStoll@nclrights.org

Michael W. Weaver (IL #6291021)*
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Tel.: (312) 984-5820
mweaver@mwe.com

Joseph M. Wasserkrug (FL #112274)
MCDERMOTT WILL & EMERY LLP
333 SE 2nd Avenue, Suite 4500

Miami, Florida 33131
jwasserkrug@wme.com

Elizabeth F. Schwartz (FL #114855)
ELIZABETH F. SCHWARTZ, P.A.
3050 Biscayne Blvd., Suite 600
Miami, Florida 33137
liz@elizabethschwartz.com

*Attorneys for Plaintiffs*

*\* admitted pro hac vice*