IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

M.A., et al.,

     Plaintiffs,

v.                                                  Case No. 4:22-cv-134-AW-MJF

FLORIDA STATE BOARD OF
EDUCATION, et al.,

     Defendants.

_____/

## ORDER OF DISMISSAL

The issue in this case is whether a recently enacted provision of Florida law violates federal law. The provision specifies that "[c]lassroom instruction by school personnel or third parties on sexual orientation or gender identity may not occur in kindergarten through grade 3 or in a manner that is not age-appropriate or developmentally appropriate for students in accordance with state standards." Fla. Stat. § 1001.42(8)(c)3 (the "Provision"). This is a single provision of a broader law "relating to parental rights in education." Ch. 2022-22, Laws of Fla.

A group of students, parents, teachers, and organizations sued. In their view, the Provision violates the United States Constitution as well as Title IX of the Education Amendments Act of 1972. Defendants were the Governor, the Commissioner of Education, the Florida Department of Education, the Florida State Board of Education, Board of Education members, and several individual school

districts. ECF No. 1. (Plaintiffs later abandoned their claim against the Governor. ECF No. 92.) The Defendants—all but the Miami-Dade County School Board— moved to dismiss.

The court granted the motions to dismiss. ECF No. 120. In the earlier order, I concluded that the organizational plaintiffs had not alleged facts to support standing; that the Commissioner of Education had Eleventh Amendment immunity; that the Board of Education members did not; that venue was proper; and that the complaint was a shotgun pleading. *Id.* As to standing, I concluded that "[t]he principal problem is that most of Plaintiffs' alleged harm is not plausibly tied to the law's *enforcement* so much as the law's very *existence*." *Id.* at 3. The Plaintiffs had not alleged facts to show that the case fell within a federal court's limited jurisdiction, meaning the complaint had to be dismissed.

Plaintiffs then filed a Second Amended Complaint. ECF No. 123 (SAC). They no longer allege harms that predated the law's enactment. They no longer seek monetary damages. And they no longer include advocacy organizations among the Plaintiffs. *Id.* Their essential claims, though, remain the same: They still contend that the Provision violates the United States Constitution and Title IX.

The Defendants—again all but the Miami-Dade County School Board— moved to dismiss. ECF Nos. 130, 131, 133, 134, 137. They argue that, like before, Plaintiffs have not shown standing, and they separately argue that Plaintiffs' claims

fail on the merits. Plaintiffs filed a comprehensive response, and some Defendants filed replies. ECF Nos. 144, 149-152. No party requested oral argument, *cf.* N.D. Fla. Loc. R. 7.1(K), and I have determined that no hearing is necessary.

Having carefully considered the parties' arguments, I conclude that Plaintiffs still have not alleged sufficient facts to show standing. Dismissal is therefore again required. *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) ("Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting.").[1]

## I.

The new complaint adds new facts. But at its core, it suffers the same defect as the earlier iteration. It seeks to vindicate Plaintiffs' strong disagreement with the law and the sentiment they perceive motivated it, *cf.* ECF No. 144 at 15 (arguing that "[w]ith H.B. 1557, Florida lawmakers . . . relegated LGBTQ people to second-class citizenship"); *id.* at 15-16 (contending that "the 'core belief systems and values' that gave rise to H.B. 1557 were beliefs about the rightness of heterosexual and non-transgender identity—and beliefs about the wrongness or strangeness of

---

[1] That the Miami-Dade County School Board answered and did not challenge jurisdiction does not change this. *Cf.* ECF No. 144 at 25 n.7. "[A] federal court has an independent obligation to review its authority to hear a case before it proceeds to the merits." *Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1400-01 (11th Cir. 2000).

LGBTQ identity"). But these interests, without more, do not implicate Article III jurisdiction. "[I]t is not enough that the party invoking the power of the court have a keen interest in the issue." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). As before, the Plaintiffs had the burden to establish standing, "an essential and unchanging part of the case-or-controversy requirement." *Lewis*, 944 F.3d at 1296 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

To invoke the court's jurisdiction, Plaintiffs had to allege facts showing they suffered "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan*, 504 U.S. at 560-61). Because Plaintiffs seek only prospective relief, the injury they must allege is an imminent future harm. *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006).

Plaintiffs contend they "have suffered First Amendment injuries through the deprivation of educational information and opportunities, and (separately) through the chilling of speech." ECF No. 144 at 28. They further contend they have "alleged a bevy of specific injuries resulting from H.B. 1557's vagueness, as well as its discriminatory motivation and application." *Id.* But despite some new factual allegations, the Second Amended Complaint still does not allege facts showing any concrete future harm that is fairly traceable to the law's enforcement and redressable by an injunction prohibiting that enforcement. Therefore, even with newly alleged

facts, Plaintiffs still fall short of establishing jurisdiction. *See Hollingsworth*, 570 U.S. at 707 ("Article III standing is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." (cleaned up)).

## II.

### The Removal of "LGBTQ Children's Books"

First, Plaintiffs contend that students at Broward, Seminole, and Palm Beach County schools were "deprived of books that feature or discuss LGBTQ people." ECF No. 144 at 29 (citing SAC ¶¶ 83-84). But that is not a harm that any student Plaintiff suffered (or will suffer) because no Plaintiffs attend schools in those counties. Indeed, nothing in the complaint specifies which Plaintiff claims injury from the book removals.[2]

Plaintiffs do allege that Berg teaches Kindergarten in Broward County, but they do not allege facts showing that moving the books harmed Berg. They allege that he wished students had access to the books, SAC ¶ 83, but his wish for others is

---

[2] Similarly, Plaintiffs' allegation that an unnamed Palm Beach County teacher changed her lessons about Sally Ride to omit her sexual orientation, SAC ¶ 85, cannot support standing because no Plaintiff is a Palm Beach County teacher or student. The allegation is based on a newspaper article and not any Plaintiff's experience. *See id.* (citing Lori Rozsa, *Florida Teachers Race to Remake Lessons As DeSantis Laws Take Effect*, WASH. POST (July 30, 2022), https://www.washingtonpost.com/education/2022/07/30/florida-schools-desantis-woke-indoctrination/.

insufficient to show a constitutional injury. So while Plaintiffs undoubtedly disagree with the policy choice to remove certain books from certain libraries, "a generalized grievance, 'no matter how sincere,' cannot support standing." *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (quoting *Hollingsworth*, 570 U.S. at 706).

Moreover, Plaintiffs have not alleged facts to show that the books' removal was traceable to the law's enforcement or redressable by an injunction precluding that enforcement. Plaintiffs have not shown traceability because they have not shown a "plausible causal chain" between any enforcement of the law and the books' removal (or continued unavailability). *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019). The removal may be linked to a defendant (the school board responsible), but Plaintiffs allege no facts to show it is linked to the board's challenged action: its enforcing the Provision's "classroom instruction" restriction.

Similarly, Plaintiffs have not alleged facts showing that an injunction precluding the Provision's enforcement would lead to the books' return. *Cf. Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021) (noting that traceability and redressability are intertwined issues that "often travel together"); *cf. also Lujan*, 504 U.S. at 562 (noting that "[w]hen . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed" and that "[i]n that

circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well"); *Warth v. Seldin*, 422 U.S. 490, 508 (1975) (holding that a plaintiff must plead "*specific, concrete* facts demonstrating that . . . he personally would benefit in a tangible way from the court's intervention" (emphasis added)).

Plaintiffs' allegation that "[u]pon information and belief, absent H.B. 1557, this discriminatory removal of LGBTQ-related books would not have occurred," SAC ¶ 83, is conclusory and thus not entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). But even accepting that without the law's *existence* the books would have remained, that would not show that without the law's *enforcement* they would have. As the earlier order noted, to the extent Plaintiffs challenge the law's very existence, no injunction can undo that.[3]

---

[3] The earlier order explained it this way:

"[F]ederal courts have no authority to erase a duly enacted law from the statute books." *Jacobson*, 974 F.3d at 1255 (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018)). "Our power is more limited: we may 'enjoin executive officials from taking steps to enforce a statute.'" *Id.* (quoting Mitchell, *supra*, at 936). So Plaintiffs' allegations must tie their alleged harm to Defendants' enforcement of the law.

ECF No. 120 at 4.

**The Removal of Lines Addressing "LGBTQ Issues" from School Musicals**

Next, Plaintiffs point to their allegation that some school musicals were "stripped of any LGBTQ references." ECF No. 144 at 29 (citing SAC ¶ 82). According to the complaint, school officials removed the lines from two musicals "because of concerns that their inclusion would violate H.B. 1557." SAC ¶ 82.

This allegation is insufficient for several reasons. First, it lacks sufficient detail. It does not explain, for example, what "LGBTQ references" were removed or what events or "concern" led to their removal. Second, the son who Plaintiffs allege "has been denied equal educational opportunities that he wants to receive and treated disparately from other students," *id.*, is not a Plaintiff, and his mother does not purport to sue on his behalf. Third, there is no allegation that the son attended musicals in the past or intends to in the future—or even that there are ongoing plays with lines removed. Again, because they seek prospective relief only, Plaintiffs must allege facts to so imminent *future* injury. Fourth—and most importantly—the Provision does not proscribe lines in extracurricular plays. It addresses only "classroom instruction." So even if there were a concrete and particularized injury, there would be traceability and redressability problems.[4]

_____

[4] The parties dispute whether the law has any application in grades four and above before state standards are implemented. *Compare* ECF No. 134 at 21-22 *with* ECF No. 144 at 37. If the Provision has no application in grades four and above, this would provide an additional reason why the high-school musical issues do not confer

**The Miami-Dade County Resolution Regarding LGBTQ History Month**

Plaintiffs also point to an allegation the Miami-Dade County School Board elected not to adopt a resolution recognizing LGBTQ History Month. ECF No. 144 at 29-30 (citing SAC ¶¶ 71-73). According to the complaint, the school board used to "recognize and observe October as LGBTQ History Month throughout the school system 'as an effective means of educating and calling to action our community to work together by fighting prejudice and discrimination in their own lives and increasing visibility and raising awareness.'" SAC ¶ 71. But, the complaint alleges, this year the school board chose not to, causing harm to Plaintiff S.S. and other Miami-Dade students. *Id.* ¶¶ 73-74. And "[a]t least four [board] members specifically referenced H.B. 1557 as the basis for their decision to vote against the item." *Id.* ¶ 73.

These allegations do not support standing. For one, the school board's not adopting a favored resolution does not create a particularized injury; it shows at most a generalized grievance shared by all who would have preferred the opposite outcome. *Cf. Raffensperger*, 981 F.3d at 1314. Regardless, there is a redressability problem because there are insufficient facts to show a nonspeculative likelihood that the school board would adopt such a resolution if the court enjoined it from enforcing

---

standing. But I need not resolve this question because either way Plaintiffs have not alleged sufficient facts to show standing.

the challenged law.[5] *See Lujan*, 504 U.S. at 561 (holding that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (marks omitted)). As with other asserted harms, redressability would depend "on the unfettered choices made by independent actors . . . whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.)).

### One Plaintiff's Friend's School Project

The next asserted harm is that "S.S. and others in her class have been deprived of speech they would like to hear from her classmate." ECF No. 144 at 30 (citing SAC ¶ 76). The complaint alleges that S.S.'s friend (a nonparty) wanted to create a website dedicated to LGBTQ issues for her I.B. project. SAC ¶ 76. The I.B. coordinator told the friend not to, because of H.B. 1557. *Id.*

---

[5] The problem is not avoided by the allegation that "[u]pon information and belief, Plaintiff S.S. [and others] would take advantage of LGBTQ resources that are not being provided to students as a result of H.B. 1557's vague proscription and the rejection of Item H-11." SAC ¶ 74. Even assuming "information and belief" allegations are sufficient to confer standing, the vague reference to "tak[ing] advantage of LGBTQ resources" is insufficient. And the allegation that the proposed resolution would have provided "information and resources" to support twelfth-grade social-studies lessons about *Obergefell* and *Bostock*, *id.* ¶ 72, does not support any conclusion that absent the resolution, students would be denied those lessons. Nor is there any allegation that any Plaintiff is a student in any affected twelfth-grade class. Again, vague and general allegations do not suffice.

Any harm to the friend is insufficient because the friend is not a party. Plaintiffs do not seem to contend otherwise. But, they allege, this harmed S.S. too because it demonstrated that "LGBTQ students are no longer equal to others and do not have the same freedom as other students to pursue academic projects that relate to LGBTQ people or issues." *Id.* But as with so many other allegations, this is not a "concrete and particularized" injury, *see Trichell v. Midland Credit Mgmt., Inc*., 964 F.3d 990, 996-97 (11th Cir. 2020); it is a disagreement with the sentiment Plaintiffs attribute to the law.

To the extent Plaintiffs allege a future harm from S.S.'s missing out on content the would-be website might have shown, the allegation is too vague to show a concrete injury. It separately suffers causation and redressability problems: there are no facts showing that any threatened or actual enforcement of the Provision precluded the website's development, and there is no nonspeculative showing that an injunction would cause the friend to later pursue the website's development.

### The Pasco County Safe-Space Stickers

Plaintiffs next allege that in Pasco County, "school administrators have directed employees to remove safe space stickers based on their belief that such demonstrations of support and places of refuge for the LGBTQ community violate H.B. 1557." ECF No. 144 at 20 (citing SAC ¶ 81). They specifically allege that

11

"[s]afe space stickers signal to students that anti-LGBTQ language and harassment will not be tolerated and that LGBTQ students will be treated equally." SAC ¶ 81.

Although the allegation about the sticker mostly reads as a generalized grievance and not a particularized harm, Plaintiffs do allege that Plaintiff Washington—a Pasco County teacher—wishes to display a sticker and is precluded from doing so. *Id.* This is sufficient to state an injury. But Plaintiffs have not pleaded facts to show traceability or redressability, so there is still no standing.

Plaintiffs allege that in "direct[ing] employees to remove safe space stickers from all schools," Pasco County "cit[ed] the need to comply with H.B. 1557." *Id.* They cite a newspaper article that says the Pasco County Superintendent "sent an email, stating the stickers create a concern" related to H.B. 1557. Casey Albritton, *Pasco County Schools eliminates "Safe Space" stickers*, CBS NEWS (Sept. 14, 2022), https://www.cbsnews.com/tampa/news/pasco-county-schools-eliminates-safe-space-stickers/; *see also* SAC ¶ 81 n.57 (citing the article). But neither the article nor any allegation in the complaint supports a conclusion that the Provision led to the sticker policy.

As explained above, H.B. 1577 is a broader education measure "relating to parental rights in education." Ch. 2022-22, 2022 Laws of Fla. (H.B. 1557). Plaintiffs have challenged only one provision: the one providing that "[c]lassroom instruction by school personnel or third parties on sexual orientation or gender identity may not

occur in kindergarten through grade 3 or in a manner that is not age-appropriate or developmentally appropriate for students in accordance with state standards." Fla. Stat. § 1001.42(8)(c)3; *see also* SAC ¶ 33.[6] Plaintiffs' cited newspaper article indicates a different provision led to the sticker policy. It reports that the concern with the stickers was "that a student might mistakenly believe a conversation in a safe space would not be brought to their parent. But not contacting a parent could be illegal under the new Parental Rights in Education Law . . . ." Albritton, *supra*. In fact, the same legislative enactment included a separate provision—not challenged here—that promoted parental notification regarding student emotional issues or well-being. *See* Ch. 2022-22, Laws of Fla. (adding § 1001.42(8)(c)2, Fla. Stat., which provides that "[s]chool district personnel may not discourage or prohibit parental notification of and involvement in critical decisions affecting a student's mental, emotional, or physical health or well-being").

Thus, Plaintiffs' allegations show that the sticker policy flowed from a different provision—not the one at issue in this case. *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511, 513 (11th Cir. 2019) (noting that when evaluating a complaint's legal sufficiency, courts consider documents incorporated by reference); *cf. also*

_____

[6] Plaintiffs quote § 1001.42(8)(c)3 as H.B. 1557 "[i]n relevant part," SAC ¶ 33, and they never identify any other portion of H.B. 1557 that they challenge—either in their complaint or their response to the motions to dismiss.

*Lewis*, 944 F.3d at 1298 n.7 ("[W]hen a complaint quotes part of a document . . . the full text is incorporated into the amended complaint by reference and is thus properly considered in deciding a Rule 12 motion." (marks omitted)).

Regardless, setting the article aside, Plaintiffs have not alleged facts showing that an injunction against the provision they challenge would be reasonably likely to lead to a change in Pasco County's sticker policy. They have not alleged facts to show a likelihood (rather than mere speculation) that enjoining a law regulating "classroom instruction" would cause Pasco County to change a policy addressing something other than classroom instruction. The safe-sticker issue, in short, does not establish standing.

**The Direction Not to Discuss Same-Sex Partners or Wear Certain Clothes**

Plaintiffs also allege that Orange County teachers "have been instructed not to talk about same-sex partners because 'it could be deemed classroom instruction on sexual orientation or gender identity.'" SAC ¶ 80; *see also* ECF No. 144. Citing another newspaper article, the complaint alleges that "[t]eachers in K-3 classrooms were also cautioned against wearing clothing that could bring up similar discussions." SAC ¶ 80 (citing Lori Rozsa, *Florida Teachers Race to Remake Lessons As DeSantis Laws Take Effect*, Wash. Post (July 30, 2022), https://www.washingtonpost.com/education/2022/07/30/florida-schools-desantis-

woke-indoctrination/). But the general allegations about what some are told in the school system does not establish standing for any individual Plaintiff.

There is no allegation that any plaintiff is unable to talk about same-sex partners or wear particular clothing. Indeed, no Plaintiff is an Orange County student, and although one Plaintiff has children in that school system, *see* SAC ¶ 13, there is no specific allegation that those children were affected. There is no allegation, for example, that those children had teachers who dressed differently because of the law or who restricted discussions about their same-sex partners (if they had any). What is left is the conclusory allegation that "Volmer's children are being denied an equal educational opportunity, including an opportunity to see LGBTQ teachers as equal citizens and role models, that she wants to be made available to them, in order to foster a non-discriminatory environment for all families and persons." SAC ¶ 80.

Finally, and separately, the same traceability and redressability problems discussed above are present here. Plaintiffs have not alleged facts to show that if nonparty teachers choose not to "wear[] clothing that could prompt discussions related to LGBTQ persons and issues," *id.*,[7] that the law's *enforcement* was to

---

[7] Plaintiffs do not provide examples or otherwise allege facts showing what type of clothing this is.

blame.[8] *Cf. Lujan*, 504 at 562 (noting that "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish").

### The Difficulty Finding a Faculty Sponsor for a Gay-Straight Alliance

Plaintiffs next look to paragraphs 77 and 78. ECF No. 144 at 20-21, 30-31 (citing SAC ¶¶ 77-78). They allege that Plaintiff M.A. started a Gay-Straight Alliance and became its president. SAC ¶ 77. But, Plaintiffs allege, "since H.B. 1557 went into effect, no teacher will serve as an advisor to the club." *Id.* ¶ 78. Assuming that the unavailability of an advisor is a cognizable injury, Plaintiffs are still left with an obvious traceability problem: the law plainly does not preclude a teacher's service as an extracurricular club advisor. Redressability is a problem too. Plaintiffs have not alleged facts to show it likely that an injunction against the Manatee County

---

[8] Orange County contends that these are not, in fact, its policies. It attached to its motion an August 1, 2022 memorandum its legal office provided to all school principals. *See* ECF No. 133 at 4, 8; ECF No. 133-1. The memorandum, titled "House Bill 1557 Guidance" provides that "the mere wearing of an 'Ally' lanyard or rainbow symbols on clothing or in classrooms, or the display of 'safe space' stickers in the classroom are not 'classroom instruction'" for purposes of H.B. 1557. ECF No. 133-1 at 3. In Orange County's view, this memorandum shows that the Orange County Plaintiff's "fears about the impact of the law will not occur at all." ECF No. 133 at 18. Plaintiffs argue that I should not consider the memorandum at this stage, ECF No. 144 at 21 n.3, and I agree. Although Orange County correctly notes that courts can consider documents attached to motions to dismiss if they are central to plaintiffs' claims and undisputed, ECF No. 133 at 5; *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), the memorandum is not at all central to Plaintiffs' claims. I therefore have not considered it.

School Board (or any other Defendant) would yield a willing sponsor.[9] Finally, although this review is limited to the complaint's allegations, I note that Plaintiffs acknowledge that M.A. has since found an advisor, notwithstanding the law. ECF No. 144 at 21 n.2 ("M.A. and other members of his GSA were eventually able to obtain a teacher advisor and began attending meetings on November 17, 2022.").

### A Student's Report About Dance or Attire Policies

Next, the allegation that "M.A. has been told by a student in middle school that there is a policy that would require transgender or non-binary sixth grade students to wear clothing consistent with their gender assigned at birth and would prohibit dancing between persons of the same gender," SAC ¶ 79, cannot confer standing. First, M.A. is not injured by another student's reports about what policies might be. And as Plaintiffs acknowledge, they are unaware that there is any such policy. *Id.*

\*      \*      \*

Plaintiffs argue that their injuries are "quintessential examples" of First Amendment injuries. ECF No. 144 at 31. But the authorities they cite only highlight their own shortcomings. In *ACLU of Florida, Inc. v. Miami-Dade County School Board*, the plaintiffs had standing to challenge a book's removal because the book

---

[9] I need not resolve the issue of whether the fact that M.A.'s school is a charter school makes any difference for the law's application. *Cf.* SAC ¶ 9 n.2; ECF No. 131.

at issue had been removed from their child's school library, where it was previously available to him. 557 F.3d 1177, 1195 (11th Cir. 2009). Here, on the other hand, Plaintiffs offer abstract allegations about books and children generally—not allegations that a Plaintiff was deprived of any book. In *Virgil v. School Board of Columbia County*, the court did not expressly discuss standing, and there is no indication that the plaintiffs were themselves unaffected by the curriculum change they challenged. 862 F.2d 1517 (11th Cir. 1989). In *Searcey v. Harris*, which likewise did not explicitly address standing, the organization that itself was denied access to a Career Day program was a plaintiff. 888 F.2d 1314, 1315 (11th Cir. 1989).

In short, none of these cases helps Plaintiffs. It does not matter that removing a library book, changing curriculum, or denying access to extracurricular activities *could* constitute a cognizable injury. What matters is whether Plaintiffs have alleged that they themselves suffered a cognizable injury traceable to the Provision's enforcement and redressable by an injunction against it. They have not.

Plaintiffs argue, perhaps as a fallback, that because they invoke the First Amendment, they "are permitted to challenge H.B. 1557 on behalf of others, as 'the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" ECF No. 144 at 27 (quoting

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988)). This argument misapprehends the law.

Plaintiffs refer to the overbreadth doctrine, which provides an exception to the prudential rule that a plaintiff pursuing a facial attack must show that no set of circumstances exists under which the statute would be constitutional. *See Doe v. Valencia Coll.*, 903 F.3d 1220, 1232 (11th Cir. 2018) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). The exception, applicable in First Amendment cases, exists "because of the concern that 'the very existence of some statutes may cause persons not before the Court to refrain from engaging in constitutionally protected speech.'" *Id.* (quoting *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 60 (1976)). But the exception does not help Plaintiffs here.

"[E]ven under the more lenient requirements for standing applicable to First Amendment overbreadth challenges, it still remains the law that plaintiffs must establish that they have suffered some *injury in fact* as a result of the defendant's actions." *Bischoff v. Osceola County*, 222 F.3d 874, 884 (11th Cir. 2000) (citing, among others, *Virginia v. Am. Booksellers*). Thus, the overbreadth doctrine does not "grant a plaintiff carte blanche to challenge an entire ordinance merely because some part of the ordinance—to which the plaintiff is not subject—might be unconstitutional." *Maverick Media Group, Inc. v. Hillsborough County*, 528 F.3d 817, 822 (11th Cir. 2008); *accord CAMP Legal Def. Fund, Inc. v. City of Atlanta*,

451 F.3d 1257, 1270 (11th Cir. 2006) ("The overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing, which requires that 'the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))); *Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003) ("The overbreadth doctrine . . . is not an exception to the *constitutional* standing requirements."). Plaintiffs' inability to allege facts showing a future injury to them forecloses their challenge—with or without the overbreadth exception.

Finally, Plaintiffs contend that they suffered stigmatic injury. ECF No. 144 at 38. But "to sufficiently allege stigmatic injury, a plaintiff still must meet the constitutional standing requirements" including that they "personally experienced the discrimination." *See Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1113 (11th Cir. 2021); *accord Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1338 (11th Cir. 2019) ("A plaintiff alleging a stigmatic injury based on discrimination must point to some concrete interest with respect to which he is personally subject to discriminatory treatment, and that interest must independently satisfy the causation requirement of standing doctrine." (cleaned up) (quoting *Allen v. Wright*, 468 U.S. 737, 757 n.22 (1984)). Plaintiffs insist they have personally suffered discrimination, but they rely only on conclusory allegations (which cannot be accepted at this stage) and the asserted harms addressed above (which do not

suffice for the reasons stated above). Therefore, the allegations of stigmatic injury cannot confer standing.

### III.

Plaintiffs have shown a strident disagreement with the new law, and they have alleged facts to show its very existence causes them deep hurt and disappointment. But to invoke a federal court's jurisdiction, they must allege more. Their failure to do so requires dismissal.

The Motions to Dismiss (ECF Nos. 130, 131, 133, 134, and 137) are GRANTED. The clerk will enter judgment that says, "Plaintiffs' claims are dismissed without prejudice for lack of subject-matter jurisdiction." The clerk will then close the file.

SO ORDERED on February 15, 2023.

s/ *Allen Winsor*
United States District Judge